UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| VINCENT DEMARTINO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06CV0879 (RJL) |
| ) | |
| F.B.I., et al., ) | |
| ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT**

Defendants Bureau of Prisons ("BOP"), and the Executive Office of the United States

Attorney's Office ("EOUSA"), respectfully request that this Court grant summary judgment in

their favor pursuant to Federal Rule of Civil Procedure 12(b)(6) and 56, on the grounds that no

genuine issue of material fact exists and Defendants are entitled to judgment as a matter of law.

With respect to Plaintiff's FOIA claims, Defendants Federal Bureau of Investigation

Headquarters ("FBIHQ"), FBI New York Field Office ("FBINYFO"), and the United States

Parole Commission ("Parole Commission"), request permission to file a status report within

thirty (30) days of the date by which Plaintiff is obligated to pay duplication fees for the records

responsive to his FOIA request.  Regarding Plaintiff's Privacy Act claims, wherein he seeks

expungement of alleged inaccurate records, Defendants FBI and BOP move for summary

judgment as Plaintiff has failed to exhaust his administrative remedies, and Defendant Parole

Commission moves for summary judgment as Plaintiff fails to state a claim upon which relief

may be granted.

In support of this motion, Defendants respectfully refer the Court to the accompanying

Memorandum of Points and Authorities in Support and accompanying Statement of Material

Facts Not In Dispute.  A proposed Order consistent with this Motion is attached hereto.[1]

Respectfully submitted,

      /s/
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

      /s/
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

      /s/
KAREN L. MELNIK, D.C. Bar # 436452
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC 20530
(202) 307-1249
(202) 514-8780 (facsimile)

---

[1]  Plaintiff, is hereby advised that failure to respond to this motion may result in the district court granting the motion.  See Fox v. Strickland, 837 F.2d 507, 509 (D.C. Cir. 1988).  Plaintiff should also take notice that any factual assertions contained in the affidavits and other attachments in support of defendants' motion will be accepted by the Court as true unless the plaintiff submits his own affidavits or other documentary evidence contradicting the assertions in the defendant's attachments.  See Neal v. Kelly, 963 F.2d 453, 457 (D.C. Cir. 1992).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
VINCENT DEMARTINO,                        )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  )      Civil Action No. 06CV0879 (RJL)
                                          )
F.B.I., et al.,                           )
                                          )
                                          )
            Defendants.                   )
_____)

**MEMORANDUM IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT**

_____Undisputed evidence shows that defendants have fully complied with their obligations

under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act ("PA"), 5

U.S.C. § 552a.  Therefore, they are entitled to judgment pursuant to Federal Rule of Civil

Procedure 56.

**PROCEDURAL HISTORY OF PLAINTIFF'S FOIA CLAIMS:
FBIHQ, FBINYFO AND PAROLE COMMISSION**

I.   **FBI**

     A.   **Plaintiff's First FOIA Request To FBI Headquarters**

     By letter dated February 20, 2005, Plaintiff submitted a FOIA request to FBIHQ for any

records maintained at FBIHQ pertaining to "a shooting on July 16, 2001 at 2:30 p.m. at West 32nd

Street and Surf Avenue in Coney Island, New York ... 911 transcripts and or tapes, FBI notes,

FBI reports, Sprint reports, 302's, DD-5 reports, police officer on the scene reports, radio

transmission reports for the police, FBI, EMT workers, ambulance drivers, reports and

statements of witnesses at the scene, interviews with John Florida at the 60th Precinct as well as

all information on Vincent DeMartino and the investigation.  All photographs of the scene and the area used in this investigation, all names and addresses of suspects and witnesses interviewed at the scene, the origin of the phone numbers of the 911 calls made in connection with this shooting.  All information from Highway 2 Police regarding the stopping of a green van on the Belt Parkway shortly after the shooting."  See Declaration of John M. Hardy ("Hardy Decl.") at ¶ 5 and Exhibit A attached thereto.

By letter dated March 8, 2005, FBIHQ returned the request stating that Plaintiff's letter did not contain sufficient information to conduct an accurate search of the central records system and provided a form requesting certain information required to conduct the search.  See Hardy Decl. at ¶ 6.  The form was completed by Plaintiff and received by FBIHQ on March 23, 2005. See id. and Exhibit B attached thereto.

An undated "Address Change Notification" was received by FBIHQ.  See Hardy Decl. at ¶ 7.  This notification advised that as of April 1, 2005, Plaintiff's address would be the U.S. Penitentiary Canaan, 2020 Canaan Road, Unit A-2, Waymart, PA 18742.  See id. and Exhibit C attached thereto.  By letter dated April 12, 2005, FBIHQ sent a form requesting additional information to conduct the search of the central records system to the Plaintiff at his new address. See Hardy Decl. at ¶ 8 and Exhibit D attached thereto.

By letter dated April 13, 2005, FBIHQ acknowledged receipt of Plaintiff's FOIPA request and assigned it FOIPA Request Number 1018449.  See Hardy Decl. at ¶ 9.  This letter was refused by the recipient and returned to FBIHQ on April 26, 2005.  See id. and Exhibit E attached thereto.

2

By separate letters dated May 6, 2005, sent to both Plaintiff's old and new addresses, FBIHQ advised that a search of the automated indices to the Central Records System at FBIHQ located no records responsive to his FOIPA request.  See Hardy Decl. at ¶ 10.  The FBI advised Plaintiff of his right to file an administrative appeal to the Department of Justice ("DOJ"), Office of Information and Privacy ("OIP").  See id.  Plaintiff was further advised should he desire a check of FBI field office files to write directly to the appropriate field office(s).  See id. and Exhibit F attached thereto.

By letter dated May 24, 2005 to FBIHQ, Plaintiff stated that he had not received any information to date.  Plaintiff also provided his current mailing address.  See Hardy Decl. at ¶ 11 and Exhibit G attached thereto.  By letter dated June 13, 2005 to FBIHQ, Plaintiff acknowledged receipt of FBIHQ's letter dated May 6, 2005 that stated no records had been located responsive to his request.  See Hardy Decl. at ¶ 12.  Plaintiff stated that he was enclosing "partial sprit [sic] reports from your office I need the whole conversation."  See id.  Plaintiff also asked for the addresses of FBI field offices so he could make direct FOIA requests.  See id. and Exhibit H attached thereto.

By letter dated June 13, 2005, Plaintiff appealed to the OIP the FBI's "no records" response to his FOIPA request.  See Hardy Decl. at ¶ 13 and Exhibit I attached thereto.  By letter dated June 28, 2005, OIP acknowledged receipt of Plaintiff's administrative appeal and assigned it Appeal Number 05-2118.  See id. at ¶ 14 and Exhibit J attached thereto.

By letter dated June 29, 2005, FBIHQ acknowledged receipt of Plaintiff's June 13, 2005 FOIPA request and advised him that his request was being reopened and assigned FOIPA Request No. 1018449-001.  See Hardy Decl. at ¶ 15 and Exhibit K attached thereto.  By letter to

FBIHQ dated July 12, 2005, Plaintiff inquired about his FOIA request and enclosed a copy of his original FOIA request letter dated February 20, 2005. See id. at ¶ 16. Plaintiff advised FBIHQ to check under "Di" and "De" in the spelling of his last name DeMartino and of his current mailing address. See id. and Exhibit L attached thereto.

By letter to FBIHQ dated October 3, 2005, plaintiff inquired as to the status of his FOIA request. See Hardy Decl. at ¶ 17. Plaintiff also requested a fee waiver for his request. See id. and Exhibit M attached thereto. By letter addressed to OIP dated October 3, 2005, Plaintiff inquired as to the status of his appeal. See id. at ¶ 18 and Exhibit N attached thereto.

