# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **VINCENT DEMARTINO,** | § | |
| **Plaintiff** | § | |
| | § | **Case No. 1:06CV00879-RJL** |
| **v.** | § | |
| | § | |
| | § | |
| **FEDERAL BUREAU OF** | § | |
| **INVESTIGATIONS, ET AL.,** | § | |
| **Defendants.** | § | |

## DECLARATION OF CHRISTINA V. HAUCK-DECUIR

In accordance with the provisions of 28 U.S.C. § 1746, I, Christina V. Hauck-DeCuir, make the following unsworn declaration, under penalty of perjury, pertinent to the above-styled and numbered cause:

1.    I am presently employed with the U.S. Department of Justice as a Paralegal Specialist for the Federal Bureau of Prisons (BOP) at the Federal Correctional Complex in Beaumont, Texas (FCC Beaumont). I have been employed as a Paralegal Specialist at FCC Beaumont from August 1999 to present. As part of the normal course of my duties, I have access to inmate records maintained by the BOP in the ordinary course of business. Included among these records are requests by inmates for documents under the Freedom of Information Act.

2.    The statements I make hereinafter are made on the basis of my review of the official files and records of the BOP, my own personal knowledge, or on the basis of information acquired by me through the performance of my official duties. I am familiar with the procedures followed by the BOP in responding to the Freedom of Information Act (FOIA) / Privacy Act (PA) requests made by federal inmates such as Plaintiff, Vincent DeMartino, Register Number 22044-053.

3.    I have reviewed the Complaint filed by Plaintiff in the above-styled case. During the time of the allegations presented regarding the BOP, Plaintiff was an inmate confined in the United States Penitentiary (USP) in Canaan, Pennsylvania. Plaintiff is presently incarcerated at the USP in Beaumont, Texas.

4.    The files of federal inmates are exempted from access and corrections provisions of the Privacy Act of 1974 pursuant to 5 U.S.C. § 552a(j), as set forth in Title 28 C.F.R. § 16.97, which provide for discretionary review under the FOIA. Inmate Presentence Investigation Reports are part of the inmate system of records maintained by the BOP for each inmate in federal custody. Although inmate files are not subject to the access and corrections provisions found under the Privacy Act, the BOP has implemented an alternative means of access whereby inmates may obtain their records via a review of their files as authorized by BOP Program Statement 5800.11, Inmate Central File, Privacy Folder, and parole Commission Files; and Program Statement 1351.05, Release of Information (a copy of these, and all BOP Program Statements may be obtained at www.bop.gov; see also 28 C.F.R. § 513.30, et seq.).

## SUMMARY OF CORRESPONDENCE AND ADMINISTRATIVE ACTION

5.    Plaintiff, Vincent DeMartino, filed three requests for records with the Northeast Regional Office (NERO) for the BOP while he was at USP Canaan. The first request was dated November 15, 2005, and involved DeMartino requesting documents from "1999, 2001, and 2003 by the United States Parole Offericers [sic] Eastern District of New York of all notes, reports, secretary books, appoint[ment] books, sing [sic] in lists, etc. [sic]." A true and correct copy of Plaintiff's November 15, 2005 request is attached hereto as Attachment 1. He specifically sought 2001 records regarding the shooting of Joseph Campanella on July 16, 2001, to include 911 tapes, notes,

DD5s, 302s, police notes and reports, FBI reports, and any and all information for this event in his file. *Id.* This request was given number 2006-01594, and processed by the NERO. *Id.* The Regional Counsel for the NERO informed Plaintiff via a memorandum dated December 13, 2005 that a search was conducted and no materials were found responsive to his request, as the Bureau of Prisons does not maintain the information he was seeking. A true and correct copy of the response to FOIA Request 2006-01594 is attached hereto as Attachment 2.

6. Plaintiff appealed this request to the Office of Information and Privacy (OIP) on or about December 26, 2005. A true and correct copy of Plaintiff's appeal for FOIA Request 2006-01594 is attached hereto as Attachment 3. This appeal was received by OIP on January 5, 2006. *See id.* Plaintiff received an acknowledgment of his appeal with OIP via a letter dated January 19, 2006. A true and correct copy of the Memorandum by Priscilla Jones regarding the appeal for FOIA Request Number 2006-01594 is attached hereto as Attachment 4. This appeal was assigned number 06-0985 by OIP. *Id.* The OIP requested records from the NERO pertaining to FOIA Request 2006-01594, along with other appeals not at issue from other requesters, on January 27, 2006. A true and correct copy of the request from OIP to Cathy Quigly is attached hereto as Attachment 5. These records were mailed to OIP in response to their request by the NERO on February 3, 2006. *See id.*

7. Under 5 U.S.C. § 552(a)(6)(A), the requester is required to appeal any adverse determinations to the head of the agency (here the BOP has designated the Attorney General, Office of Information at Privacy). The head of the agency then has 20 days after receipt of such appeal to make a determination as to the denial of the request for records. Once a decision has been made on appeal or the twenty-day statutory deadline has passed for the appeal decision to have been made,

the requestor is authorized to bring suit in federal district court pursuant to 5 U.S.C. § 552(a)(4)(B). *See Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 71 (D.C. Cir. 1990). Plaintiff timely filed the instant suit after constructively exhausting his administrative appeals with the BOP on May 10, 2006. [Doc. No. 1].

8.   Plaintiff filed a second FOIA request with the NERO dated November 24, 2005. A true and correct copy of Plaintiff's November 24, 2005 request is attached hereto as Attachment 6. In it, DeMartino sought documents pertaining to a shooting in Brooklyn, New York, occurring on July 16, 2001. The request sought "911 tapes, compleate [sic] conversation transcripts, FBI and police notes, reports, 302's, statements, DD5, police officers on scene reports, radio transmissions, reports for the police and EMT, NYPD housing, FBI, ambulance driers and helper, reports and statements of witness[es] at scene, interviews with Joseph Campanella at hospital and elsewhere, interviews of people at 60th police precinct, interviews with John Florida at 60th precinct, all information on Vincent DeMartino, and names of suspects and witness[es] interviewed at any time at scene, orgigen [sic] of phone numbers of 911 calls made in connection with shooting, any parole reports, monthly reports from 98 to release." *See* Attachment 6. This request was assigned FOIA Request Number 2006-01780. *Id.* Plaintiff was informed via letter dated December 29, 2005 that a search was conducted in response to his request and no responsive materials were found because such documents are not maintained by the BOP. A true and correct copy of Henry J. Sadowski's letter to Vincent DeMartino dated December 29, 2005 is attached hereto as Attachment 7. There is no record of Plaintiff appealing this FOIA request to the OIP.

9.   Plaintiff's third request to the NERO was dated December 26, 2005. In it, inmate DeMartino requested all the documents in his file. A true and correct copy of Plaintiff's December 26, 2005 request is attached hereto as Attachment 8. This request was given FOIA Request Number 2006-02370. *Id.* The NERO responded to this request on February 1, 2006,

informing inmate DeMartino that he could seek a local review of his file to access the releasable portions of his BOP records by contacting staff at his institution.  A true and correct copy of the response to FOIA Request 2006-02370 is attached hereto as Attachment 9.  There is also no record that Plaintiff attempted to appeal this FOIA request to OIP.

## REMEDIAL ACTION TAKEN IN LITIGATION

10.  As stated previously, Plaintiff sought records relating to the shooting of Joseph Campanella on July 16, 2001.  This incident also forms the basis for his current term of incarceration.  A broad reading of these requests indicate he is searching for all documents relating to this shooting maintained by the FBI, the New York Police Department, the U.S. Attorney's Office, and the U.S. Parole Commission.

11.  The BOP does not ordinarily maintain these types of records, nor are they routinely provided to the BOP or placed in an inmate's central file.[1]  However, in a good faith effort to comply with the intent of the FOIA (to ensure an informed citizenry), BOP staff in the South Central Regional Office revisited FOIA Request Numbers 2006-01594, 2006-01780 and 2006-02370 and reviewed 165 pages of documents, comprising the "FOIA Exempt" section of inmate DeMartino's central file.  A true and correct copy of the letter from Michael D. Hood, Regional Counsel, dated August 11, 2006 is attached hereto as Attachment 10.  Six of these pages were released in their entirety, 64 pages were released with excisions, 67 pages were withheld, and 28

---

[1]  Program Statement 5800.11, Inmate Central File, Privacy Folder, and Parole Mini-Files, identifies the types of documents maintained in an inmate's central file.  Some examples include sentence data, detainers, financial responsibility documents, classification information, materials provided to the BOP by the U.S. Parole Commission, visitation and property paperwork, disciplinary reports, pay sheets from an inmate's job assignment(s), information on release preparation, and general correspondence relating to an inmate are some of the topics listed under policy for inclusion in a central file.

pages comprised his Presentence Investigation Report (PSR), which inmate DeMartino was allowed

to review at the local level. Under Program Statement 1351.05, <u>Release of Information</u>, inmates are

not allowed to possess their PSRs while in custody. Attachment 11, true and correct copy of

Program Statement 1351.05, pp. 15-16. Inmates are allowed to review their PSRs by submitting a

request to a member of their Unit Team. Plaintiff was allowed to review the releasable portions of

his Central File on July 18, 2006. A true and correct copy of the receipt signed by Vincent

DeMartino is attached hereto as Attachment 12. Plaintiff's PSR was included in the review of his

Central File on July 18, 2006, so inmate DeMartino has had recent access to this document.

## ADEQUACY OF THE SEARCH

12. The BOP does not investigate the criminal conduct underlying the sentences of

incarceration being served by the inmates. All information the BOP does gather on the inmates in

custody is maintained in a central file at the institution where the inmate is incarcerated. This file is

identified by the inmate's incarcerated name and register number. A search for records in inmate

DeMartino's central file relevant to the July 16, 2001 shooting of Joseph Campanella, the subject of

FOIA Request Numbers 2006-01594 and 2006-01780, was conducted with negative results.

13. As for FOIA Request 2006-02370, Plaintiff requested documents in his file. *See*

Attachment 8. He was initially informed to seek review of the releasable portions of his central file

at the local level. *See* Attachment 9. Even though Plaintiff did not seek an administrative appeal

challenging this decision, BOP staff at the SCRO interpreted this request as broadly as possible and

released 70 pages of documents to inmate DeMartino in some form.

