7-3-95

REVIEW SUMMARY

NAME: DeMARTINO, Vincent  
REG. NO.: 22044-053  
INSTITUTION: El Reno  
DATE: 6/12/95  

HEARING TYPE: S.I.H.  
2/3 or STAT MR DATE: 8/10/98  
 (whichever comes first)  
FULL-TERM DATE: 11/8/2001  
PANEL: Essex/Lepchenske  

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

   I.  **PREVIOUS COMMISSION ACTION:** Refer to Examiner Chaite's pre-review of 1/5/95.

   II. **CODEFENDANTS:**

   III. **INSTITUTIONAL ADJUSTMENT AND RELEASE PLANS:** The issue at today's hearing was not that of institutional adjustment. However, subject institutional adjustment has been positive according to the most recent progress report.

Issues at today's hearing were primarily related to whether or not subject was a member of an organized crime hit squad that operated during and internal war of the Colombo Crime Family in 1991. Subject and 2 other alleged members for this team were arrested in December 1991 and officers seizes evidence similar to that used by other hit squads including 3 loaded firearms, 3 police scanners, a book containing the frequency of police radio communications, and a ski mask. Also, subject reportedly possessed a book and papers containing the phone number of the hit squad leader (Cutolo) and the names and phone numbers of squad members.

The above issues were addressed at first by subject and later by his attorney. Subject stated that only one person involved has a record and that the USPO gave him permission to talk to that person. He indicated that the probation officer's records would show this.

According to subject, the testimony previously given before the Parole Commission was false testimony. He indicated that each time that the USPC used the base information to go above his guidelines. He noted that he was acquitted of all of the charges that resulted in the Commission going above his guidelines. He stated that he was not a member of a hit squad. He noted that he was acquitted of all involvement regarding this matter in a RICO trial. He noted that he was found not guilty of being involved in a conspiracy to commit murder or to gain a position in an organized crime family. In that matter, subject was adamant in stating that he was not involved in an organized crime family or with those committing crimes. According to subject, items that he is being held responsible for were those found in someone else's car, not his. He indicated that he still has Mr. Cutolo's telephone number and also that of Mike Spataro. He stated that the weapons/firearms found were not in his car. He indicated that he never had a firearm. He acknowledged that he was convicted of this, but he stated that the conviction resulted from false testimony provided by prosecution witnesses.


EXHIBIT 5

DeMARTINO, Vincent                                                    Page 2

In regards to joining an organized crime family, subject indicated that there is tape that shows that the ceremony for him to join an organized crime family was never held. It was scheduled for 6/21/91.

Subject's attorney, Miss Scheffield noted that there was never to be a ceremony. She indicated that the powers that be in the crime organization set up this meeting to get Carmine Sasso to the location so that they could kill him. She stated that subject had nothing to do with the planning of this. She indicated that he had no knowledge of it.

Miss Scheffield noted that the judge never heard the tape or read the transcript of the tape and therefore, it was not considered in Faticol hearing of 3/8/93. She noted that subject was acquitted of the RICO indictment on 12/21/94. She provided a copy of that indictment to show that the indictment was in regards to the murder allegations. She noted that he and those accused were acquitted of all charges. In regards to the police scanners, subject stated that the scanners were registered to "Fantastic Collision" as he was opening up a towing business.

Parole Commission Examiner Herb Lepchenske questioned subject regarding his involvement in any organized crime activities. Subject's position was that he was not involved in any organized crime activities. He explained that there was no basis for the Parole Commission to revoke his parole. He was questioned as to whether he would join an organized crime group if he had a chance. His answer was that he would not. He stated that he does not wando anymore time. Subject indicated that if he learned that his friends were involved in organized crime that he would not associate with them. He indicated that the individual with whom he was associating were not involved in organized crime.

Subject's position was that he was acquitted of the more serious charges involving murder. He was adamant in stating that he never had a firearm. Further, he indicated that he did not know that his associates were involved in criminal activities or that they were members of or associates of organized crime.