By letter dated October 24, 2005, FBIHQ again advised plaintiff that his FOIA request concerning a shooting that occurred on July 16, 2001 in the Coney Island section of Brooklyn, New York does not contain enough descriptive information to permit a search of FBI records. See Hardy Decl. at ¶ 19. FBIHQ requested plaintiff to provide more specific information, such as complete names of individuals, organizations or events, dates and places of birth and the approximate time frame of the information sought, etc. See id. and Exhibit O attached thereto.

### B. Plaintiff's FOIA Request To The New York Field Office

By letter dated June 16, 2005, Plaintiff submitted a FOIPA request to the FBI's New York Field Office (NYFO) for information pertaining to the shooting on July 16, 2001 in the Coney Island section of Brooklyn, New York. See Hardy Decl. at ¶ 20. The details of his request were the same as his original February 20, 2005 FOIA request to FBIHQ. See id. and Exhibit P attached thereto.

By letter dated July 6, 2005, FBIHQ acknowledged receipt of Plaintiff's FOIPA request to the NYFO and assigned it FOIPA Request Number 1023930-000. See Hardy Decl. at ¶ 21 and

4

Exhibit Q attached thereto.  By letter to the NYFO dated October 3, 2005, Plaintiff inquired as to the status of his FOIA request.  See id. at ¶ 22 and Exhibit R attached thereto.

By letter dated October 20, 2005, FBIHQ advised Plaintiff that the material he requested from the NYFO is located in an investigative file which is exempt from disclosure pursuant to Title 5, United States Code, Section 552, Subsection (b)(7)(A).  See Hardy Decl. at ¶ 23. Plaintiff was advised if this file were to be reviewed under FOIPA in the future, additional exemptions may be applied at that time.  See id.  Plaintiff was advised of his right to file an administrative appeal for this denial to the DOJ, OIP.  See id. and Exhibit S attached thereto.

## C. Plaintiff's Second Request To FBI Headquarters

By undated letter to FBIHQ, plaintiff submitted a FOIA request for all records relating to Vincent A. DeMartino, aka. Chickie.  See Hardy Decl. at ¶ 24.  Plaintiff's request specifically included "main" files and "see" references;  including but not limited to, numbered and lettered subfiles, 1A envelopes, enclosures behind files (EBF's), Bulky Exhibits, control files, and "June files."  See id.  Plaintiff provided identifying information and his notarized signature dated December 6, 2005.  See id. and Exhibit T attached thereto.

By letter dated September 21, 2006, FBIHQ advised plaintiff that 243 pages of records responsive to his request are available for release.  See Hardy Decl. at ¶ 25.  Plaintiff was advised that pursuant to Title 28, Code of Federal Regulations, Sections 16.11 and 16.49, there is a fee of ten cents per page for duplication.  See id.  No fees are accessed for the first 100 pages.  See id. Plaintiff was advised that upon receipt of his check or money order in the amount of $14.30 made payable to the FBI, the documents would be forwarded to him.  See id.  Plaintiff was further advised that if payment was not received by the FBI within 45 days from the date of this

letter, no documents would be released and his request would be administratively closed.  See id. and Exhibit U attached thereto.

## II.    Parole Commission

Plaintiff's FOIA request was received by the Parole Commission on December 22, 2005. See Declaration of Pamela Roberts ("Roberts Decl.") at ¶ 9.  On that date, the Commission returned the request because it failed to contain proper proof of identity.  See id.  and Exhibit B thereto.

By letter dated January 3, 2006, Plaintiff resubmitted his request with proper proof of identity.  See Roberts Decl. at ¶ 10 and Exhibit C thereto.  By letter dated February 7, 2006, the Parole Commission acknowledged receipt of Plaintiff's request but advised him that there would be a delay in processing his request due to a backlog of unfilled requests and limited personnel resources.  See id. at ¶ 11 and Exhibit D thereto.

The Parole Commission identified the U.S. Probation Office in the Eastern District of New York as the location of Plaintiff's supervision file.  See Roberts Decl. at ¶ 12.  By letter dated June 13, 2006, the Parole Commission requested that the U.S. Probation Officer in the Eastern District of New York provide the Commission with copies of Plaintiff's requested records from the parole supervision file maintained under his name.  See id. and Exhibit E thereto.

By letter dated July 2, 2006, Plaintiff requested the status of his pending request.  See Roberts Decl. at ¶ 13 and Exhibit F thereto.  The Parole Commission noted that it had not received a response from the U.S. Probation Office so that office was contacted by telephone. See Roberts Decl. at ¶ 14.  On August 29, 2006, U.S. Probation Officer Dave Williams advised

6

the Parole Commission that the number of documents responsive to Plaintiff's request included a large volume of records. <u>See</u> <u>id.</u>

On August 29, 2006, the Parole Commission sent Plaintiff a letter advising him that the Commission had estimated that the processing of his request would involve a fee amounting to more than $25. <u>See</u> Roberts Decl. at ¶ 15. The Parole Commission advised Plaintiff that the letter served as notice pursuant to 28 C.F.R. Section 16.11(e) that his request would not be processed until he agreed to pay the anticipated fee. <u>See</u> <u>id.</u> In the alternative, Plaintiff was advised that he could submit a revised request limiting the scope of his request. <u>See</u> <u>id.</u> The letter also advised Plaintiff that he had thirty (30) days in which to send a response to the Commission. <u>See</u> <u>id.</u> and Exhibit G thereto. As of September 27, 2006, the Parole Commission has not received a response from Plaintiff in regard to the August 29, 2006, letter. <u>See</u> <u>id.</u> at ¶ 16.

**STATEMENT OF FACTS**

Defendants adopt as their statement of facts the Statement of Material Facts Not In Genuine Dispute, appended hereto.

**ARGUMENT**

**I.    <u>Standard For Summary Judgment</u>**

Where no genuine dispute exists as to any material fact, summary judgment is required. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. <u>Id.</u> at 247. "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case." <u>Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.</u>, 833 F.2d 1560, 1563 (Fed. Cir. 1987).

7

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment, the Plaintiff must present some objective evidence that would enable the court to find he is entitled to relief. In Celotex Corp. v. Catrett, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986).

In Anderson the Supreme Court explained under what circumstances summary judgment is appropriate:

> If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted . . . [T]he mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff.

Anderson, 477 U.S. at 252; see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor). In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1). The summary judgment standards set forth above also apply to FOIA cases, which are typically

decided on motions for summary judgment.[1]  See Cappabianca v. Commissioner, U.S. Customs Serv., 847 F.Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)).  In a FOIA suit an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, not withheld, is unidentifiable, or is exempt from disclosure.  Students Against Genocide v. Dept. of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. U.S. Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the Plaintiff with affidavits or declarations and other evidence which show that the documents are exempt from disclosure.  Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980); Church of Scientology v. U.S. Dept. of Army, 611 F.2d 738, 742 (9th Cir. 1980).  Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits [or declarations] "when the affidavits describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"  Trans Union LLC v. Federal Trade Commission, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)); see also Public Citizen, Inc. v. Dept. of State, 100 F. Supp. 2d 10, 16 (D.D.C. 2000);

---

[1]  For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to de novo review by the courts.  Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980).

McGhee v. Central Intelligence Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983); Citizens

Commission on Human Rights v. FDA, 45 F.3d 1325, 1329 (9th Cir. 1995); Bowen v. FDA, 925

F.2d 1224, 1227 (9th Cir. 1991).  When the pleadings, supplemented by affidavits or

declarations, show no genuine issue as to any material fact and the defendant is entitled to

judgment as a matter of law, summary judgment should be granted to the defendant.  Perry v.

Block, 684 F.2d 121 (D.C. Cir. 1982).