## DESCRIPTION OF RESPONSIVE MATERIAL

14. Attached as Attachment 13 to this declaration is a true and correct copy of the *Vaughn* index that I prepared in relation to the above-captioned case. As it indicates, 64 pages were released with certain information excised from them, 67 pages were withheld in their entirety, 6 pages were released in their entirety, and 28 pages comprised the PSR created by U.S. Probation in relation to his criminal case. The 165 pages reviewed consisted of the following documents:

| Doc. No. | Description | Page(s) |
|---|---|---|
| 1) | Central Inmate Monitoring (CIM) Case Information Summary | 3 |
| 2) | Notification of CIM Classification or Declassification | 1 |
| 3) | SIS Report CAA-5019 | 3 |
| 4) | Separation Request Memorandum | 1 |
| 5) | Memorandum regarding the crime affiliations of inmate DeMartino | 2 |
| 6) | Memorandum regarding inmate DeMartino's crime affiliations | 3 |
| 7) | Memorandum regarding separation assignments and associations within inmate DeMartino's organization. | 4 |
| 8) | Memorandum from Lt. Walicki dated April 3, 1989 | 1 |
| 9) | Memorandum regarding an individual being removed From the Witness Security Program | 2 |
| 10) | Memorandum regarding separation assignments and associations within inmate DeMartino's organization | 3 |
| 11) | Duplicate of Document Number 3 | 3 |
| 12) | Memorandum regarding the CIM classification for inmate DeMartino | 1 |
| 13) | Memorandum requesting approval of CIM assignment | 1 |

| | | |
|---|---|---|
| 14) | CIM Clearance and Separatee Data | 6 |
| 15) | Memorandum from Michael Zenk, dated July 16, 2004 | 1 |
| 16) | Memorandum from Michael Zenk, dated June 28, 2004 | 1 |
| 17) | Memorandum for Michael Zenk regarding CIM information on inmate DeMartino | 1 |
| 18) | Memorandum regarding separation concerns for another inmate | 1 |
| 19) | Electronic mail message regarding another individual | 1 |
| 20) | Electronic mail message requesting clarification for CIM documentation on another inmate | 1 |
| 21) | Electronic mail message regarding the separation assignments on two other inmates | 1 |
| 22) | Memorandum to Central File regarding another inmate | 1 |
| 23) | Memorandum regarding CIM documentation for inmate DeMartino's organization | 1 |
| 24) | Memorandum for Michael Zenk, Request for CIM | 1 |
| 25) | Electronic mail message regarding separation assignments for other members of inmate DeMartino's organization | 1 |
| 26) | Memorandum regarding prisoner separation for members of | 1 |
| 27) | Memorandum regarding another inmate's separation assignment | 1 |
| 28) | Memorandum documenting verification of CIM information for another inmate | 1 |
| 29) | Memorandum to File (FOI Section I) regarding another inmate | 1 |
| 30) | Memorandum regarding separation assignments and associations within inmate DeMartino's organization | 3 |
| 31) | Memorandum to Michael Zenk, dated December 31, 2003 | 1 |
| 32) | CIM classification for another inmate | 1 |

| 33) | Electronic mail message regarding the separation assignments | 1 |
|---|---|---|
| 34) | Memorandum to File regarding necessity of CIM assignment for another inmate | 1 |
| 35) | Memorandum regarding prisoner separation | 1 |
| 36) | CIM documentation regarding another inmate | 1 |
| 37) | Memorandum regarding the organization with which inmate DeMartino is affiliated | 2 |
| 38) | Memorandum regarding the organization with which inmate DeMartino is affiliated | 2 |
| 39) | Memorandum from Michael Zenk, dated November 12, 2003 | 1 |
| 40) | Memorandum to Carlyle Holder, dated October 6, 2003 | 1 |
| 41) | Electronic mail message regarding the separation assignments on two other inmates | 1 |
| 42) | Prisoner Separation Memorandum regarding members of inmate DeMartino's organization | 1 |
| 43) | CIM documentation regarding another inmate | 1 |
| 44) | Inmate Screening, dated March 2, 2006 | 2 |
| 45) | Federal Bureau of Prisons Visitor Information Forms | 11 |
| 46) | NCIC background investigations for visitors | 34 |
| 47) | Fax cover sheet, dated November 10, 2005 | 3 |
| 48) | Electronic mail message dated November 7, 2005 | 1 |
| 49) | Request for Transfer, dated December 12, 2005 | 1 |
| 50) | Request for Transfer, dated September 9, 2005 | 1 |
| 51) | Duplicate of Document Number 3 | 3 |
| 52) | Packet for Incident Report #1367394 | 9 |

| 53) | Administrative Detention Order, dated March 23, 2005 | 1 |
| 54) | Envelope addressed to Counselor Williams | 2 |
| 55) | Visiting Attorney Statement | 2 |
| 56) | Presentence Investigation Report | 28 |

**PAGE COUNT TOTAL:**                                                                    **165**

15. Detailed discussions of the basis and justification for invoking the Freedom of Information Act exemptions for all of the redacted material are set forth below. The exemptions utilized by the BOP to withhold material pursuant to the FOIA are (b)(2) (both low and high), (b)(5), (b)(7)(C), and (b)(7)(F) of 5 U.S.C. § 552.

## WITHHOLDING PURSUANT TO EXEMPTION (b)(2)

16. Title 5 U.S.C. § 552(b)(2) exempts from disclosure information relating to the internal rules and practices of any agency. Exemption 2 applies primarily to two types of materials: (1) internal agency matters so routine or trivial that they are not within the public interest ("low 2 information") and (2) substantial internal matters, the disclosure of which would circumvent the law or "high 2 information". *Piper v. U.S. Dep't of Justice*, 374 F. Supp. 2d 73, 80 (D.D.C. 2005). The BOP applied (b)(2)(low) to excise information from documents 47 and 48 because the documents contained internal facsimile and telephone numbers which would be of no benefit to the public if released. *See* Attachment 13, page 44.

17. Exemption (b)(2)(high) was utilized to excise or withhold information on documents 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 44, 46, 49, 50, 51, 52, and 53. As indicated by Attachment 13, the majority of these documents involved memoranda pertaining to separation

assignments between inmate DeMartino and other individuals, information relating to the

organization inmate DeMartino is associated with, or are documents involving separation concerns

of other inmates. The dates, authors, and institutions where the memoranda were written have been

excised pursuant to (b)(2)(high) because someone could ascertain the identity of the other

individuals named in the documents if this information was released. This information, if released,

could also shed light on the process the BOP utilizes to make decisions regarding whether or not an

inmate requires formal separation from another individual. Additionally, these documents were

created by law enforcement personnel for law enforcement functions, such as the tracking of the

organization with which inmate DeMartino associates, so the excision or withholding of this

information was proper under this exemption because this information, if released, could thwart law

enforcement investigation and exchange of information between agencies.

## WITHHOLDING PURSUANT TO EXEMPTION (b)(5)

18.  Title 5 U.S.C. § 552(b)(5) exempts intra-agency communications which would not be

available by law to a party other than an agency in litigation with the agency. This exemption was

utilized to excise information on documents 3, 11 and 51. *See* Attachment 13, page 3. Document 3,

11 and 51 are all copies of SIS Report CAA-5019. Certain information was excised from page 3 of

the document because this SIS Report is a sensitive internal document whereby the conclusions of

the investigator would be excludable if the information were requested through other means. SIS

Reports are frequently utilized by the BOP to make separation assignments between inmates,

transfer inmates, or make decisions regarding criminal prosecution for certain actions taken by

inmates in BOP custody. The recommendations of the investigator are only suggestions, and do not

necessarily reflect the conclusion of the agency, or the final action taken by the BOP regarding the

matter. Release of the final paragraph of this document could cause SIS staff to withhold their candid personal opinion as to what action the agency should take regarding this incident if it were known that it could be released to the subject inmate. Thus, this information was properly withheld under 5 U.S.C. 552(b)(5).

### WITHHOLDING PURSUANT TO EXEMPTION (b)(7)(C)

19. Exemption (b)(7)(C) prevents disclosure of information for law enforcement purposes when disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(7)(C). To invoke exemption (b)(7), the BOP must be able to demonstrate that records were compiled for law enforcement purposes. The BOP is a law enforcement agency. Indeed, the term "law enforcement officer" is defined as "an employee of the Bureau of Prisons . . . ." 5 U.S.C. § 8401(17)(D)(I). Furthermore, BOP employees perform inherently law enforcement functions. They possess the authority to make arrests, 18 U.S.C. § 3015; seize evidence, 18 U.S.C. § 4012; and execute searches on inmates and visitors to the institution, 28 C.F.R. §§ 511.10-511.12, 552.10-552.14. Additionally, the BOP is tasked with the law enforcement mission of protecting inmates, staff and the community. As such, the files of federal inmates, including the ones maintained in relation to inmate DeMartino, are essential to BOP staff in carrying out the law enforcement mission of the BOP.

20. Exemption (b)(7)(C) was applied to excise or withhold information in its entirety on documents 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 27, 28, 29, 30, 31, 32, 33, 34, 36, 37, 38, 39, 40, 41, 43, 47, 51, and 53. *See* Attachment 13. Many of the above-numbered documents are memoranda created to support Central Inmate Monitoring information on inmate DeMartino or other individuals with whom he associates within his organization. The

confidentiality of this information is vital to law enforcement officials who are charged with the

safety of inmates in the BOP's custody. Release of this information could be detrimental to the

other individuals named in the documents, as it lists their locations and affiliations, which could be

used by inmate DeMartino to retaliate against, threaten or harass these individuals. The decision to

withhold the information was based on a balancing between the privacy interests of the individuals

named in the documents against any discernable public interest in disclosure of the individuals'

identities. Inmate DeMartino did not list any public interest which would be served by the release

of the names of other individuals listed in the documents located in his central file, nor has he

provided any potential public interest which would outweigh the privacy interests of the individuals

named in these documents. Thus, disclosure of the identities of the other individuals listed in the

documents would be an unwarranted invasion of their personal privacy which would jeopardize

their safety if released.

21.  Documents 45 and 46 were properly excised or withheld under (b)(7)(C) because they

concerned visitor forms completed by third parties and NCIC reports generated in response to their

request for visitation privileges with inmate DeMartino. *See* Attachment 13, pages 42 and 43.

Disclosure of NCIC background or other records or information regarding prospective visitors for

inmate DeMartino is a clear violation of their personal privacy as such data contains records of past

criminal actions, social security numbers and other sensitive and personal information. Inmate

DeMartino's possession and procurement of such information, absent the express consent of the

individuals about whom the record pertains, poses a direct and unreasonable violation of their

respective personal privacy rights. After balancing the competing privacy interests between the

public right to know and the privacy interests involved, the BOP concluded that the privacy interests

of the individuals identified in these documents outweighed any public interest. Accordingly,

exemption (b)(7)(C) was invoked to withhold the majority of the pages from document 46, and

excise personal information from document 45.

## WITHHOLDING PURSUANT TO EXEMPTION (b)(7)(F)

22. In addition to (b)(7)(C), exemption (b)(7)(F) was appropriately invoked to withhold

certain information either in whole or in part from documents 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 14, 15,

16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42,

43, 51, 52, and 53. *See* Attachment 13. Title 5 U.S.C. § 552(b)(7)(F) provides for the withholding

of records or information compiled for law enforcement purposes, the release of which could

reasonably be expected to endanger the life or personal safety of an individual.

23. As reflected in the *Vaughn* index included at Attachment 13, the information withheld

pursuant to the (b)(7)(F) exemption consists of documents and information collected for law

enforcement purposes or confidential information regarding a law enforcement investigation or

criminal prosecution which relates to other individuals other than inmate DeMartino. Release of

this sensitive information through the FOIA process could endanger the safety of the individuals in a

prison setting by identifying them as cooperating with the federal government or other individuals.