    IV.  FINES/RESTITUTION/COURT ASSESSMENT: None.

    V.   REPRESENTATIVE: Attorney Linda S. Scheffield, 2786 North Decatur Road, Suite 210, Atlanta, Georgia 30033; (404) 501-0125, appeared on subject's behalf. She indicated that there were a series of prosecutions surrounding this case which she described as being unusual. She noted that USPC asked for 1 witness, police officer DeSimone to appear at the parole revocation hearing and another appeared in his place. She stated that DeSimone did not appear at the hearing because he reportedly had sole confidential information to Sal Micitta. She indicated that DeSimone was acquitted of the charges against him. She also noted that DeSimone is the person who claimed to have taken a firearm off of subject. She indicated that it was unusual that DeSimone would be subpoenaed to appear at the hearing and in fact did not. She claimed that he did not appear because he did not take the gun off of subject as claimed.

DeMARTINO, Vincent                                           Page 3

Ms. Scheffield referred the panel to a voluminous packet of information that she has presented to the Parole Commission. The information is in a binder and contains approximately 200 pages of information. That information was reviewed by the Commission examiners before and during the hearing. It was a consideration in the decision making process.

Her focus at today's hearing was upon the fact that subject was acquitted of all murder related charges. She noted that a finger print found at a murder scene was that of a person who became a confidential information for the government. She indicated that the confidential information had actually done the killing that subject was accused of. She indicated that subject knew nothing of the murders which took place. She indicated that a Mr. Libertoni (phonetic) was involved in the murder. She indicated that this individual became a confidential informant for the government and therefore, no charges were ever brought against him for his involvement in that crime.

Miss Scheffield indicated that many charges were brought against people who were not guilty of the crime and according to her, the government knew it. She indicated that another killing that subject was accused of was the Natisa killing. She indicated that investigations revealed that someone else was involved in that killing. She indicated specifically that a Lucacy organized crime family member ordered the murder. She indicated that a Mr. Lombardi actually ordered the murder.

She further indicated that one of the victims' friend or associate testified at trial that subject was not the person who had attempted to commit the murder. In regards to who was involved in an attack on a Mr. Scarfo, she indicated that Mr. Scarfo admitted that he didn't know who had tried to kill him. She indicated that Scarfo acted as a confidential informant for more than 30 years.

She indicated that the government gathered a lot of information from Greg Scarpa, Senior who was a government confidential informant for 30 years according to Miss Scheffield. Scheffield indicated that because Scarpa, Senior was a confidential informant, many of the cases against organized crime members that resulted in convictions may end up with verdicts of not guilty. She indicated that because this individual was acting as a confidential informant on behalf of the government, then, the hear-say information surrounding some of the convictions could not be considered in the trial. He indicated that he would keep the Commission aware of what goes on in this matter.

Ms. Scheffield's position is that subject and the USPC are here involved in a hearing because of subject's conviction for a weapon's possession. She indicated that she seldom argues against convictions. However, she indicated that in this matter, Scarpa's controlling agent is being investigated. According to Ms. Scheffield, subject was followed by law enforcement authorities on the date that he allegedly had the gun. She indicated that guns were in the locked car and that those associated with

DeMARTINO, Vincent                                                    Page 4

those guns pled guilty to them. She indicated that subject had nothing to do with them. She noted that subject went to trial and that he was convicted of being a felon in possession of a firearm and received a 63 month sentence.

Miss Scheffield noted that subject was acquitted for the behaviors that the USPC is holding him responsible for. That is, the Parole Commission is holding him responsible for that behavior despite his acquittal and they are using it to deny him parole.

Ms. Scheffield stated that subject is not a more serious risk than indicated by his SFS. She indicated that this is verified by the fact that he is and was not involved with organized crime. She stated that he is not a made member of organized crime. She indicated that subject hung with some people who were indicted, but she noted that each of them was acquitted. She noted that the BOP has at least 2 of them on subject's visiting list. (A check revealed this to be true.)

Ms. Scheffield noted that these individuals, as well as subject, were acquitted of all of the charges on this indictment. She indicated that the acquittal took place in U. S. District Court. She noted that her exhibit 13 shows what was in subject's car. She indicated that it contained no ski mask and none of the paraphernalia that he and his co-defendants are accused of possessing.