## II.     **Defendants Have Submitted Proper Vaughn Indices/Declarations**

In moving for summary judgment in a FOIA case, agencies must establish a proper basis

for their withholding of responsive documents.  "In response to this special aspect of summary

judgment in the FOIA context, agencies regularly submit affidavits . . . in support of their

motions for summary judgment against FOIA Plaintiffs."  Judicial Watch v. U.S. Dept. of Health

and Human Services, 27 F. Supp. 2d 240, 242 (D.D.C. 1998).  These declarations or affidavits

(singly or collectively) are often referred to as a Vaughn index, after the case of Vaughn v.

Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564 (1974).  There is

no set formula for a Vaughn index.  "[I]t is well established that the critical elements of the

Vaughn index lie in its function, and not in its form."  Kay v. FCC, 976 F.Supp. 23, 35 (D.D.C.

1997).  "The materials provided by the agency may take any form so long as they give the

reviewing court a reasonable basis to evaluate the claim of privilege."  Delaney, Midgail &

Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987).  See also Keys v. U.S. Dept. of

Justice, 830 F.2d 337, 349 (D.C. Cir. 1987); Hinton v. Dept. of Justice, 844 F.2d 126, 129 (3d

Cir. 1988).[2]

      The Vaughn Index serves a threefold purpose: (1) it  identifies each document withheld;

(2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage

the interests protected by the claimed exemption.  See Citizens Commission on Human Rights v.

FDA, 45 F.3d 1325, 1326 (9th Cir. 1995).  "Of course the explanation of the exemption claim

and the descriptions of withheld material need not be so detailed as to reveal that which the

agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as

to whether the material is actually exempt under FOIA."  Founding Church of Scientology v.

Bell, 603 F.2d 945, 949 (D.C. Cir. 1979).

      In the case at bar, each agency has submitted a supporting declaration and/or separate

Vaughn index in support of this partial motion for summary judgment.  Each agency's

declaration was prepared by an individual familiar with the handling of the direct or referred

request.

      The FBI Headquarters ("FBIHQ") has submitted a declaration prepared by David M.

Hardy, Section Chief of the Record/Information Dissemination Section ("RIDS"), Records

Management Division ("RMD") at FBIHQ.  See Declaration of David Hardy ("Hardy Decl.") ¶

1.  The Bureau of Prisons ("BOP") has submitted a declaration prepared by Christina V. Hauck-

---

[2]  "All that is required, and that is the least that is required, is that the requester and the trial judge
be able to derive from the index a clear explanation of why each document or portion of a
document withheld is putatively exempt from disclosure."  Id.  "The degree of specificity of
itemization, justification, and correlation required in a particular case will, however, depend on
the nature of the document at issue and the particular exemption asserted."  Information
Acquisition Corp. v. Dept. of Justice, 444 F.Supp. 458, 462 (D.D.C. 1978).

DeCuir, Paralegal Specialist, at Federal Corrections Complex in Beaumont, Texas ("FCC

Beaumont"), as well as a separate page itemization/sample <u>Vaughn</u> index in support of this

motion.  <u>See</u> Declaration of Christina V. Hauck-DeCuir ("Hauck-DeCuir") ¶¶ 1, 2.  The United

States Parole Commission ("Parole Commission") has submitted a declaration prepared by

Pamela Roberts, Attorney for the Parole Commission.  Lastly, the Executive Office for the

United States Attorneys ("EOUSA") submitted a declaration prepared by John F. Boseker,

Attorney Advisor in the EOUSA, specifically assigned to the FOIA/PA component.  <u>See</u>

Declaration of John F. Boseker ("Boseker Decl.") at ¶ 1.

As set forth above, the declarations submitted in support of this motion meet the

requirements of <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), <u>cert. denied</u>, 415 U.S. 977, 94

S.Ct. 1564 (1974), and provide the Court with the requisite basis to grant Defendants' motion.

### III.    <u>Defendant BOP Performed A Proper Search</u>

The BOP performed an adequate search in response to plaintiff's FOIA requests.  In

responding to a FOIA request, an agency is under a duty to conduct a reasonable search for

responsive records.  <u>Oglesby v. U.S. Dept. of Army</u>, 920 F.2d 68 (D.C. Cir. 1990); <u>Cleary,</u>

<u>Gottlieb, Steen & Hamilton v. Dept. of Health, et al.</u>, 844 F. Supp. 770, 776 (D.D.C. 1993);

<u>Weisberg v. U.S. Dept. of Justice</u>, 705 F.2d 1344, 1352 (D.C. Cir. 1983).  The established

reasonableness standard by which FOIA searches are judged "does not require absolute

exhaustion of the files; instead it requires a search reasonably calculated to uncover the sought

materials."  <u>Miller</u>, 779 F.2d at 1384-85.  Thus, "the issue in a FOIA case is not whether the

agencies' searches uncovered responsive documents, but rather whether the searches were

reasonable."  <u>Moore v. Aspin</u>, 916 F. Supp. 32, 35 (D.D.C. 1996); <u>see</u> also <u>Fitzgibon v. U.S.</u>

Secret Service , 747 F. Supp. 51, 54 (D.D.C. 1990); Meeropol v. Meese, 790 F.2d 942, 952-53 (D.C. Cir. 1986).

An agency demonstrates that it conducted a reasonable search by showing "that it made a good faith effort to conduct a FOIA search for requested records by  using methods that can reasonably be expected to produce the information requested." Western Center for Journalism v. I.R.S., 116 F. Supp.2d 1, 9 (D.D.C. 2000); Oglesby, 920 F.2d at 68.

The search standards established under the FOIA do not require an agency to search every record system, but rather, the agency need only search those systems in which it believes responsive records are likely to be located. Oglesby, 920 F.2d at 68.  Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent. Nation Magazine, Washington Bureau v. U.S. Customs Service, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995). Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it Maynard v. CIA, 982 F.2d 546, 564 (1st Cir. 1993).

Simply stated, the adequacy of the search is "dependent upon the circumstances of the case." Truitt v. Dept. of State, 897 F.2d 540, 542 (D.C. Cir. 1990).  The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate." Steinberg v. Dept. of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. Dept. of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

As demonstrated below, as well as in the declaration submitted in support of this motion

13

and the statement of material facts not in dispute, the BOP conducted a proper and adequate

search.

Plaintiff filed three requests for records with the Northeast Regional Office ("NERO") for

the BOP while he was at USP Canaan. <u>See</u> Hauck-DeCuir Decl. at ¶ 5. The first request (2006-

01594), dated November 15, 2005, specifically sought 2001 records regarding the shooting of

Joseph Campanella on July 16, 2001. <u>See id.</u> and Attachment 1 thereto. No materials were

found to be responsive to Plaintiff's request, as BOP does not maintain the information he was

seeking. <u>See id.</u> and Attachment 2 thereto. Plaintiff's second FOIA request (2006-01780), dated

November 24, 2005, sought additional records relating to the July 16, 2001, shooting. <u>See</u>

Hauck-DeCuir Decl. at ¶ 8 and Attachment 6 thereto. Plaintiff was informed that a search was

conducted but that no responsive materials were found because such materials are not maintained

by the BOP. <u>See id.</u> and Attachment 7 thereto. Plaintiff's third request (2006–2370), dated

December 26, 2005, sought all the documents in his file. <u>See</u> Hauck-DeCuir Decl. at ¶ 9 and

Attachment 8 thereto. The NERO informed Plaintiff that he could seek a local review of his file

to access the releasable portions of his BOP records by contacting staff at his institution. <u>See id.</u>

and Attachment 9 thereto.