On account of their relationship with either inmate DeMartino or the organization inmate

DeMartino is affiliated with, these inmates received a Central Inmate Monitoring (CIM) assignment

of "separatee," which means they are to be kept separate from DeMartino or others. The release of

the information could compromise an investigation conducted by other law enforcement agencies

regarding the other individuals named in the documents. Such disclosure would defeat the very

purpose of the compilation of confidential information, by providing DeMartino and others with the

means of discovering which individuals the BOP and other agencies have received information from. This compilation of confidential information is essential to the BOP in order to deter violence in the BOP system. Such disclosure could undermine the effectiveness of the collection of the confidential information, and potentially lead to violence within the BOP. Therefore, all information regarding inmate DeMartino's separation orders was properly withheld under exemption (b)(7)(F) because of the real threat of endangering the lives and physical safety of inmate DeMartino and the other individuals listed in the documents.

24.   Moreover, out of the information withheld under (b)(7)(F) from documents 7, 9, 10, 19, 20, 21, 22, 23, 25, 26, 27, 28, 29, 32, 33, 34, 35, 36, 41, 42, 43, and 46 none of these communications mentions inmate DeMartino's name in them at all, nor are any of them related to the circumstances surrounding his criminal case. These documents were withheld from release because the release of the information could pose a threat to the lives of physical safety of the individuals named in the documents. They also mention relationships within inmate DeMartino's organization, and the reasons these individuals must be separated from other individuals within the organization. In order to protect the security, discipline and good order of the institution this information was withheld. Based upon this information, and the very real threat that the release of this information could endanger the life or physical safety of either inmate DeMartino or the other individuals mentioned in the documents, the names and other identifying information of the other persons were properly withheld under (b)(7)(F).

## WITHHOLDING PURSUANT TO BOP POLICY

25.   Under Program Statement 1351.05, Release of Information, inmates are prohibited from obtaining or possessing copies of their Presentence Investigation Reports (PSR). *See* Attachment

11. The purpose behind this prohibition is the documented problem of inmates pressuring other inmates for a copy of their PSRs and Statement of Reasons from their Judgment and Commitment Orders to learn if they are informants, gang members, have financial resources, or other pertinent information. *Id.* Even though inmates are prohibited from possessing photocopies of their own PSRs, they are allowed the reasonable opportunity to review their PSRs through unit staff, as PSRs are normally to be kept in the releasable section of an inmate's central file. *Id.* Inmate DeMartino was allowed to review the releasable portions of his central file, to include his PSR, on July 18, 2006. *See* Attachment 12. Even though inmate DeMartino was prohibited from obtaining a copy of his PSR under BOP policy (document # 56 on Attachment 13), he was allowed to have access to it, so he has recently reviewed the 28 pages comprising his PSR.

## SEGREGABILITY

26. The documents reviewed for this FOIA request were examined to determine whether any reasonably segregable section of information could be released. Pages were withheld in their entirety where, based upon the review, the release of any additional information would (1) result in the disclosure of no useful information, or incomprehensible words and/or phrases that would not shed any light on how the Government conducts business, (2) could result in compromising the identity of and information provided by sources of information who were given either express or implied grants of confidentiality, (3) would be an unwarranted invasion of personal privacy when balanced against the public interest in the release of information gathered during the course of either a criminal investigation or an internal BOP review, and/or (4) place in jeopardy the lives and safety of third parties mentioned in the documents, to include investigators and members of inmate DeMartino's organization.

27. The 165 pages comprising the "FOIA Exempt" section of inmate DeMartino's central file were reviewed and a determination was made to release 6 pages in their entirety. Sixty-four pages were released with excisions, and 67 pages were withheld in their entirety. The redactions completed on the 64 pages were done in such a manner so that inmate DeMartino would be able to determine the type of document he was receiving, its purpose, and his involvement with the matter. The information excised pertained to other individuals, the release of which would be an unwarranted invasion of personal privacy, and could also potentially threaten the lives and safety of these individuals if the information was released in its entirety. Inmate DeMartino was allowed to review the 28 pages comprising his PSR, but could not have a copy of it in his possession under BOP policy.

28. The 67 pages withheld in their entirety related to third parties. Many of the documents involved the organization with which inmate DeMartino is associated. Numerous documents also involved separation concerns of other individuals within the organization. The documents would compromise the identity of these individuals if they were released, would be an unwarranted invasion of personal privacy, and would place the lives of these individuals at risk if the documents were disclosed. These pages were appropriately withheld under the applicable exemptions to the FOIA.

## PRIVACY ACT ISSUES

29. Inmate DeMartino is additionally alleging he has placed the FBI, U.S. Attorney's Office, U.S. Probation, the BOP, and the Main Office of NCIC on notice that his records are inaccurate, but that no corrective action has been taken to bring his records into compliance with 5 U.S.C. § 552a (e)(5), (g)(1)(C), and (g)(4). *See* Complaint at 5. Unfortunately, Plaintiff does not

cite to any specific document or alleged inaccurate statement to support his claims. *See generally*

Complaint. As previously stated, the files of federal inmates are exempted from access and

corrections provisions of the Privacy Act of 1974 pursuant to 5 U.S.C. § 552a(j), as set forth in

28 C.F.R. § 16.97. Inmate PSRs are maintained in the BOP's inmate system of records. Under

BOP Program Statement 5800.11, Inmate Central File, Privacy Folder, and Parole Mini-Files, an

inmate may challenge the accuracy of the information in his or her inmate Central File. Attachment

14, true and correct copy of Program Statement 5800.11, pp. 19-20. However, the inmate is

required to provide staff with sufficient information in support of a challenge. *Id.* at 19. When an

inmate provides such information, staff shall review the alleged error(s) and take reasonable steps to

ensure the information is correct. *Id.* A review of inmate DeMartino's central file failed to reveal

that he has filed any requests with his Unit Team alleging errors in the documents maintained there.

Further, as stated in the BOP policy, the U.S. Probation Office cannot change or add addendums to

an inmate's PSR after sentencing since it is a court document. *Id.* No documentation exists that

inmate DeMartino has notified the BOP of any alleged inaccuracies in his central file to date.

    30.  The BOP also has a four level administrative remedy process that inmates may utilize to

challenge issues related to their custody. 28 C.F.R. §§ 542.10, *et seq.* The administrative remedy

process is begun by an inmate presenting his issue to staff for an attempt at informal resolution.

Should informal resolution prove unsuccessful, an inmate may begin the formal Administrative

Remedy process by filing a Request for Administrative Remedy at the institution where the inmate

is incarcerated. 28 C.F.R. § 542.14(a). If the inmate's complaint is denied at the institution level,

the inmate may appeal by filing a Regional Administrative Remedy Appeal with the Regional

Office for the geographic region in which the inmate's institution of confinement is located.

28 C.F.R. § 542.15(a). This is the third step of the process. For an inmate at FCC Beaumont, this appeal would be filed with the South Central Regional Office of the BOP in Dallas, Texas. If the Regional Office denies relief, the inmate can appeal to the BOP's Office of General Counsel via a Central Office Administrative Remedy Appeal. *Id.* This is the final step of the process.

31. BOP computerized administrative remedy records reveal that Plaintiff has not filed any Requests for Administrative Remedy regarding alleged inaccurate information in his central file from July 16, 2001 (the date of the shooting of Joseph Campanella) to the present. *See* Attachment 15, true and correct copy of the Administrative Remedy Generalized Retrieval for inmate DeMartino, dated August 28, 2006. As such, Plaintiff has failed to exhaust the formal administrative remedy process concerning the alleged failure of BOP staff to correct errors in his BOP file.

I declare that the foregoing is true and correct to the best of my knowledge and belief, and is given under penalty of perjury pursuant to 28 U.S.C. § 1746.

Executed this 11th day of October, 2006.

Christina V. Hauck-DeCuir
Paralegal Specialist
U.S. Department of Justice
Federal Bureau of Prisons
FCC Beaumont, Texas

# ATTACHMENT 1



Vincent DeMartino
22044-053
PO Box 300
Waymart PA 18472

docs not maintained by BOP

Ready to Work on

DATE RECEIVED
NOV 28 2005

Bureau of Prison North East Regional Office
Freedom of Information Unit
→ U.S. Custom House, 7th Floor
2nd and Chestnut Street
Philadelphia, PA 19106

DATE: Nov 15, 2005

**RE: FREEDOM OF INFORMATION
REQUEST FOR DOCUMENTS**

Dear Chief F.O.I.A. Officer:

This is a request for documents pursuant to Title 5 § 552, the Freedom Of Information Act and Privacy Act 5 U.S.C. § 552 a.

I request copies of the following documents that are in your possession that pertains to me, these documents are as followe:

(1) The Year's 1999, 2001, 2003. United States Parole Officiers Eastern Dist New York P.O. Williams first Name David. And any FBI investergations ect all. Notes, Reports, Secretary Books, Appoint Books, sing in lists ect all. On me Vincent DeMartino Date of Birth 07/07/55. S.S# 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.

(2) For the Year 2001 Especially the Shooting of Joseph Camponella on July 16, 2001 at 2:30 afternoon On West 32 Street and Surf ane in Coney Island Bklyn. I would like all information you have. 911 Tapes, Notes, DD5, 302's, Police Notes and Reports Any documents ect. all. Anything you have all of it. logs, Photos, tapes, Journals, Video Tapes;

1 of 4

(3) F.B.I Reports, Documents, 911 tapes. all
Calls, Notes, reports, 302's, any files, copy, ect all
Any and all information in file; Thank you Vincent
Vincent T/e Martino Date of Birth 07/07/53
SS 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. logs, Photo's, Journals, Video Tapes

(4) _____

_____

_____

_____

(5) _____

_____

_____

_____

As you know , the Freedom of Information Act provides that
if portions of a document are exempt from release, the remainder
must be segregated and disclosed.    Therefore, I will expect
you to send me all nonexempt portions of the records which I
have requested, and ask that you justify any deletions with
reference to specific exemptions of FOIA.

The information I seek is not to be used for commercial
benefit, so I do not expect to be charged any fees for your
search and review of the material to see if it falls within
one of FOIA's exemptions.

Furthermore, the FOIA provides a waiver or reduction of
search and duplication fees where the "disclosure of the
information is in the public interest, because it is likely
to contribute significantly to the public understanding of the
operations or activities of the government and is not primarily
in the commercial interest of the requester." This request
should be exempt from all fees because, I am an indigent person
in Federal Custody seeking information, by way of documents;

2 of 4

audio or video tapes; journals or logs, that will demonstrate an injustice imposed on me by your agency. Also, and in accordance with the provisions of the FOIA, you shall have ten working days to render a response to this request. In the event you shall fail to do so, I accept such failure as a denial of my request and proceed with an administrative appeal.

Respectfully submitted

*Vincent DeMartino*

NAME: *Vincent De Martino*

REG.# *22044-053*

ADDRESS *Po Box 300*

*Waymart PA 18472*

*Date of Birth 07/07/55*

*SS# 128486232*

## CERTIFICATION OF IDENTITY

Privacy Act Statement, in accordance with 28 CFR Section 16.41 (d) personal data sufficient to identify the individuals submitting request by mail under the Privacy Act of 1974, 5 U.S.C. Section 522 a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Failure to furnish this information will result in no action being taken on the request. False information on this form may subject the requester to criminal penalties under 18 U.S.C. § 1001 and/or 5 U.S.C. 522 a (i) (3).