Based upon the above scenario and her lengthy memorandum in support of parole during the special reconsideration hearing, Miss Scheffield requested the following - parole to the new law sentence nunc pro tunc as of April 1993, she noted that subject will serve approximately 55-1/2 months on the new law sentence. She noted that he has been in continuous custody since 12/16/91. She asked that subject be released to the violator term nunc pro tunc as provided by section 2.21 (c) of out manual. She noted that the new law sentence will require subject to serve 55-1/2 months. She noted also that he has been in continuous custody since 12/16/91 and that the parole violator warrant was executed on 12/17/91. She indicated that if what she is requesting is done, the new law sentence will be served in it's entirety.

   VI. RISK: Subject appears to be a more serious risk than indicated by his SFS as while on parole supervision he was actively associating with individuals involved in organized crime activities.

   VII. EVALUATION: Guidelines computed at the initial hearing were 18-24 months based upon the SFS of 5 and an offense severity of Category Three involving possession of a firearm. Guidelines have been re-computed at today's hearing and they are unchanged. The major issues at this hearing appear to be that of accountability for the base offense behavior and also whether or not he should be held accountable for being involved with organized crime activities.

DeMARTINO, Vincent                                                    Page 5

Issues raised at today's hearing included the fact that subject was acquitted of the RICO charges that relate to murder. It appears that his co-offenders/co-defendants were acquitted also. Therefore, this raises the question as to whether or not the Commission can take into consideration any information regarding subject's involvement with murder. It is the panel's opinion that the Commission should not take this into consideration when the prisoner's acquittal is considered. Also, it has been verified that co-offender Cutolo has been approved by the BOP as one of subject's visitors. He is on subject's visitor's list. There is no information that this panel was aware of that would support a conclusion that this individual has previous convictions or that he is an organized crime member. Therefore, the issue of subject associating with a squad leader who was involved in murders does not appear to be an appropriate consideration at this time.

Another issue in this case is whether or not subject became a made member of an organized crime group. After considering all facts in the case, it is this panel's finding that subject did not become a made member. Despite this, the panel believes that subject was associating with individuals involved in organized crime activities. The fact that he was even considered for being a "made" member of an organized crime family, in the opinion of this panel would strongly indicate that he was involved with an organized crime group. He may not have joined, but in the opinion of this panel, he showed the willingness to do so. In their opinion, this indicates that subject chose to violate his conditions of release to be with these individuals. For that reason, this panel believes an above guidelines decision is appropriate.

The panel also considered the finding of the federal judge at the Fatico hearing on 3/8/93. The judge found that subject was involved with an organized crime group. The government, in the opinion of that judge supported it's contention that subject was associating with organized crime members. This panel found no information which would indicate otherwise. The panel notes that subject and his attorney presented a copy of a tape made by a confidential informant which shows that subject was not "made" on the date that he was supposed to have been made. For that reason, this panel does not make a finding that subject was a "made" member of an organized crime group. We do however, make a finding that he associated with that group. We believe that this was a serious front and showed a complete disrespect for the parole process. For that, an above guidelines decision appears to be appropriate.

In conclusion, the panel finds that subject associated with individuals involved in organized crime activities. They make no finding that he was involved with individuals who committed murder and also, they do not find that he should be held responsible for that behavior. Subject was acquitted of RICO related murder charges. The panel does not have new information which was not considered in subject's trial on the RICO matter. For that reason, this panel views subject from a new perspective. That

DeMARTINO, Vincent                                                Page 6

perspective being that he associated with people involved in organized crime activities. However, the panel was unable to specify just what these individuals were doing. They believe that subject's willingness to associate with these individuals showed that he was not willing to comply with parole release conditions.

This panel is recommending service of 60 months which is 36 months above the top of guidelines established.

VIII. **RECOMMENDATION:**

(1) Re-open and advance continue to expiration.
(2) Parole effective nunc pro tunc (7/17/93) to the consecutive non-parolable sentence only.

IX. **REASONS:**

REE:LRW
6/22/95