The BOP does not investigate the criminal conduct underlying the sentences of

incarceration being served by the inmates. <u>See</u> Hauck-DeCuir Decl. at ¶ 12. All information the

BOP does gather on the inmates in custody is maintained in a central file at the institution where

the inmate is incarcerated. <u>See id.</u> This file is identified by the inmate's incarcerated name and

register number. <u>See id.</u> A search for records in inmate DeMartino's central file relevant to the

July 16, 2001 shooting of Joseph Campanella, the subject of FOIA Request Numbers 2006-01594 and 2006-01780, was conducted with negative results.  See id.

As for FOIA Request 2006-02370, Plaintiff requested documents in his file.  See Hauck-DeCuir Decl. at 13 and Attachment 8 thereto.  He was initially informed to seek review of the releasable portions of his central file at the local level.  See id. and Attachment 9 thereto.  Even though Plaintiff did not seek an administrative appeal challenging this decision, BOP staff at the SCRO interpreted this request as broadly as possible and released 70 pages of documents to inmate DeMartino in some form.  See id.

## IV.    Defendant BOP Properly Invoked Certain FOIA Exemptions To Withhold Information Protected From Disclosure[3]

As explained below, defendants withheld documents responsive to plaintiff's FOIA requests pursuant to FOIA Exemptions (b)(2), (b)(5); (b)(7)(C); and (b)(7)(F).

### A.    Exemption (b)(2)

Section 552 (b)(2) of FOIA exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  Exemption (b)(2)

---

[3]    Under Program Statement 1351.05, Release of Information, inmates are prohibited from obtaining or possessing copies of their Presentence Investigation Reports (PSR).  See Hauck-DeCuir Decl. at ¶ 25 and Attachment 11 thereto.  The purpose behind this prohibition is to prevent an inmate from pressuring another for a copy of his PSRs, and Statement of Reasons from their Judgment and Commitment Orders, in order to learn whether the inmate is an informant, a gang member, has financial resources, or some other pertinent information.  See id. Even though inmates are prohibited from possessing photocopies of their own PSRs, they are allowed a reasonable opportunity to review their PSRs through unit staff, as PSRs are normally kept in the releasable section of an inmate's central file.  See id.; Martinez v. Bureau of Prisons, 444 F.3d 620, 625 (D.C. Cir. 2006) (FOIA does not entitle Plaintiff to have copies of his PSR). On July 18, 2006, Inmate DeMartino was allowed to review the releasable portions of his central file, including the 28 pages comprising his PSR.  See Hauck-DeCuir Decl. at ¶ 25 and Attachment 12 thereto.

applies primarily to two categories of materials: (1) internal agency matters so routine or trivial

that they could not be "subject to ... a genuine and significant public interest;" and (2) internal

agency matters of some public interest "where disclosure may risk circumvention" of statutes or

agency regulations.  Dept. of Air Force v. Rose, 425 U.S. 352, 369-70 (1976); National Treasury

Employees Union v. U.S. Customs Service, 802 F.2d 525, 528-30 (D.C. Cir. 1986); Crooker v.

Bureau of Alcohol, Tobacco and Firearms, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981).   The

second category, sometimes referenced in the governing case law as the "high (b)(2) category,"

see Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992), exempts from mandatory disclosure

documents relating to more substantive internal matters.  Id.

      An agency is authorized to withhold documents  in this category to the extent that

disclosure would reveal techniques and procedures for law enforcement investigations or

prosecutions, id.; would disclose guidelines for law enforcement investigations; or would risk

circumvention of an agency statute or impede the effectiveness of an agency's law enforcement

activities.  See Crooker, 670 F.2d 1051 (D.C. Cir. 1981) (en banc); Hardy v. ATF, 631 F.2d 653,

656 (9th Cir. 1980).

      The BOP properly evaluated responsive information, and withheld certain information

pursuant to Exemption (b)(2).  See DeCuir Decl. ¶ 17.  Specifically, Exemption (b)(2)(high) was

utilized to excise or withhold information on documents 1- 42, 44, 46, 49-53.  See id. and

Attachment 13 thereto.  The majority of these documents involved memoranda pertaining to

separation assignments between inmate DeMartino and other individuals, information relating to

the organization inmate DeMartino is associated with, or are documents involving separation

concerns of other inmates.  See id.  The dates, authors, and institutions where the memoranda

were written have been excised pursuant to (b)(2)(high), because someone could ascertain the identity of the other individuals named in the documents if this information was released.  See id.

This information, if released, could also shed light on the process the BOP utilizes to make decisions regarding whether or not an inmate requires formal separation from another individual.  See id.  Additionally, these documents were created by law enforcement personnel for law enforcement functions, such as the tracking of the organization with which inmate DeMartino associates, so the excision or withholding of this information was proper under this exemption because this information, if released, could thwart law enforcement investigation and exchange of information between agencies.  See id.

## B.    Exemption (b)(5)

Exemption (b)(5) protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Courts have construed this language to exempt documents that would not ordinarily be available to an agency's opponent in a civil discovery context and to incorporate all evidentiary privileges that would be available in that context.  See United States v. Weber Aircraft Corp., 465 U.S. 792, 799 (1984); FTC v. Grolier, Inc., 462 U.S. 19, 26 (1983); Martin v. Office of Special Counsel, 819 F.2d 1181 (D.C. Cir. 1987).

The deliberative process privilege is incorporated within Exemption 5.  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151 (1975).  The purpose of this privilege is to protect the "quality of agency decisions."  Id.  The policy underlying this privilege is to encourage open, frank discussions of policy matters between subordinates and supervisors, to protect against premature disclosure of proposed policies before they become final, and to protect against public

17

confusion by disclosing reasons and rationales that were not in fact the ultimate grounds for the agency's action.  See, e.g., Russell v. Dep't of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982); Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980); Jordan v. United States Dep't of Justice, 591 F.2d 753, 772-73 (D.C. Cir. 1978) (en banc),  overruled in part on other grounds, Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051 (D.C. Cir.1981) (en banc).

Flowing from the policy considerations is the privilege's protection of the "decision making processes of government agencies." Sears, 421 U.S. at 150.  The privilege protects not merely documents, but also the integrity of the deliberative process itself where the exposure of that process would result in harm.  Dudman Communications Corp. v. Dept. of the Air Force, 815 F.2d 1565, 1568 (D.C. Cir. 1987)("Congress enacted Exemption 5 to protect the executive's deliberative processes – not to protect specific materials.").  Greenberg v. Dept. of Treasury, 10 F. Supp.2d 3, 16, n.19 (D.D.C. 1998); Marzen v. HHS, 825 F.2d 1148, 1155 (7th Cir. 1987) ("[E]xemption protects not only the opinions, comments and recommendations in the draft, but also the process itself."); Pies v. IRS, 668 F.2d 1350, 1353-54 (D.C. Cir. 1981).  As the Court in Coastal States held, the privilege protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Coastal States, 617 F.2d at 866.   Indeed, the mere status of an agency decision within an agency decision-making process may be protectible if the release of that information would have the effect of prematurely disclosing "the recommended outcome of the consultative process...as well as the source of any decision." Wolfe v. HHS, 839 F.2d 768, 775 (D.C. Cir. 1988) (en banc).

18

Two fundamental requirements must be met for the deliberative process privilege to be invoked.  Mapother v. Dept. of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993).  First, the communication must be predecisional, i.e., "antecedent to the adoption of an agency policy." Jordan, 591 F.2d at 774.  Second, the communication must be deliberative, i.e., "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters."  Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).

In deciding whether a document should be protected by the privilege courts look to whether the document is "predecisional," whether it was generated before the adoption of an agency policy, and whether the document is "deliberative," whether it reflects the give-and-take of the consultative process. Coastal States, 617 F.2d at 866-68.  The exemption thus covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.   Id. Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, suggesting an agency position that is as yet only a personal position. Id.