NAME: *Vincent DeMartino Vincent DeMartino # 22044053*

CURRENT ADDRESS: *Po Box 300*

*Waymart PA 18472*

DATE OF BIRTH: *07/07/55*

*SS# 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*

*3 of 4*

PLACE OF BIRTH: U.S.A Brooklyn  DOB 7/7/55

SOCIAL SECURITY NUMBER: 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

I, hereby declare under the penalty of perjury that the foregoing identification information is my own and of no other person/persons, I make this declaration pursuant to 28 U.S.C. § 1746 (2).

Respectfully submitted

Vincent DeMartino

NAME: Vincent DeMARtino

REG.# 22044053

ADDRESS: Po Box 300

WAymARt PA 18472

4 of 4

# ATTACHMENT 2

U.S. Department of Justice
Federal Bureau of Prisons
Northeast Regional Office

U.S. Custom House - 7th Floor
2nd & Chestnut Streets
*Philadelphia, PA. 19106*

December 13, 2005

Vincent DeMartino, Reg. No. 22044-053
United States Penitentiary - Canaan
P. O. Box 300
Waymart, Pennsylvania 18472

RE:  Freedom of Information Request No. 2006-01594

Dear Mr. DeMartino:

This is in response to your request for information that was
received by this agency on November 28, 2005.  You seek copies of
documents prepared by your parole officer.  You also seek any and
all investigative materials gathered by and/or prepared by the
FBI regarding a shooting which took place on July 16, 2001, in
Coney Island.

A search was conducted and no materials were found responsive to
your request.  The Bureau of Prisons does not maintain the
information you are seeking.

I trust this has been responsive to your request.  However, if
you are dissatisfied with this response, specifically the
adequacy of the search, you may appeal to the Attorney General by
filing a written appeal within 60 days of your receipt of this
response to: Attorney General, Office of Information and Privacy,
United States Department of Justice, FLAG Building, Suite 540,
N.W., Washington, D.C.  20530.  Both the envelope and the letter
of appeal itself should be clearly marked: "Freedom of
Information Act Appeal".

Sincerely,

Henry J. Sadowski
Regional Counsel

# ATTACHMENT 3

06-0985

Dec 26, 2005 BOP/
Closed
12/13/05 Nero
No Record

Dear Attorney General

I am Appealing the dissatisfied respone in Case# 2006-01594. Can't at least have the papers you have in my file. If you do not have what I asked for. Please give me a copy of what is there Thanking you in advance for your time and help in this Matter.

Sincerly
Vincent

USP CANAAN
Vincent De MARTino
22044053
PO BOX 300
Waymart PA 18472

**OFFICE OF INFORMATION AND PRIVACY**

**JAN 0 5 2006**

**RECEIVED**

# ATTACHMENT 4

**U.S. Department of Justice**

Office of Information and Privacy

_____

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*


Mr. Vincent DeMartino
Register No. 22044-053
United States Penitentiary                    **JAN 1 9 2006**
P.O. Box 300
Waymart, PA 18472

      Re: Request No. 2006-01594

Dear Mr. DeMartino:

     This is to advise you that your administrative appeal from the action of the Federal Bureau of Prisons was received by this Office on January 5, 2006.

     The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours. In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number **06-0985**. Please mention this number in any future correspondence to this Office regarding this matter.

     We will notify you of the decision on your appeal as soon as we can. We regret the necessity of this delay and appreciate your continued patience.

                   Sincerely,

                   Priscilla Jones
                   Chief, Administrative Staff


BOP

# ATTACHMENT 5

**U.S. Department of Justice**

Office of Information and Privacy

---

Telephone: (202) 514-3642                    Washington, D.C. 20530

**January 27, 2006**

**MEMORANDUM**

TO:      **CATHY QUIGLY**
             **BOP/NERO**

FROM:    **CHIQUITA HAIRSTON**
             **INFORMATION ASSISTANT**

SUBJECT:  **APPEAL (S) NOTIFICATION**

Attached hereto are copies of Freedom of Information and Privacy Act appeals received in this Office from initial request determinations made by your component.

Please direct copies of all background correspondence pertinent to these appeals (initial request, interim correspondence, and final response) to this Office at: Office of Information and Privacy, U.S. Department of Justice, Flag Bldg. Suite 570, Washington, D.C. 20530.

**Please send copies of the documents at issue marked to indicate the withholdings.** This can speed up the appeal process considerably.

**Also, please include the name and phone number of the FOIA processor for each request.**

We will appreciate receiving your response as soon as possible. Once we have received your response, each appeal will be assigned to an attorney who will call you with further questions.

If you have any questions, please contact Attorney-Advisor Anne Work at (202)514-3642.

Your cooperation, as always is appreciated.

-2-

| Appeal (s): | FOIA/PA # | OIP Appeal No. |
|---|---|---|
| 1. Frederick H. Banks | 2006-00951 | 06-0978 |
| 2. Brian K. Barner | 2006-01611 | 06-0981 |
| 3. Vincent DeMartino | 2006-01594 | 06-0985 |
| 4. Miguel R. Mendoza | 2005-585 | 06-0998 |
| 5. Robert Panton | 2005-8945 | 06-1039 |
| 6. Hermenegildo Enriquez-Hernandez | 2006-0625 | 06-1044 |
| 7. Bobby Anderson | 2006-01872 | 06-1061 |

# ATTACHMENT 6

*Bureau of Prisons Northeast Regional office* No BOP records

Date **Nov 24, 2005**

*Freedom of Information*
*Federal Bureau of Investigation unit*
*US custom House 7 FL*
*2 N and Chestnut Street*
*Philadelphia PA 19106*

Ready to Work on

**DATE RECEIVED**

DEC 1 2

→ RE:Freedom of Information Act Request

Dear Sir/Madam,

This is a request under the Freedom of Information and Privacy Act,
5USC 552 and 5USC 552a.

I request that a copy of the following documents be provided to me: A Shooting on July 16, 2001 at 2:30 in the afternoon on West 32 Street and Surf ave Coney Island Brooklyn in the 60th pet. 911 tapes complete Conversation Transcripts, FBI and Police Notes, Reports, Sprints Reports, 302's, Statements, DD5, Police officers at Scene Reports, Radio Transmissions Reports for the police and EMT, NYPD Housing, FBI, Ambulance Drives and helper Reports & Statements of witness at scene, Interviews with Joseph Campanella at Hospital and else were Interview of people at 60th police precinct also interview with John Florida at 60th preit as well as all information on Vincent DeMartino, and the investigation all names of Suspects and witness interviewed at any time and at scene. Origen of phone number of 911 Calls made in Connection with shooting

I am aware that I am entitle to make this request under the Freedom any power
of Information Act,and if your request is not satisfatory,I am Reports, mostly Records from 98 to then
prepared to make an administrative appeal.Please indicate to me the
name of the offical to whome such an appeal should be address.

If your agency decides that only a sanitized copy should be sent to
me,I request that I be furnished with the reason why the document(s)
is/are sanitized and the name(s) of the person's who are responsible
for the decision and thier official title's

I am aware that if my request is denied,I am entitled to know the
grounds for the denial and the name's of the person's who are respon-
sible for the decision and their official title's.

I am presently incarcerated at USP Canaan       in the city of
PO Box 300 Waymart state PA 18472 It would be greatly appreciated if you
would waive the fees for this FOIA request since I do not have funds
available to me because of my incarceration and I need the requested
information in order to appral my case. Also information from Highway 2 police
Regarding the Stop(s) on Belt Parkway shortly after Shooting    Sincerely
USP Canaan                                                Vincent DeMartino

Name Vincent DeMartino        # 22044053
Address PO Box 300                       $ social security # 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
City Waymart PA 18472                    d.o.b 07/07/55

# ATTACHMENT  7

Federal Bureau of Prisons

Northeast Regional Office

U.S. Custom House - 7th Floor
2nd & Chestnut Streets
*Philadelphia, PA. 19106*

December 29, 2005


Vincent DeMartino, Reg. No. 22044-053
United States Penitentiary - Canaan
P. O. Box 300
Waymart, Pennsylvania 18472

RE:  Freedom of Information Request No. 2006-01780

Dear Mr. DeMartino:

This is in response to your request for information that was
received by this office on December 1, 2005.  You seek a copy of
various records relating to a shooting on July 16, 2001, in
Brooklyn, New York.

A search was conducted and no materials were found to be
responsive to your request.  Such documents are not maintained by
the Federal Bureau of Prisons.

I trust this has been responsive to your request.  However, if
you are dissatisfied with this response, you may appeal to the
Attorney General by filing a written appeal within 60 days of
your receipt of this response to: Attorney General, Office of
Information and Privacy, United States Department of Justice,
Flag Building, Suite 570, Washington, D.C.  20530-0001.  Both the
envelope and the letter of appeal itself should be clearly
marked: "Freedom of Information Act Appeal".

Sincerely,

Henry J. Sadowski
Regional Counsel

# ATTACHMENT 8

2006-02370

CAA
all records
Local
ready to work on

Dec 26, 2005

Dear Henry Sadowski (Regional Counsel.)

I recived your letter stating you do not have the documents I need. Can you pleas fordward what you have in my file. Case# 2006-01594. Thanking you in advance for your help and time

Sincely
Vincent

at: USP CANAAN
Vincent DeMartino
22044-053
Po Box 300
Waymart PA 18472

# ATTACHMENT 9

U.S. Department of Justice

Federal Bureau of Prisons

Northeast Regional Office

U.S. Custom House - 7th Floor
2nd & Chestnut Streets
Philadelphia, PA. 19106

February 1, 2006

Vincent DeMartino, Reg. No. 22044-053
United States Penitentiary
P.O. Box 26035
Beaumont, Texas   77720

RE:  Freedom of Information Request No. 2006-02370

Dear Mr. DeMartino:

This is in response to your request for information received by
this office on January 5, 2006.  You seek a copy of your records
maintained by the Federal Bureau of Prisons.

In accordance with Bureau of Prisons' Program Statement 1351.05,
Release of Information, you may seek a local review of your file
by contacting staff at your institution to make arrangements for
review.  Copies of disclosable documents may be obtained locally.

I trust this has been responsive to your request.

Sincerely,

Henry J. Sadowski
Regional Counsel

# ATTACHMENT 10

U.S. Department of Justice

Federal Bureau of Prisons

*South Central Regional Office*

---

AUG 11 2006

*4211 Cedar Springs Road, Suite 300*
*Dallas, TX 75219*

Vincent DeMartino
Register Number 22044-053
United States Penitentiary
Post Office Box 26030
Beaumont, Texas 77720-6030

RE: Freedom of Information Request Numbers 2006-01594,
2006-01780, and 2006-02370

Dear Mr. DeMartino:

This is in response to your requests for a copy of records
maintained by the Bureau of Prisons concerning you. It is noted
your requests were originally processed by staff in the Northeast
Regional Office; however, since you have filed litigation
regarding access to your records and been transferred to the
United States Penitentiary in Beaumont, Texas, your requests are
being processed in the South Central Regional Office.

Staff at the United States Penitentiary in Beaumont, Texas,
recently provided you an opportunity to review the documents
maintained in the releasable section of your central file.