To test whether disclosure of a document is likely to adversely affect the purposes of the privilege, courts ask themselves whether the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency; "[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decision-making process." Coastal States, 617 F.2d at 866-68, quoting United States v. Nixon, 418 U.S. 683, 705 (1974).  Courts look at whether the document is

19

recommendatory in nature or is a draft of what will become a final document, and whether the document is deliberative in nature, weighing the pros and cons of agency adoption of one viewpoint or another.  Coastal States, 617 F.2d at 868; Common Cause v. IRS, 646 F.2d 656, 659-660 (D.C. Cir. 1981).

In this case, BOP utilized Exemption (b)(5) to excise information on documents 3, 11 and 51.  See Hauck-DeCuir Decl. at ¶ 18 and Attachment 13 at 3.  Document 3, 11 and 51 are all copies of SIS Report CAA-5019.  See id.  Certain information was excised from page 3 of the document because this SIS Report is a sensitive internal document whereby the conclusions of the investigator would be excludable if the information were requested through other means.  See id.  SIS Reports are frequently utilized by the BOP to make separation assignments between inmates, transfer inmates, or make decisions regarding criminal prosecution for certain actions taken by inmates in BOP custody.  See Hauck-DeCuir Decl. at ¶ 18.  The recommendations of the investigator are only suggestions, and do not necessarily reflect the conclusion of the agency, or the final action taken by the BOP regarding the matter.  See id.  Release of the final paragraph of this document could cause SIS staff to withhold their candid personal opinion as to what action the agency should take regarding an incident, if they believed that their opinion could be released to the subject inmate(s).  See id.  Thus, this information was properly removed under 5 U.S.C. 552(b)(5).

## C.    Exemption (b)(7)(C)

The FOIA exempts from the requirement of disclosure

> (7)  records or information compiled for law enforcement purposes,
> . . . to the extent that the production of such law enforcement

> records or information . . . (C) could reasonably be expected to
> constitute an unwarranted invasion of personal privacy. . . .

5 U.S.C. § (b)(7)(C). This exemption protects the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations. <u>Reporters Comm. for Freedom of the Press v. U.S. Dept of Justice</u>, 816 F.2d 730, 780 (D.C. Cir. 1987), <u>modified on other grounds</u>, 831 F.2d 1124 (D.C. Cir. 1987), <u>rev'd on other grounds</u>, 489 U.S. 749 (1989); <u>Computer Prof'ls for Social Responsibility v. U.S. Secret Serv.</u>, 72 F.3d 897, 904 (D.C. Cir. 1996). Indeed, the mere mention of identities of witnesses or other persons in law enforcement files in such a way as to associate them with criminal activity is subject to protection under Exemption 7(C). <u>Reporters Comm. for Freedom of the Press</u>, 489 U.S. at 780; <u>Nation Magazine v. U.S. Customs Service</u>, 71 F.3d 885, 893, 895-96 (D.C. Cir. 1995); <u>SafeCard Services, Inc. v. S.E.C.</u>, 926 F.2d 1197, 1206 (D.C. Cir. 1991).

Once a privacy interest has been established, it must be balanced against the public interest, if any, that would be served by disclosure. <u>Albuquerque Publ'g Co. v. Dep't of Justice</u>, 726 F. Supp. 851, 855 (D.D.C. 1989). The public interest in disclosure is limited to the FOIA's "core purpose" of shed[ing] light on an agency's performance of its statutory duties." <u>Reporters Comm. for Freedom of the Press v. U.S. Dept of Justice</u>, 489 U.S. 749, 773 (1989). This standard is not easily satisfied when law enforcement information pertaining to individuals is sought, for there "is no reasonably conceivable way in which the release of one individual's name . . . would allow citizens to know 'what their government is up to.'" <u>Fitzgibbon v. CIA</u>, 911 F.2d 755, 768 (D.C. Cir. 1990). <u>See also</u> <u>Albuquerque Publ'g Co.</u>, 726 F. Supp. at 855-56 (no public interest in disclosure of sensitive information DEA obtained about individuals and their

activities, where such material would not shed light on DEA's conduct with respect to the investigation). Furthermore, in order to overcome legitimate privacy interests, the requester must not only demonstrate the existence of the public interest, but also that the public interest is both significant and compelling. Senate of Puerto Rico v. Dep't of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987); Stone v. FBI, 727 F. Supp. 662, 667-69 (D.D.C. 1990).

The BOP properly evaluated responsive information in light of Exemption (b)(7)(C) and withheld protected information. See Hauck-DeCuir at ¶¶19-21. Specifically, Exemption (b)(7)(C) was applied to excise or withhold information in its entirety on documents 1, 3-11, 14-34, 36-41, 43, 47, 51, and 53. See id. at ¶ 20 and Attachment 13 thereto. Many of the above-numbered documents are memoranda created to support Central Inmate Monitoring information on inmate DeMartino or other individuals with whom he associates within his organization. See id. The confidentiality of this information is vital to law enforcement officials who are charged with the safety of inmates in the BOP's custody. See id. Release of this information could be detrimental to the other individuals named in the documents, as it lists their locations and affiliations, which could be used by inmate DeMartino to retaliate against, threaten or harass these individuals. See id.

The decision to withhold the information was based on a balancing between the privacy interests of the individuals named in the documents against any discernable public interest in disclosure of the individuals' identities. See id. Inmate DeMartino did not list any public interest which would be served by the release of the names of other individuals listed in the documents located in his central file, nor has he provided any potential public interest which would outweigh the privacy interests of the individuals named in these documents. See id.

22

Thus, disclosure of the identities of the other individuals listed in the documents would be an unwarranted invasion of their personal privacy which would jeopardize their safety if released. See id.

Documents 45 and 46 were properly excised or withheld under (b)(7)(C) because they concerned visitor forms completed by third parties and NCIC reports generated in response to their request for visitation privileges with inmate DeMartino. See Hauck-DeCuir Decl. at ¶ 21 and Attachment 13 thereto at pp. 42, 43. Disclosure of NCIC background or other records or information regarding prospective visitors for inmate DeMartino is a clear violation of their personal privacy as such data contains records of past criminal actions, social security numbers and other sensitive and personal information. See id. Inmate DeMartino's possession and procurement of such information, absent the express consent of the individuals about whom the record pertains, poses a direct and unreasonable violation of their respective personal privacy rights. See id.

After balancing the competing privacy interests between the public right to know and the privacy interests involved, the BOP concluded that the privacy interests of the individuals identified in these documents outweighed any public interest. See Hauck-DeCuir Decl. at ¶ 21. Accordingly, exemption (b)(7)(C) was invoked to withhold the majority of the pages from document 46, and excise personal information from document 45.

### F.    Exemption (b)(7)(F)

Exemption 7(F) of the FOIA protects law enforcement information that, if produced, "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F); Maroscia v. Levi, 569 F.2d 1000, 1002 (7th Cir. 1977) (exemption (b)(7)(F)

23

provides protection to information the release of which could endanger law enforcement officers).

The BOP properly evaluated responsive information, and withheld certain information pursuant to Exemption (b)(7)(F).  See Hauck-DeCuir Decl. at ¶¶ 22-24.  Specifically, BOP invoked Exemption (b)(7)(F) to withhold certain information either in whole or in part from documents 1-11, 14-43, and 51-53.  See id. at ¶ 22 and Attachment 13 thereto.  As reflected in the Vaughn, the information withheld pursuant to the (b)(7)(F) exemption consists of documents and information collected for law enforcement purposes or confidential information regarding a law enforcement investigation or criminal prosecution which relates to individuals other than inmate DeMartino.