This letter will address the documents maintained in your "FOI
Exempt" section of your central file as of January 2006, which
was the date your last request was submitted to the Northeast
Regional Office.

The "FOI Exempt" section of your central file, consisting of one
hundred sixty-five (165) pages, was reviewed. Six (6) pages are
being released to you in their entirety, sixty-four (64) pages
are being released with certain information excised as noted
below, and sixty-seven (67) pages are being withheld as noted
below. The remaining twenty-eight (28) pages represent your
Presentence Investigative Report, which was provided to you at
the local level.

Title 5, United States Code, Section 552(b)(2), because the
information and or documents is related solely pursuant to
the internal rules and practices of the Bureau of Prisons;

Title 5, United States Code Section 552(b)(7)(C), because
release of the information and or documents would constitute
an unwarranted invasion of the personal privacy of
individuals;

SENSITIVE - LIMITED OFFICIAL USE

DEMARTINO, Vincent
Register Number 22044-053
FOIA No. 2006-01594, 01780,
and 2006-02370
Page 2

Title 5, United States Code Section 552(b) 7)(F), because release of the information and or documents could endanger an individual's safety.

Please note, Pursuant to Program Statement 1351.05, <u>Release of Information</u>, dated September 9, 2002, inmates are prohibited from obtaining and possessing photocopies of their Presentence Investigative Report or Statement of Reason or other equivalent non-U.S. Code sentencing documents (e.g., D.C., state, foreign, military, etc.) The policy change was made to protect inmates from being coerced by other inmates to produce their Presentence Investigative Report and Statement of Reason for illicit purposes. As stipulated in the revised policy, inmates found to be in possession of their Presentence Investigative Report, Statement of Reason, or like documents routinely be sanctioned in accordance with Bureau of Prisons policy. It is within the discretion of the Director of the Bureau of Prisons to determine what items constitute contraband within federal correctional institutions. The definition of "contraband" is found in Title 28, Code of Federal Regulation, Section 500.1(h). Under that definition, the Director has decided inmate possession of photocopied Presentence Investigative Reports and Statement of Reasons jeopardize inmate and staff safety, and are therefore prohibited for retention. Inclusion of items determined to be contraband is not a decision that requires publication in the Federal Register according to the Administrative Procedures Act. In the event these documents are required for legal actions, you may submit an Inmate Request for Certification or Judicial Notice of Presentence Report and/or Statement of Reasons form (BP-S757.013). These forms are available in the law library and housing units.

It is noted this action is currently pending before a United States District Court; therefore, no appeal is applicable.

Sincerely,

Michael D. Hood
Regional Counsel

Enclosures: 70 pages

ln

*SENSITIVE - LIMITED OFFICIAL USE*

# ATTACHMENT 11

PS 1351.05
9/19/2002
Page 15

(c)  **Documents from Non-Federal Agencies.**  If a document has been received from a source outside the Federal government (e.g., a state agency), it shall be placed in the Privacy Folder, except as provided in section 12, first paragraph (28 CFR 513.40).

When a request for records includes a document from a non-Federal agency, Bureau staff must make a determination of its releasability in consultation with the non-Federal organization (see Attachment D).  If the originating non-Federal agency recommends non-disclosure, and Bureau staff determine that non-disclosure is appropriate under 28 CFR 513.32, staff shall document the rationale for non-disclosure and place the document in the Privacy Folder.

(d)  **Documents from Federal Courts and Probation Offices**

(1)  **Federal Presentence Reports (PSR) and Statements of Reasons (SOR) from Judgments in Criminal Cases.  For safety and security reasons, inmates are prohibited from obtaining or possessing photocopies of their PSRs, SORs, or other equivalent non-U.S. Code sentencing documents (e.g., D.C., state, foreign, military, etc.).**  Inmates violating this provision are subject to disciplinary action.

This prohibition applies only to the SOR portion of an inmate's Judgment in a Criminal Case.  The rest of the Judgment document remains releasable unless circumstances or policy dictate otherwise.  PSRs and SORs received by mail will be treated as contraband, and handled according to the Mail Management Manual.

This prohibition does not apply to inmates in Bureau of Prisons custody with a need to review their PSRs prior to sentencing.  For example, a pretrial inmate scheduled for sentencing may possess and review the PSR in preparation for sentencing.  After sentencing, however, the inmate is prohibited from retaining a copy of the PSR.

The Bureau implemented this policy for the following reasons.

- Many PSRs and SORs contain information regarding the inmates' government assistance, financial resources, community affiliations, etc.

- The Bureau has documented an emerging problem where inmates pressure other inmates for a copy of their PSRs and SORs to learn if they are informants, gang members, have financial resources, etc.

PS 1351.05
9/19/2002
Page 16

- ■ Inmates who refuse to provide the documents are threatened, assaulted, and/or seek protective custody. Likewise, inmates providing PSRs and SORs containing harmful information are faced with the same risks of harm.

Inmates needing a copy of their PSRs or SORs for filing as an attachment in a court case may obtain, complete, and submit to the court an Inmate Request For Certification or Judicial Notice of Pre-sentence Report and/or Statement of Reasons form (BP-S757.013). The form, which includes instructions for completion, must be available to inmates in the housing units and law libraries.

Although prohibited from obtaining or possessing photocopies, federal inmates are entitled under the FOIA to access their own PSRs (see United States Department of Justice v. Julian, 486 U.S. 1 (1988)) and SORs. Inmates must be provided reasonable opportunities to access and review their PSRs, SORs, or other equivalent non-U.S. Code sentencing documents (e.g., D.C., state, foreign, military, etc.). Inmates are responsible for requesting an opportunity to access and review these records with unit staff in accordance with the Program Statement on Inmate Central File, Privacy Folder, and Parole Mini-Files. **To facilitate inmate access and review, PSRs and SORs should ordinarily be maintained in the disclosable portion of the central file unless significant safety and security concerns dictate otherwise.**

In addition to the above procedures, other provisions of the FOIA may require limiting inmate access to PSRs and SORs. Third party requests for inmate PSRs and SORs should be handled according to Section 29 of this Program Statement.

Staff must maintain PSRs as follows:

- ● A PSR prepared **on or after December 1, 1975,** is to be placed in the disclosable portion of the Inmate Central File.

- ● A PSR prepared **before December 1, 1975,** is to be returned to the sentencing court with a cover letter indicating that the PSR is being returned based on the Supreme Court's decision in Julian and the fact that the PSR was not prepared with the expectation of release. No copy of the returned PSR is to be maintained at the institution, although relevant material from the PSR may be incorporated into other documents.

# ATTACHMENT 12

# RECEIPT

I, Vincent DeMartino, Register Number 22004-053, was allowed to review my Central File Material on ___7-18-06___ .

[ ☒ ]  Pages copied and provided to inmate (if applicable).

X 7-18-06
Date

X *Vincent DeMartino* (signature)

Vincent DeMartino
Register Number 22004-053

7-18-06
Date

*J Rodriguez* (signature)

Staff Witness

# ATTACHMENT 13

# VAUGHN INDEX OF DOCUMENTS MAINTAINED IN BUREAU OF PRISONS' SYSTEMS OF RECORDS

*Vincent DeMartino v. Bureau of Prisons, et al.,* **06CV0879-RJL**

| DOC. # | PAGE/ PAGES | DOCUMENT DESCRIPTION | EXEMPT STATUS OF PORTIONS REDACTED | JUSTIFICATION |
|---|---|---|---|---|
| 1 | 3 | CIM ("Central Inmate Monitoring") Case Information Summary prepared by the Federal Bureau of Prisons (BOP) for internal use and identification of "separatees." Portions of this document were excised, and the remainder was released. | From this three-page document, certain information was excised pursuant to Title 5 U.S.C. §§ 552(b)(2) (high); (b)(7)(C) & (b)(7)(F). | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). If the excised information were released it could identify individuals who are separated from inmate DeMartino by the date and location of the document. Additional data from this document was excised pursuant to exemption (b)(7)(C) & (F). This information was compiled by law enforcement and concerns the identities of individuals who were given a BOP special assignment or classification due to their involvement with certain criminal families in connection with inmate DeMartino's criminal trial. This information, if released, would be an invasion of their personal privacy. Additionally, inmate DeMartino has separation assignments from other inmates at other BOP institutions. The release of this information could constitute an invasion of the individuals' personal privacy and jeopardize their personal safety and well-being, as well as the BOP's investigation process. |

| 2 | 1 | Notification of Central Inmate Monitoring (CIM) Classification or Declassification, dated March 25, 2005. The purpose of this memorandum is to advise inmate DeMartino that he has a Special Supervision and Separation assignment.<br><br>Portions of this document was redacted and it was released. | (b)(2)(high) & (b)(7)(F) | The excised portion of this document identifies affiliations with criminal organizations, which was prepared by law enforcement officials. This information was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the BOP. The release of this information could also endanger the life or physical safety of inmate DeMartino, so it was also removed pursuant to (b)(7)(F). |

| 3 | 3 | SIS Report, Case Number CAA-5019, dated August 31, 2005. This is an internal document contained in the BOP system of records that contains information relating to an incident occurring at USP Canaan.<br><br>Some information was excised and the three pages were released. | (b)(2)(high), (b)(5), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal classification purposes only, and access to this data could result in the compromise of such information. Some of the information contained on page 3 also qualifies for (b)(5) protection because it is an intra-agency memorandum which would not be available by law to a party other than an agency in litigation with the agency due to the sensitive nature of the incident and the conclusion reached by the investigator. Further, this information was compiled by law enforcement and for law enforcement purposes and concerns the identity of an individual with whom Plaintiff is to not have contact. Accordingly, because the release of this information would constitute and invasion of privacy of the other individual, the statutory exemptions (b)(7)(C) was invoked. This information could also be harmful to the physical safety of this individual if his or her name were released to the public, so (b)(7)(F) was utilized to remove it. |

| 4 | 1 | Separation Request Memorandum. This is a memorandum requesting a separation assignment for inmate DeMartino.<br><br>Certain information was excised and the remainder was released. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information. Further, this information was compiled by law enforcement personnel for law enforcement purposes and concerns the identities of individuals with whom Plaintiff is to not have contact. It also summarizes communications with the author of the memorandum regarding his or her concerns between inmate DeMartino and the other individuals. Accordingly, because the release of this information would constitute and invasion of privacy of the other individual the statutory exemptions (b)(7)(C) and (F) were invoked to remove these statements from the document. |

| 5 | 2 | Memorandum regarding the affiliations of inmate DeMartino.

The majority of the memorandum was excised, but portions were released on both pages. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing, contact and informational purposes only, so access to this data could result in the compromise of such information. Further, this information was compiled by law enforcement personnel for law enforcement purposes and concerns the identities of other individuals within the organization. This information was removed under (b)(7)(C) because release would constitute an invasion of their privacy. Additionally, the lives or physical safety of these individuals could be at risk if they were released to the public, so they were redacted under (b)(7)(F). |
|---|---|---|---|---|

| 6 | 3 | Memorandum regarding inmate DeMartino's affiliations.

This document was generated by a Department of Justice employee, and it provides updated information regarding inmate DeMartino's affiliated organization.