Release of this sensitive information through the FOIA process could endanger the safety of the individuals in a prison setting by identifying them as cooperating with the federal government or other individuals.  See Hauck-DeCuir Decl. at ¶ 23.  On account of their relationship with either inmate DeMartino or the organization with whom inmate DeMartino is affiliated, these inmates received a Central Inmate Monitoring (CIM) assignment of "separatee," which means they are to be kept separate from DeMartino or others.  See id.  The release of the information could compromise an investigation conducted by other law enforcement agencies regarding the other individuals named in the documents.  See id.  Such disclosure would defeat the very purpose of the compilation of confidential information, by providing DeMartino and others with the means to discover the individuals from whom the BOP and other agencies have received information.  See id.

24

This compilation of confidential information is essential to the BOP to deter violence in the BOP system.  See Hauck-DeCuir Decl. at ¶ 23.  Such disclosure could undermine the effectiveness of the collection of the confidential information, and potentially lead to violence within the BOP.  See id.  Therefore, all information regarding inmate DeMartino's separation orders was properly withheld under exemption (b)(7)(F), because to release the information may threaten the lives and physical safety of inmate DeMartino, and the other individuals listed in the documents.  See  id..

Moreover, the information withheld under (b)(7)(F) from documents 7, 9, 10, 19-23, 25-29, 32-36, 41-43, and 46, none mentions inmate DeMartino's name in them, nor are they related to the circumstances surrounding his criminal case.  See Hauck-DeCuir Decl. at ¶ 24.  These documents were withheld because the release of the information could pose a threat to the lives and physical safety of the individuals named in the documents.  See id.  Further, they mention the relationships within inmate DeMartino's organization, and the reasons why these individuals must be separated from each other.  See id.  Therefore, to protect the security, discipline and good order of the institution, this information was withheld.

**V.    Plaintiff Failed To Exhaust Administrative Remedies Regarding His FOIA Claims**

Because "exhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA . . . a requester under FOIA must file an administrative appeal within the time limit specified in an agency's FOIA regulations or face dismissal of any lawsuit complaining about the agency's response."  Wilbur v. C.I.A., 355 F.3d 675, 676 (D.C. Cir. 2004).  It is axiomatic that "exhaustion of such [administrative] remedies is required under the Freedom of Information Act before a party can seek judicial review.'"  Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 61-62

(D.C. Cir. 1990); Am. Fed'n of Gov't Employees v. Dep't of Commerce, 907 F.2d 203, 209

(D.C.Cir.1990); Stebbins v. Nationwide Mut. Ins. Co., 757 F.2d 364, 366 (D.C. Cir. 1985).

Thus, a FOIA requester must follow the agency's published regulations governing FOIA

requests. See 5 U.S.C. § 552(a)(3). If a requester fails "to follow the procedures set forth in the

[agency] regulations, [he] has failed to make a proper request under the FOIA and therefore has

failed to exhaust [his] administrative remedies." Kessler v. United States, 899 F. Supp. 644, 645

(D.D.C. 1995). Furthermore, exhaustion of administrative remedies is required before seeking

judicial review, "so that the agency has an opportunity to exercise its discretion and expertise on

the matter and to make a factual record to support its decision." Oglesby, 920 F.2d at 61. See

also Hidalgo v. F.B.I., 344 F.3d 1256, 1259 (D.C. Cir. 2003) (the FOIA's administrative scheme

"favors treating failure to exhaust as a bar to judicial review"). When a Plaintiff has failed to

exhaust administrative remedies prior to filing suit, dismissal under Rule 12(b)(6) is proper. See

Id. at 1258-59 (dismissing plaintiff's complaint for failure to exhaust under Rule 12(b)(6) and not

under Rule 12(b)(1), because exhaustion is "precedential" and not "jurisdictional").

        To the extent Plaintiff alleges a FOIA claim against EOUSA, he has failed to exhaust his

administrative remedies because he had not made a specific FOIA request of them. According to

Mr. Boseker, a search of EOUSA's computer case tracking system (Oracle) revealed only that

Plaintiff had made a request dated July 29, 1992, FOIA No. 92-1221. See Boseker Decl. at ¶ 6.

The FOIA matter was closed September-October 1992, without any administrative appeal. See

id. The records were ultimately sent to the Federal Records Center ("FRC") for storage and

ultimate disposal. See id. FRC records indicate that this file was destroyed in 1999 pursuant to

normal procedure. See id. and Exhibits A and B attached thereto. Moreover, EOUSA has not

received any other FOIA or Privacy Act requests from Plaintiff to date.  See id. at ¶ 7.  Thus,

Plaintiff's FOIA claims against EOUSA should be dismissed pursuant to Fed. R. Civ. P.

12(b)(6).

## VI.   Plaintiff's Privacy Act Claims Against The BOP And FBI Are Barred

Plaintiff's Complaint is also brought under the Privacy Act.  See generally Complaint.

The Privacy Act requires that agencies maintain their records "with such accuracy, relevance,

timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the

determination." 5 U.S.C. § 552a(e)(5);  Sellers v. Bureau of Prisons, 959 F.2d 307, 312 (D.C.

Cir. 1992). The Privacy Act provides both administrative and civil remedies for violations of its

provisions.  Under § 552a(d)(2), for instance, an individual may request that an agency

administratively amend records he claims are inaccurate.  Under § 552a(g)(1)(C), an individual

may bring a civil action if an agency's failure to maintain accurate records results in a

determination adverse to him, but may collect damages under § 552a(g)(4) only if the agency's

conduct was willful or intentional.  Sellers, 959 F.2d at 312.  Injunctive relief is not available

under this act and Plaintiff has not demonstrated the requirements of 18 U.S.C. § 3626, have

been met. Risley v. Hawk, 108 F.3d 1396, 1397 (D.C. Cir. 1997).

With respect to the BOP and the FBI, Plaintiff has again failed to exhaust his

administrative remedies.[4]  Just as under the FOIA, requesters of amendment and access remedies

---

[4]  While "exhaustion of administrative remedies is not required where an individual seeks
damages pursuant to 5 U.S.C. § 552a(g)(4)," see Hubbard v. U.S. Enviromental Protection
Agency, Administrator, et al., 809 F.2d 1, 4 reh'g en banc granted in part (1987), Plaintiff here
neither requests money damages nor identifies how the records are erroneous.  Even if Plaintiff
had made a claim for damages, he has failed to "prove a causal relationship between the allegedly
erroneous record and an adverse determination based on that record."  See id. at 308-09 (citations
and quotation omitted).  Morever, Plaintiff fails to demonstrate how either agency's alleged

under the Privacy Act must administratively appeal adverse determinations by an agency if

published agency regulations so require.  <u>See</u> 5 U.S.C. 552a(f)(4); <u>see also</u> <u>Haase v. Sessions</u>,

893 F.2d 370, 373 (D.C. Cir. 1990); <u>Hill v. U.S. Air Force</u>, 795 F.2d 1067, 1069 (D.C. Cir.

1986).  Adverse Privacy Act determinations by the FBI must be appealed to the OIP within 60

days.  28 C.F.R. 16.45(a) (implementing 5 U.S.C. § 552a(f)(4) by regulation stating procedures

for appeal of adverse Privacy Act determinations by a component of the DOJ).

### A.    <u>BOP</u>

The Federal Bureau of Prisons has established an administrative remedy procedure

through which a federal prisoner may challenge any aspect of his imprisonment.  These

procedures, codified at 28 C.F.R. 542.10, <u>et</u> <u>seq</u>., provide three levels of appeal (institutional,

regional, and national) to an inmate who has not been able to informally resolve his complaint.