One page was released with excisions, and two pages were withheld in their entirety. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information. Further, this information was compiled by law enforcement personnel for law enforcement purposes and concerns the identities and locations of other individuals within the organization. Accordingly, the names of these individuals on pages 2 and 3 have been withheld in their entirety, as release of this information could hamper law enforcement activities. The names were also excised on page 1 for privacy concerns and because release of this information would constitute and invasion of privacy under (b)(7)(C).

Page 2 of this document was withheld in its entirety because it solely contains the names of other individuals within inmate DeMartino's organization. It also serves as internal documentation of conversations with law enforcement personnel when attempting to verify the information contained in the memorandum, so (b)(7)(C) was used to withhold this page. The release of this information could also lead to physical harm befalling the mentioned individuals, so the names were withheld under (b)(7)(F). |
|---|---|---|---|---|

| | | | | Page 3 was withheld because it only contains the names of other individuals within the organization, and release of this information may jeopardize their safety under (b)(7)(F). The release would also constitute an invasion of privacy under (b)(7)(C). |
|---|---|---|---|---|

| 7 | 4 | Memorandum regarding separation assignments and associations within inmate DeMartino's organization.

Three pages were released with excisions, and one page was withheld in its entirety. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information. Further, this information was compiled by law enforcement personnel for law enforcement purposes and concerns the identities and locations of other individuals within the organization. Accordingly, the names of these individuals on pages 1 and 2 have been withheld in their entirety, as release of this information could hamper law enforcement activities. The names were also excised on page 1 for privacy concerns and because release of this information would constitute and invasion of privacy under (b)(7)(C). The release of the names of these individuals would also place their lives at risk, so they were withheld under (b)(7)(F) as well.

Page 3 was withheld in its entirety because it solely contains the names of other individuals within inmate DeMartino's organization. The release of this information may jeopardize the safety of these individuals and it would also constitute an invasion of privacy under (b)(7)(C) and (b)(7)(F).

Information on page 4 was excised under (b)(2)(high) and (b)(7)(F). This information relates solely to |

| | | | | the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information. |
| | | | | Page 4 of the document contained the names of intended recipients and the author of the document. This information was removed under (b)(2)(high) because the information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information. Information was also withheld under (b)(7)(F) because the release could result in endangering the physical safety of the author of the document or inmate DeMartino if it were released. |

| 8 | 1 | Memorandum from Lt. Walicki, dated April 3, 1989.<br><br>This document was excised and released. | (b)(2)(high), (b)(7)(C)&(F) | Portions of this memorandum were exempted pursuant to exemption (b)(2), as they related solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information. Further, this information was compiled by law enforcement personnel for investigatory purposes and concerns the identities of other individuals present during the event. This information was withheld under (b)(7)(C) and (b)(7)(F) to protect the privacy of these individuals and to ensure their physical safety while incarcerated. |

| 9 | 2 | Memorandum regarding an individual being removed from the Witness Security Program.<br><br>This document was withheld in its entirety. | (b)(2)(high), (b)(7)(C)&(F) | This memorandum is regarding another inmate in custody and is a notification of his removal from the Witness Security Program. The document was withheld in its entirety first under (b)(7)(C) because it involves the unwarranted invasion of his privacy. Next, the information regarding this individual was compiled by law enforcement officials, and if revealed, would have serious consequences for him and endanger his personal safety under (b)(7)(F).<br><br>Some of the information was also withheld under (b)(2)(high) as it related solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information, as well as hinder the Witness Protection Program if revealed. |

| 10 | 3 | Memorandum regarding separation assignments and associations within inmate DeMartino's organization. This memorandum identifies individuals and states their position, register number, and location.

Two pages were withheld in their entirety and one page was released with redactions. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information. Further, this information was compiled by law enforcement personnel for law enforcement purposes and concerns the identities and locations of other individuals within the organization within the BOP. The agency withheld page 1 in its entirety under (b)(2)(high), (b)(7)(C) and (b)(7)(F) because of the privacy concerns regarding these individuals and the potential for their lives to be at risk if this information was disseminated.

The name of the other individuals were withheld on page 2 for privacy and security concerns as well, as release of this information could indicate their location.

Page 3 was withheld in its entirety because it solely contains the names of other individuals within inmate DeMartino's organization. The release of this information may jeopardize the safety of these individuals, so the document was withheld under (b)(7)(C) and (b)(7)(F). This page also contains contact information which could be used to compromise the investigation, so it was withheld under (b)(2)(high). |

| 11 | 3 | This is an additional copy of Doc. #3.<br><br>The three pages were again released with excisions. | (b)(2)(high), (b)(5), (b)(7)(C) & (b)(7)(F) | Same as Doc. #3. |
| --- | --- | --- | --- | --- |
| 12 | 1 | Memorandum regarding the CIM classification for inmate DeMartino.<br><br>Some information was excised and the document was released. | (b)(2)(high) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information, and inform inmate DeMartino as to the identity of his separatee. |
| 13 | 1 | Memorandum requesting approval of CIM assignment.<br><br>Some information was excised and the document was released. | (b)(2)(high) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and inform inmate DeMartino as to the identity of his separatee. |

| 14 | 6 | CIM Clearance and Separatee Data, dated February 6, 2006. This document identifies an inmates separatees with their location.<br><br>Some information was excised and the document was released. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the status of some of these individuals.<br><br>Further, this information was compiled by law enforcement personnel for law enforcement purposes and concerns the identities and locations of other individuals with whom inmate DeMartino is not to have contact within the BOP, allowing excision under (b)(7)(C) and (b)(7)(F). The privacy concerns regarding these individuals and the potential for their lives to be at risk if this information was disseminated was the justification for it being withheld. |

| 15 | 1 | Memorandum from Michael Zenk dated July 16, 2004.<br><br>This document was released with excisions. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the status between these individuals.<br><br>Further, this information was compiled by law enforcement personnel for law enforcement purposes and has information concerning another individual. This information was excised under (b)(7)(C) and (b)(7)(F) because of the privacy concerns regarding this individual and the potential for his or her life to be at risk if this information was disseminated. |

| 16 | 1 | Memorandum from Michael Zenk, dated June 28, 2004.<br><br>This document was excised and released. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the identity of the other individual in the letter.<br><br>Further, this information was compiled by law enforcement personnel for law enforcement purposes and has information concerning another individual. This information was excised under (b)(7)(C) and (b)(7)(F) because of the privacy concerns regarding this individual and the potential for his or her life to be at risk if this information was disseminated. |

| 17 | 1 | Memorandum for Michael Zenk regarding CIM information on inmate DeMartino. This memorandum contains updated information on inmate DeMartino's CIM assignment.<br><br>This document was released with excisions. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the status between these individuals.<br><br>Further, this information was compiled by law enforcement personnel for law enforcement purposes and has information concerning another individual. This information was excised under (b)(7)(C) and (b)(7)(F) because the privacy concerns surrounding this individual, and the potential for his or her life to be at risk if this information was disseminated. |

| 18 | 1 | Memorandum regarding separation concerns for another inmate.<br><br>This document was withheld in its entirety. | (b)(2)(high),<br>(b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the status between these individuals.<br><br>Further, this information was compiled by law enforcement personnel for law enforcement purposes and is solely related to concerning another individual. This information was withheld under (b)(7)(C) and (b)(7)(F) because of privacy concerns surrounding this individual and the potential for his or her life to be at risk if this information was disseminated. |

| 19 | 1 | Electronic mail message regarding another individual.<br><br>This document was withheld in its entirety. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the relationship between these individuals.<br><br>Further, this information was compiled by law enforcement personnel for law enforcement purposes and is solely related to another individual. This information was withheld under (b)(7)(C) and (b)(7)(F) because of privacy concerns surrounding this individual and the potential for his or her life to be at risk if this information was disseminated. |

| 20 | 1 | Electronic mail message requesting clarification for CIM documentation on another inmate.

This document was withheld in its entirety. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP).  The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the  identity of the author of the message.

Further, this information was compiled by law enforcement personnel for law enforcement purposes and is solely related to another individual.  This information was excised under (b)(7)(C) and (b)(7)(F) because of privacy concerns surrounding this individual and the potential for his or her life to be at risk if this information was disseminated. |

| 21 | 1 | Electronic mail message regarding the separation assignments on two other inmates.<br><br>This document was withheld in its entirety. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the relationship between these individuals.<br><br>Further, this information was compiled by law enforcement personnel for law enforcement purposes and is solely related to other individuals. This information was withheld under (b)(7)(C) and (b)(7)(F) because of privacy concerns surrounding these individuals and the potential for their lives to be at risk if this information was disseminated. |

| 22 | 1 | Memorandum to Central File regarding another inmate.<br><br>This document was withheld in its entirety. | (b)(2)(high),<br>(b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the identity of this individual.<br><br>Further, this information was compiled by law enforcement personnel for law enforcement purposes and is solely related to another individual. This information was withheld under (b)(7)(C) and (b)(7)(F) because of privacy concerns surrounding this individual and the potential for his or her life to be at risk if this information was disseminated. |

| 23 | 1 | Memorandum regarding CIM documentation for an inmate in DeMartino's organization.<br><br>This page was withheld in its entirety. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the identity of the individual named in the memorandum.<br><br>Further, this information was compiled by law enforcement personnel for law enforcement purposes and is solely related to another individual. This information was withheld under (b)(7)(C) and (b)(7)(F) because of privacy concerns surrounding this individual and the potential for his or her life to be at risk if this information was disseminated. |

| 24 | 1 | Memorandum for Michael Zenk, dated February 2, 2004.<br><br>This page was excised and released. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the identity of the other individual named in the memorandum.<br><br>Further, this information was compiled by law enforcement personnel for law enforcement purposes and concerns inmate DeMartino and another individual. The information on the other person was withheld under (b)(7)(C) and (b)(7)(F) because of privacy concerns surrounding this individual and the potential for his or her life to be at risk if this information was disseminated. |

| 25 | 1 | Electronic mail message regarding separation assignments for other members of inmate DeMartino's organization.<br><br>This document was withheld in its entirety. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the identities of the other individuals named in the message.<br><br>Further, this information was compiled by law enforcement personnel for law enforcement purposes and concerns inmates within inmate DeMartino's organization. The information on the other people was withheld under (b)(7)(C) and (b)(7)(F) because of privacy concerns surrounding these individuals and the potential for their lives to be at risk if this information was disseminated. |

| 26 | 1 | Memorandum regarding prisoner separation for members of inmate DeMartino's organization.

This document was withheld in its entirety. | (b)(2)(high), (b)(7)(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the procedures the BOP utilizes to make determinations on separation assignments.

Further, this information was compiled by law enforcement personnel for law enforcement purposes and carries the potential for the lives of individuals associated with inmate DeMartino's organization to be at risk of death or serious bodily harm if this information was disclosed, so the information was withheld under (b)(7)(C) and (b)(7)(F). |

| 27 | 1 | Memorandum regarding another inmate's separation assignment.

This document was withheld in its entirety. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the identity of the other individual named in the memorandum.