A decision by the Bureau of Prisons is not final and hence not reviewable until relief has been

denied by the Central Office.  28 C.F.R. § 542.15.  <u>See</u> Hauck-DeCuir Decl. at ¶ 30.  Plaintiff is

incarcerated and therefore is subject to the exhaustion requirements embodied in the Prison

Litigation Reform Act of 1995 (PLRA), 42 U.S.C. §1997(e).  <u>Porter v. Nussle</u>, 534 S.Ct. 516,

524 (2002).

> Statutes sometimes provide administrative procedures as the exclusive remedy.
> Even apart from a statutory command, it is common sense to permit the simple,
> speedy, and inexpensive processes of the administrative machinery to sift the facts
> and compile a complete record for the benefit of any reviewing courts.

<u>Moore v. City of East Cleveland, Ohio</u>, 431 U.S. 494 (1977).

---

conduct was willful or intentional.  <u>Sellers</u>, 959 F.2d at 312

28

The PLRA amended 42 U.S.C. § 1997e, which now states "[n]o action shall be brought .... by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." Booth v. Churner, 532 U.S. 731 (2001); Porter v. Nussle, 534 U.S. 516 (2002). The PLRA's exhaustion requirement attaches when a confined prisoner **commences** a lawsuit. Jackson v. District of Columbia, 254 F.3d 262, 269-70 (D.C. Cir. 2001).

The Bureau Program Statement 5800.11, Inmate Central File, Privacy Folder, and Parole Mini Files (September 8, 1997), see Attachment 14 to Hauck-DeCuir Decl. at pages 19-21, provides for investigation of claimed inaccuracies in documents maintained by the Bureau but created by other entities. However, the inmate is required to provide staff with sufficient information in support of a challenge. See id. When an inmate provides such information, staff shall review the alleged error(s) and take reasonable steps to ensure the information is correct. See id.

A review of Plaintiff's central file failed to reveal that he has filed any requests with his Unit Team, alleging errors in the documents maintained therein. See Hauck-DeCuir Decl. at ¶ 29. To date, BOP computerized administrative remedy records reveal that Plaintiff has not filed any Requests for Administrative Remedy regarding alleged inaccurate information in his central file from July 16, 2001 (the date of the shooting of Joseph Campanella) to the present. See Hauck-DeCuir Decl. at ¶ 31 and Attachment 15 thereto. Because Plaintiff has failed to exhaust the formal administrative remedy process concerning the alleged failure of BOP staff to correct errors in his BOP file, his Privacy Act claims against BOP should be dismissed.

Even if Plaintiff had filed an administrative request to amend his central file, his claim would still be barred.  As a law enforcement agency, the Bureau of Prisons may be exempted from certain provisions of the Privacy Act.  See 5 U.S.C. § 552a(j)(2).  In 1987, the Department of Justice published a regulation exempting the Bureau of Prisons from the *amendment* provision of the Privacy Act, 5 U.S.C. §552a(d)(2).  See 28 C.F.R. § 16.85 (1987); Risley v. Hawk, 108 F.3d 1396, 1397 (D.C. Cir. 1997).  The Circuit Court of Appeals held, however, that, because the Bureau of Prisons had not been exempted from the *accuracy* provision of the Privacy Act, the Bureau of Prisons remained subject to civil actions under subsection (g)(1)(C) of the Act. Sellers, 959 F.2d at 309 (allowing civil action against Bureau of Prisons because "regulations governing the Bureau of Prisons and U.S. Parole Commission do not exempt those agencies' records from section (e)(5) of the Act"); see also Deters v. U.S. Parole Comm'n, 85 F.3d 655, 657 (D.C. Cir. 1996) ("Subsection (g)(1)(C) provides a civil remedy if an agency fails to satisfy the standard in subsection (e)(5)").

This changed in 2002, when the Department of Justice published a regulation exempting certain Bureau of Prisons' record systems from the *accuracy* provision of the Privacy Act, § 552a(e)(5).  See 28 C.F.R. § 16.97.  The new regulation went into effect on August 9, 2002. Among the record systems newly exempted from the accuracy provision was the Bureau of Prisons's Inmate Central Records System.

The impact of the 2002 regulations on cases such as this one was recently recognized by the Court of Appeals in Martinez v. BOP, 444 F.3d 620, 624 (D.C. Cir. 2006):

> [T]he district court properly dismissed appellant's claims against the BOP. The BOP has exempted its Inmate Central Record System from the accuracy provisions of the Privacy Act, 5 U.S.C. § 552a(e)(5). *See* 28 C.F.R. § 16.97(j). Appellant does not challenge the

30

BOP's authority to exempt its records, and the BOP did not expressly waive the exemption. Even if it had waived the exemption, the record shows that the BOP provided a reasonable explanation for its refusal to correct its records as appellant requested. The BOP contacted the USPC and the USPO and was advised that the BOP's records regarding appellant were accurate.

Martinez, 444 F.3d at 624.

Plaintiff's PSI, one of the only records Plaintiff specifically mentions in his Complaint, is maintained in the Inmate Central Records System, which is exempt from the amendment and accuracy provisions of the Privacy Act. See Hauck-DeCuir Decl. at ¶ 29. Accordingly, Plaintiff cannot demonstrate that the Court has jurisdiction over his Privacy Act claim, nor has he stated a claim upon which relief can be granted.

**B.    FBI**

The Privacy Act, 5 U.S.C. §552a (d)(2), gives an individual the right to request that the FBI amend any records pertaining to him, which are believed to be inaccurate, irrelevant, untimely, or incomplete. See Hardy Decl. at ¶ 28. The Act also requires that the FBI maintain all information relied upon to make a determination about an individual with that degree of accuracy, relevancy, timeliness, and completeness as to assure fairness in any determination affecting him. See id.

A request to amend information from the files of the FBI must be made by the individual who is the subject of the specific records to be amended, and it must be submitted in accordance with the amendment provisions of the Privacy Act, 5 U.S.C. §552a (d)(2)-(4). See id. at ¶ 29. A letter seeking amendment or expungement of FBI records should indicate the particular record involved, the nature of the action sought (amendment, correction, expungement), and the justification for the requested action. See id. To date, the FBI has no record of receiving a

31

Privacy Act amended request from Plaintiff, <u>see</u> <u>id.</u> at ¶ 27, thus his Privacy Act claims against the FBI should be dismissed pursuant to 12(b)(6).

**VII.    The Parole Commission And BOP Are Exempt From The Record-Amendment Requirements Of Section (d) Of The Privacy Act**

Subsection (d)(2) of the Act requires a federal agency to permit an individual who is the subject of the agency's records to request amendment of any record pertaining to him. In the case of an agency refusal to do so, the Act permits the individual to bring a civil action which may result in a court order to amend the disputed record. <u>See</u> 5 U.S.C. § 552a(g)(1)(A) & (C) and § 552a(g)(2)(A). However, the Privacy Act also allows the head of certain law enforcement agencies to promulgate regulations exempting any of the agency's system of records from specified provisions of the Act, including subsection (d)(2). <u>See</u> 5 U.S.C. § 552a(j). Pursuant to this authority, the Chairman of the U.S. Parole Commission has exempted the agency's decision-making files from the reach of subsection (d)(2). <u>See</u> 28 C.F.R. § 16.85. <u>See also</u> <u>Deters v. U.S. Parole Comm'n</u>, 85 F.3d 655, 658 at n.2 (D.C. Cir. 1996) (finding U.S. Parole Commission exempt from amendment provisions).

Therefore, Plaintiff's complaint fails to state a claim upon which relief could be granted, insofar as it concerns the Commission's alleged refusal or failure to correct its records to conform with Plaintiff's non-specific, unsupported assertions concerning the falsity of its records. Therefore, under Rule 12 (b)(6), the claim for relief under § 552a(g)(1)(A) against the U.S. Parole Commission must be dismissed.