Further, this information was compiled by law enforcement personnel for law enforcement purposes and concerns the continued separation assignment of another inmate. The information was withheld under (b)(7)(C) and (b)(7)(F) because of privacy concerns surrounding the individual and the potential for his or her life to be at risk if this information was disseminated. |

| 28 | 1 | Memorandum documenting verification of CIM information for another inmate.<br><br>This document was withheld in its entirety. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the identity of the individual named in the memorandum.<br><br>Further, this information was compiled by law enforcement personnel for law enforcement purposes and concerns the continued separation assignment for another inmate. The information was withheld under (b)(7)(C) and (b)(7)(F) because of privacy concerns surrounding this individual and the potential for his or her life to be at risk if this information was disseminated. |

| 29 | 1 | Memorandum to Central File (FOI Section I). This document involves an attempt by staff to verify CIM information on another inmate.<br><br>This document was withheld in its entirety. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the identity of the individual named in the memorandum.<br><br>Further, this information was compiled by law enforcement personnel for law enforcement purposes and concerns the continued separation assignment of another inmate. The information was withheld under (b)(7)(C) and (b)(7)(F) because of privacy concerns surrounding this individual and the potential for his or her life to be at risk if this information was disseminated. |

| 30 | 3 | Memorandum regarding separation assignments and associations within inmate DeMartino's organization.<br><br>Two pages were excised and released.  Page 3 was withheld in its entirety. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP).  The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information.  Further, this information was compiled by law enforcement personnel for law enforcement purposes and concerns the identities and locations of other individuals within the organization.  Accordingly, the names of these individuals on pages 1 and 2 have been excised, as release of this information could hamper law enforcement activities under (b)(7)(C).  The names were also excised on pages 1 and 2 for privacy concerns under (b)(7)(C).  The release of this information could also cause endangerment to the lives or physical safety of the individuals named on the document, so they were also removed under (b)(7)(F).<br><br>Page 3 was withheld in its entirety because it solely contains the names of other individuals within inmate DeMartino's organization.   The release of this information may jeopardize the safety of these individuals and it would also constitute an invasion of privacy under both (b)(7)(C) and (b)(7)(F).<br><br>Information on page 4 was excised under (b)(2)(high) and (b)(7)(F). |

| | | | | |
|---|---|---|---|---|
| | | | | Additional information was withheld on page 3 under (b)(2)(high), as part of the document demonstrates the efforts of BOP staff to ascertain the validity of certain CIM assignments. |
| 31 | 1 | Memorandum to Michael Zenk, dated December 31, 2003.<br><br>This document was excised and released. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP).  The information sought may give insight into the BOP's practices concerning CIM classifications, so it was withheld.<br><br>The document also contained information regarding another inmate.  The name was excised on for privacy concerns under (b)(7)(C).  The release of this information could also cause endangerment to the life or physical safety of the individual, so it was also removed under (b)(7)(F). |

| 32 | 1 | CIM classification for another inmate.<br><br>This document was withheld in its entirety. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought may give insight into the BOP's practices concerning CIM classifications, so it was withheld.<br><br>The document also contained information regarding another inmate. The document does not reference inmate DeMartino, so it was withheld for privacy concerns under (b)(7)(C). The release of this information could also cause endangerment to the life or physical safety of the individual, so it was also withheld under (b)(7)(F). |
| 33 | 1 | Electronic mail message regarding the separation assignments on two other inmates.<br><br>This document was withheld in its entirety. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the relationship between these individuals.<br><br>Further, this information was compiled by law enforcement personnel for law enforcement purposes and is solely related to other individuals. This information was withheld under (b)(7)(C) and (b)(7)(F) because of privacy concerns surrounding these individuals and the potential for their lives to be at risk if this information was disseminated. |

Page 32 of 47

| 34 | 1 | Memorandum to File regarding necessity of CIM assignment for another inmate.

This document was withheld in its entirety. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the reasons behind placing a CIM assignment on an inmate.

Further, this information was compiled by law enforcement personnel for law enforcement purposes and is solely related to another individual. This information was withheld under (b)(7)(C) and (b)(7)(F) because of privacy concerns surrounding this individual and the potential for his or her life to be at risk if this information was disseminated. |
| --- | --- | --- | --- | --- |

| 35 | 1 | Memorandum regarding prisoner separation.<br><br>This document has been withheld in its entirety. | (b)(2)(high), (b)(7)(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the procedures the BOP utilizes to make determinations on separation assignments.<br><br>Further, this information was compiled by law enforcement personnel for law enforcement purposes and carries the potential for the lives of individuals associated with inmate DeMartino's organization to be at risk of death or serious bodily harm if this information was disclosed, so the information was excised under (b)(7)(F). |

| 36 | 1 | CIM documentation regarding another inmate.<br><br>This document was withheld in its entirety. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the relationship between these individuals.<br><br>Further, this information was compiled by law enforcement personnel for law enforcement purposes and is solely related to another individual. This information was withheld under (b)(7)(C) and (b)(7)(F) because of privacy concerns surrounding this individual and the potential for his or her life to be at risk if this information was disseminated. |

| 37 | 2 | Memorandum regarding the organization with which inmate DeMartino is affiliated.<br><br>Both pages were excised and released. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the relationship between these individuals.<br><br>Further, this information was compiled by law enforcement personnel for law enforcement purposes and is related to other individuals in addition to inmate DeMartino. This information was excised under (b)(7)(C) and (b)(7)(F) because of privacy concerns surrounding these individuals and the potential for their lives to be at risk if this information was disseminated. |

| 38 | 2 | Memorandum regarding the organization with which inmate DeMartino is affiliated.<br><br>Page 1 was excised and released and page 2 was withheld in its entirety. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the relationship between these individuals and the author of the document. Contact information was also provided on page 2 which was withheld due to the potential for misuse by the public.<br><br>Further, this information was compiled by law enforcement personnel for law enforcement purposes and is related to other individuals. This information was excised under (b)(7)(C) and (b)(7)(F) on page 1 because of privacy concerns surrounding these individuals and the potential for their lives to be at risk if this information was disseminated. Page 2 was withheld because it only had the names of other individuals of the organization on it, and the release of this information would constitute an invasion of privacy under (b)(7)(C) and could place these individuals at risk of physical harm under (b)(7)(F). |

| 39 | 1 | Memorandum from Michael Zenk, dated November 12, 2003.<br><br>This document was excised and released. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the identity and relationship between these individuals.<br><br>Further, this information was compiled by law enforcement personnel for law enforcement purposes and is related to other individuals. This information was excised under (b)(7)(C) and (b)(7)(F) because of privacy concerns surrounding the other individual and the potential for his or her life to be at risk if this information was disseminated. |

| 40 | 1 | Memorandum to Carlyle Holder, dated October 6, 2003.<br><br>This document was excised and released. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the relationship between these individuals.<br><br>Further, this information was compiled by law enforcement personnel for law enforcement purposes and is related to other individuals. Some information was removed under (b)(7)(C) and (b)(7)(F) because of privacy concerns surrounding the other individual and the potential for his or her life to be at risk if this information was disseminated. |

| 41 | 1 | Electronic mail message regarding the separation assignments on two other inmates.<br><br>This document was withheld in its entirety. | (b)(2)(high), (b)(7)(C)&(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the relationship between these individuals.<br><br>Further, this information was compiled by law enforcement personnel for law enforcement purposes and is solely related to other individuals. This information was withheld under (b)(7)(C) and (b)(7)(F) because of privacy concerns surrounding these individuals and the potential for their lives to be at risk if this information was disseminated. |

| 42 | 1 | Prisoner Separation Memorandum regarding members of inmate DeMartino's organization.<br><br>This document was withheld in its entirety. | (b)(2)(high)& (b)(7)(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal routing and informational purposes only, and access to this data could result in the compromise of such information and indicate the procedures the BOP utilizes to make determinations on separation assignments.<br><br>Further, this information was compiled by law enforcement personnel for law enforcement purposes and carries the potential for the lives of individuals associated with inmate DeMartino's organization to be at risk of death or serious bodily harm if this information was disclosed, so the information was withheld under (b)(7)(F). |
| 43 | 1 | CIM documentation regarding another inmate.<br><br>This document was withheld in its entirety. | (b)(7)(C)&(F) | This information was compiled by law enforcement personnel for law enforcement purposes and is solely related to another individual. This information was withheld under (b)(7)(C) and (b)(7)(F) because of privacy concerns surrounding the other individual and the potential for his or her life to be at risk if this information was disseminated. |

| 44 | 2 | Intake Screening, dated March 2, 2006.

This document was released with redactions. | (b)(2)(high) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal access to the BOP's Psychology Data System via the internet, so access to this data could result in the compromise of this electronic system of records if it were released. |
|----|----|----|----|----|
| 45 | 11 | Federal Bureau of Prisons Visitor Information Forms. One page each, 11 total.

From these documents, certain data was excised and the remainder was released. | (b)(7)(C) | The excised data from these documents consists of sensitive and personal information regarding individuals who requested to receive visitation rights from the BOP. There are 11 such requests from 11 different persons. The request forms are generated by law enforcement for law enforcement purposes. Specifically, in order to visit any inmate in the custody of the BOP, prospective visitors must complete this document, which in turn asks about the individual's criminal history, date of birth, social security number, drivers license number, etc. The release of such information could invade the privacy of these potential visitors, so it was redacted under (b)(7)(C). |

| 46 | 34 | These documents concern computer generated NCIC background investigations that were conducted pursuant to an individual's request for visitation. Upon an individual's request to visit a federal inmate, BOP runs an NCIC on that individual. These pages constitute the NCIC clearances for all 11 visitors.<br><br>Thirty pages were withheld in their entirety and four pages were released with redactions. | (b)(2)(high) & (b)(7)(C) | Twenty-nine pages were withheld in their entirety because they consist of NCIC reports ran on third-parties pursuant to their requests for visitation. Prepared solely for law enforcement purposes, NCIC reports contain sensitive and personal data pertaining to the subject being investigated. Such data includes social security numbers, aliases, criminal histories, etc. The release of this information would result in an invasion of the personal privacy of the individuals being investigated.<br><br>Three pages were released after removing the individual's identifying information under (b)(7)(C).<br><br>One page was excised under(b)(2)(high) because the information related to the operator's terminal number. This information could be harmful if released because someone may be able to use the information to access the NCIC system and obtain access to sensitive criminal information. |

| 47 | 3 | Fax cover sheet dated November 10, 2005.<br><br>One page released with excisions. Two pages were released in their entirety. | (b)(2)(low) & (b)(7)(C) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal receipt of documents via facsimile and release would be of no benefit to the public.<br><br>Additionally, as information in the document pertained to another individual, this information was removed under (b)(7)(C) to protect his or her privacy rights. |
|----|---|---|---|---|
| 48 | 1 | Electronic mail message dated November 7, 2005.<br><br>This document was excised and released. | (b)(2)(low) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is telephone contact information which would be of no benefit to the public if released. |
| 49 | 1 | Request for Transfer, dated December 12, 2005.<br><br>This document was excised and released. | (b)(2)(high) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). The information sought is for internal classification purposes only, and access to this data could result in the compromise of such information and indicate the procedures the BOP utilizes to make determinations on separation assignments. |