The Parole Commission as a law enforcement agency is exempt from the record-amendment requirements of the Privacy Act, 5 U.S.C. §552a(d)(2). <u>See</u> <u>Fendler v. United States</u>

32

Parole Commission, 774 F.2d 975, 979 (9th Cir. 1985). It therefore has no duty to investigate (independently of the parole hearing process) the accuracy of information in a presentence report, in prison institutional records, or parole summaries of those records. See Buxton v. U.S. Parole Comm'n, 844 F. Supp. 642, 644 (D. Ore. 1994)("Both BOP and the USPC are exempt from the record-amendment requirements of 5 U.S.C. 552a(d), which requires agencies to investigate claimed inaccuracies in government records."). Plaintiff's prior criminal and institutional records are contained in his presentence report, various Bureau of Prisons documents, and parole summaries. Records such as the presentence report, the Bureau of Prisons documents (including the Progress Report of which Plaintiff complains), and the parole summaries maintained by an agency such as the U.S. Parole Commission, can be exempted from certain provisions of the Privacy Act. Section 552a(j)(2) of 5 U.S.C. permits the Department of Justice to promulgate such an exemption for records

> maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws ... and the activities of prosecutors, courts, **correctional**, **probation, pardon, or parole authorities**, and which consists ... (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a(j)(2)(emphasis added). Presentence reports, Bureau of Prisons documents, and parole summaries clearly fall within this exemption. The Justice Department has exempted the Parole Commission from the record-amendment requirements of the Privacy Act, 5 U.S.C. §552a(d). See 28 C.F.R. §16.85(a)(2).

33

**VIII.   The Parole Commission Has Complied With 5 U.S.C. §552a(e)(5) By Providing
Plaintiff With Parole Hearings, i.e., A Fair Opportunity To Present His Contentions
About The Documents In His File.**

Section 552a(e)(5) of the Privacy Act requires that an agency maintain all records which
are used by the agency in making any determination about any individual with such accuracy,
relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the
individual in the determination.  The Privacy Act provides civil remedies at 5 U.S.C. §552a(g)
for violations of §552a(e)(5) of the Act.  Section (g)(1)(C) provides that an individual may bring
a civil action against an agency which "fails to maintain any record concerning an individual with
such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness . . . ."
Section (g)(4) provides for civil remedies if the plaintiff can show that the agency willfully or
intentionally failed to maintain a record which resulted in an adverse determination.[5]

Defendants do not dispute that they have an obligation to undertake efforts to maintain
accurate records.  The U.S. Court of Appeals for the District of Columbia Circuit held that under
§552a(e)(5), "as long as the information contained in agency's files is capable of being verified,
then. . . the agency must take reasonable steps to maintain the accuracy of the information to
ensure fairness to the individual."  Sellers v. Bureau of Prisons, 959 F.2d 307, 312 (D.C. Cir.
1992).  The record shows that the Parole Commission has fulfilled its obligation in this case by
conducting several hearings in Plaintiff's case.  In Buxton, supra, 844 F. Supp. at 644, the court
held that the "fairness" requirement of Section (e)(5) of the Privacy Act does not require the
Commission to "investigate" a disputed presentence report, but only "to review the information

---

[5]  Defendants make this argument out of an abundance of caution as Plaintiff's Complaint is
silent regarding money damages.

that has been furnished by other government agencies, the courts and the prisoner, and conduct a parole hearing." <u>See</u> 18 U.S.C. § 4207 (regarding information to consider in making parole decisions). The <u>Buxton</u> court held that the Parole Commission is an adjudicatory agency that achieves "fairness" by holding a parole hearing with an opportunity for the prisoner to refute allegations in the record that he disputes. This opportunity was afforded the Plaintiff.

<u>Sellers</u> does not, moreover, require a de novo court review of the underlying issues of fact, only limited review to determine if the agency followed procedures that were not "willfully and intentionally" unfair. <u>See</u> <u>Sellers</u>, 959 F.2d at 312, <u>citing</u> <u>White v. Office of Personnel Management</u>, 787 F.2d 660 (D.C. Cir. 1986). Moreover, <u>Sellers</u> recognizes that a "reasonable step" is a hearing with "an opportunity to refute the charges." <u>Sellers</u>, <u>supra</u> 959 F.2d at 312.

By complying with the statutes governing the parole hearing process, 18 U.S.C. § 4206 through § 4215, the Parole Commission has provided Plaintiff with the fairness required by the Privacy Act subsection (e)(5). Congress clearly intended to set the definitive standards for achieving "fairness" in Parole Commission determinations when it enacted the Parole Commission and Reorganization Act of 1976. A parole hearing is an eligible federal prisoner's prescribed statutory means to "ensure fair consideration of all relevant material including that offered by the prisoner." <u>See</u> House Conference Report No. 94-838, <u>Joint Explanatory Statement of the Committee of Conference</u> at page 21, <u>reprinted in</u> 1976 <u>U.S.Code Cong. & Ad. News</u> at 353 (1976). The inmate is given advance opportunity to review the documents the Commission intends to rely upon, 18 U.S.C. § 4208, and the opportunity to challenge the information contained therein at the hearing. 28 C.F.R. §2.19(c).

By conducting its parole hearings according to the procedures mandated by Congress at 18 U.S.C. § 4208, the Parole Commission automatically complies with §552a(e)(5) of the Privacy Act.  See Buxton, 844 F.Supp. at 644.  Therefore, the section 552a(e)(5) "fairness" standard was satisfied.  "Willful and intentional" unfairness making the agency liable for damages under the Privacy Act section (g) would be provable only if Plaintiff could show, for example, that, under (e)(5), the Commission made parole decisions without any attempt to hold a hearing and consider his arguments as to the accuracy of the information in his file.

In this case, Plaintiff  received a hearing where he was able to address the information contained in his file.  Additionally, Plaintiff had an opportunity to appeal the commission's decision to the Commission's National Appeals Board where the information he submitted was reviewed.  Therefore, Plaintiff's claim under the Privacy Act should be dismissed for failure to state a claim.

**IX.**    **Segregability**

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue sua sponte."  Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022, 1028 (D.C. Cir. 1999).  The FOIA requires that, if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions."  5 U.S.C. § 552(b); Mead Data Cent., Inc. v. United States Dept. of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).

36

To demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements." Mead Data, 566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed. Id. All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." Mead Data, 566 F.2d at 261, n.55.

In this matter, all reasonably segregable information has been provided to Plaintiff. See Hauck-DeCuir Decl. at ¶¶ 16-28 (explaining applicability of FOIA exemptions to the redacted or withheld materials and that all segregable information has been released).

## CONCLUSION

Defendant BOP has demonstrated that it responded properly to Plaintiff's FOIA request, releasing to him all records and portions thereof not exempted from disclosure. Defendant EOUSA has demonstrated that Plaintiff has failed to exhaust his administrative remedies with respect to both FOIA and Privacy Act claims. Defendants BOP and FBI have demonstrated that Plaintiff has failed to exhaust administrative remedies regarding his Privacy Act claims. And Defendant Parole Commission has demonstrated that Plaintiff's Privacy Act claim fails to state a claim upon which relief can be granted. Accordingly, Defendants respectfully request that their motion for summary judgment be granted.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney


_____/s/_____
KAREN L. MELNIK, D.C. Bar #436452
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC 20530
(202) 307-0338
(202) 514-8780 (facsimile)


## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of October, 2006, I caused the foregoing to be served

on Plaintiff via first class United States Mail:


Vincent DeMartino
Register No. 22044-053
Beaumont U.S.P.
P.O. Box 26030
Beaumont, TX 77720


_____/s/_____
KAREN L. MELNIK
Assistant United States Attorney