| 50 | 1 | Request for Transfer, dated September 9, 2005.<br><br>This document was excised and released. | (b)(2)(high) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP).  The information sought is for internal classification purposes only, and access to this data could result in the compromise of such information and indicate the procedures the BOP utilizes to make determinations on separation assignments. |
| 51 | 3 | This is an additional copy of Doc. #3.<br><br>The three pages were again released with excisions. | (b)(2)(high), (b)(5), (b)(7)(C) & (b)(7)(F) | Same as Doc. #3. |
| 52 | 9 | Packet for Incident Report #1367394.<br><br>Nine pages were withheld in their entirety. | (b)(2)(high) & (b)(7)(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP).  If the excised information were released it could identify an individual who is separated from inmate DeMartino.<br><br>This information was also withheld under (b)(7)(F) as this information was compiled by law enforcement officials and if the information was released it could endanger the life or safety of the other person mentioned in the paperwork. |

| 53 | 1 | Administrative Detention Order, dated March 23, 2005.<br><br>This document was excised and released. | (b)(2)(high), (b)(7)(C) & (b)(7)(F) | Some information sought was exempted pursuant to exemption (b)(2), as it relates solely to the internal personnel rules and practices of the Bureau of Prisons (BOP). If the excised information were released it could indicate the identity of another individual at USP Lewisburg.<br><br>The document was also excised under (b)(7)(C) because the information was compiled by law enforcement and concerns the identity of an individual with whom inmate DeMartino is not to have contact. The release of this information could also constitute an invasion of the individual's personal privacy if it were released.<br><br>The individual's physical safety may also be jeopardized by release of this information, so it was removed under (b)(7)(F). |
| --- | --- | --- | --- | --- |
| 54 | 2 | Envelope addressed to Counselor Williams, front and back<br><br>This document was not excised. | | Both pages were released in their entirety. |
| 55 | 2 | Visiting Attorney Statement<br><br>This document was not excised. | | Both pages were released in their entirety. |

Page 46 of 47

| 56 | 28 | Presentence Investigation Report.<br><br>This document was withheld in its entirety. | Reviewable at the local level. | Inmate DeMartino is not allowed to possess this document while in custody under Program Statement 1351.05, Release of Information. However, he is allowed to review the document at the local level. |
|----|----|----|----|----|

# ATTACHMENT 14

PS 5800.11
September 8, 1997
Page 19

(1)  initial review of all current files of the inmate
     population;
(2)  receipt of inmate requests to review files, and the
     monitoring of the inmate review of files; and
(3)  screening of all records and documents in the future as they
     are sent to the Inmate Central File for filing.

Each institution may adopt its own procedures and forms for
submitting and acknowledging requests and for logging and scheduling
Inmate Central File reviews.

   b.  Inmate Request and Review.  Any inmate seeking to look at
his/her Inmate Central File shall submit a request to a staff member,
as designated in the local instruction.

   • The inmate's request should be acknowledged.
   • The inmate should be permitted to review the file whenever
   practicable.
   • All file reviews must be done under constant and direct
   staff supervision.
   • Those materials which have been determined to be non-
   disclosable shall be removed from the folder before inmate
   review.
   • An entry shall be made on the Inmate Activity Record
   (BP-381) to show the date the inmate reviews the file.        The
   staff member monitoring the review shall initial the        entry
   and the inmate shall be asked to initial it.

   c.  Inmate Challenge to Information.  An inmate may challenge the
accuracy of the information in his or her Inmate Central File.  Unit
team staff shall take reasonable steps to
ensure the accuracy of challenged information, particularly when
that information is capable of being verified.  The inmate is required
to provide staff with sufficient information in support of a challenge
(names of persons to contact, government agency, etc...).

When an inmate provides such information, staff shall review the
alleged error(s) and take reasonable steps to ensure the information
is correct.

For example, if an inmate challenges information in the Presentence
Investigation Report (PSI), staff should inform the appropriate U.S.
Probation Office (USPO) in writing of the disputed information, and
request that a written response also be provided.  **USPO procedures,
however, do not allow for changes or addendums to be made to the
Presentence Investigation Report after sentencing since it is a court
document.**

If the USPO subsequently reports that the challenged information, or
some part thereof is not accurate, staff shall attach the Bureau's
inquiry and the USPO response to the challenged document.  Staff shall
file this information in the

PS 5800.11
September 8, 1997
Page 20

applicable section of the Inmate Central file, and also make a notation on the Inmate Activity Record form (BP-381) to ensure that future decisions affecting the inmate are not based on the discredited information.

When the USPO verifies that the information in the PSI is indeed inaccurate, as claimed by the inmate, staff should subsequently review, and where indicated, correct Bureau generated reports or data such as the Inmate Load and Security Designation form (BP-337), the Custody Classification form (BP-338), Progress Report, and any other reports that may have been based on the PSI. Bureau reports, data, or SENTRY transactions should be corrected within a reasonable period of time after identification as being inaccurate.

If the information source will provide a corrected document or data, it should be immediately inserted in the file or data base and the inaccurate information or document removed. A notation on the Inmate Activity Record form should acknowledge the insertion of the corrected information or document.

d. <u>Inmate Copies</u>. Any inmate who wishes to receive copies of disclosable materials from the file shall submit a request to institution staff. Within a reasonable time after the request, institution staff shall provide the inmate copies of requested disclosable documents maintained in the Inmate Central File. Fees for the copies are to be calculated in accordance with the Program Statement on Release of Information.

e. <u>Privacy Folder</u>. Records which have been determined, under separately issued guidelines, to be excluded from inmate review shall be placed in the Privacy Folder. Normally, actual placement of documents in the Inmate Central File is the Unit Secretary's responsibility. The Privacy Folder shall be placed on top of section 5 in the Inmate Central File.

As materials from any source are submitted for placement in the Inmate Central File, they are routed to an appropriate staff member the Warden designated. The Case Manager shall review the materials, to ascertain whether to place them in the regular sections, the Privacy Folder, or discard them. Any document to be excluded from inmate review must be stamped "FOI EXEMPT". At each Program Review and before an inmate reviews his/her Inmate Central File, the Case Manager shall review the file to ensure the proper location of forms and purge outdated or unnecessary forms and/or documentation.

f. <u>Parole Files</u>. Parole Mini-files, examiner packets, and pre-hearing assessments are not disclosable unless specifically authorized by the U.S. Parole Commission. The Parole Mini-file and other hearing materials must be removed from the Inmate Central File prior to inmate review. The inmate may seek review

# ATTACHMENT 15

```
BMAD8            *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      08-28-2006
PAGE 002 OF        *              UNSANITIZED FORMAT            *      12:51:30

REMEDY-ID       REG        NAME                    ORIG UNIT OR LOC/QTRS/FACL
                STATUS-DATE      STATUS      DATE-RCV   RCV-OFC  RCV-FACL  EVNT-FACL
                SUBJ1/SUBJ2 ------------------ABSTRACT------------------------

317514-R1       22044-053  DEMARTINO, V            E          E09-003L  BRO
                11-24-2003       REJ     11-17-2003    NER    BRO       BRO
                26AM/      INADEQUATE MEDICAL CARE

318539-F1       22044-053  DEMARTINO, V            E          E09-003L  BRO
                12-05-2003       REJ     12-04-2003    BRO    BRO       BRO
                26AM/      I/M RQST FOLLOW-UP APT W/SPECIALIST

319582-F1       22044-053  DEMARTINO, V            E          E09-003L  BRO
                03-01-2004       CLG     12-16-2003    BRO    BRO       BRO
                26AM/26EM  I/M RQST TO BE SEEN

319582-R1       22044-053  DEMARTINO, V            E          E09-003L  BRO
                03-09-2004       REJ     03-08-2004    NER    BRO       BRO
                26AM/26EM  I/M RQST TO BE SEEN

319582-R2       22044-053  DEMARTINO, V            E          E09-003L  BRO
                04-20-2004       CLD     03-22-2004    NER    BRO       BRO
                26AM/26EM  REQ MEDICAL CARE

319582-A1       22044-053  DEMARTINO, V            E          E09-003L  BRO
                08-11-2004       REJ     08-10-2004    BOP    BRO       BRO
                26AM/26EM  REQ MEDICAL CARE

319582-A2       22044-053  DEMARTINO, V            E          E09-003L  BRO
                09-23-2004       REJ     09-07-2004    BOP    BRO       BRO
                26AM/26EM  REQUEST MEDICAL CARE

319582-A3       22044-053  DEMARTINO, V            E          E09-003L  BRO
                10-25-2004       REJ     10-12-2004    BOP    BRO       BRO
                26AM/26EM  REQUEST MEDICAL CARE

368592-F1       22044-053  DEMARTINO, V            J          J04-721L  BRO
                06-03-2005       CLO     03-02-2005    BRO    BRO       BRO
                26DM/      I/M RQST EYEGLASSES & NEXIUN

368592-R1       22044-053  DEMARTINO, V            J          J04-721L  BRO
                07-27-2005       REJ     07-25-2005    NER    CAA       BRO
                26DM/      I/M RQST EYEGLASSES & NEXIUN

386504-R1       22044-053  DEMARTINO, V            A2 UNIT    Z01-112LDS CAA
                08-24-2005       REJ     08-22-2005    NER    CAA       CAA
                20DM/      APPEALS 08/11/05 DHO FOR 201


G0002      MORE PAGES TO FOLLOW . . .
```

```
  BMAD8          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *     08-28-2006
  PAGE 003 OF 003 *            UNSANITIZED FORMAT              *     12:51:30

REMEDY-ID       REG      NAME                        ORIG UNIT OR LOC/QTRS/FACL
                STATUS-DATE      STATUS   DATE-RCV   RCV-OFC  RCV-FACL  EVNT-FACL
                SUBJ1/SUBJ2 --------------------ABSTRACT---------------------------

386504-R2       22044-053  DEMARTINO, V               A2 UNIT    Z01-112LDS CAA
                10-05-2005       CLD     09-06-2005    NER     CAA        CAA
                20DM/      APPEALS 08/11/05 DHO FOR 201

386504-A1       22044-053  DEMARTINO, V               A2 UNIT    Z01-112LDS CAA
                12-06-2005       CLD     10-17-2005    BOP     CAA        CAA
                20DM/      APPEALS 08/11/05 DHO FOR 201

392992-F1       22044-053  DEMARTINO, V               A2 UNIT    Z05-157LAD CAA
                10-26-2005       REJ     10-26-2005    CAA     CAA        CAA
                22AS/22ZS  SRO REVIEWS/TIME BEING PLACED IN ADMIN DET/TRANSFER

392992-F2       22044-053  DEMARTINO, V               A2 UNIT    Z05-157LAD CAA
                11-18-2005       CLD     11-04-2005    CAA     CAA        CAA
                22AS/      TIME IN ADMIN. DET/TRANSFER OR PLACEMENT IN GEN. POP

392992-R1       22044-053  DEMARTINO, V               A2 UNIT    Z05-157LAD CAA
                01-03-2006       CLD     12-05-2005    NER     CAA        CAA
                22AS/      TIME IN ADMIN. DET/TRANSFER OR PLACEMENT IN GEN. POP




                  16 REMEDY SUBMISSION(S) SELECTED
  G0000         TRANSACTION SUCCESSFULLY COMPLETED
```