# REVOCATION HEARING SUMMARY

| | | | |
|---|---|---|---|
| Name . . . . . . . . . | : DeMARTINO, Vincent | Supervision . . . . | : Parole |
| Reg . . . . . . . . . . | : 22044-053 | Artuso . . . . . . . . | : NO |
| Examiner . . . . . . | : Kenneth Walker | Artuso Years Remaining: | |
| Warrant Executed | : 6/10/98 | Months in Custody | : 1 |
| Preliminary Interview: 6/15/98 | | Custody Type . . . | : Federal |
| Institution . . . . . . | : Brooklyn MDC | Projected MR Date | : 9/15/2000 |
| 2nd Designation . . | : | Full Term Date . . | : 11/5/2001 |
| Revoking District | : Eastern District of New York (Brooklyn) | Hearing Date . . . | : 7/21/98 |
| Hearing Type . . . | : Local | | |

## I. Counsel And Witnesses:

Attorney Linda Sheffield
2786 North Decater Road, Suite 210
Atlanta, GA 30033
(404) 501-0125

**Witnesses Name & Any Explanatory Text Concerning Counsel and/or Witnesses:**

USPO Thomas Kennedy
75 Clinton Street
Room 405
Brooklyn, NY 11201
(718) 254-7335

(Observer only per authorization of Thomas Kowalski)
Attorney Joseph Benfante
Louisiana.

## II. Procedural Considerations:

None.

DEMARTIN.220    Typist: GTT    Date Typed: July 29, 1998



## III. Instant Warrant Information:

Please refer to the Pre-Hearing Assessment dated 7/17/98.

## IV. Review of Charges:

Charge No. 1(a):   Association With Person Having a Criminal Record.

Charge No. 1(b):   Violation of Special Condition (Association With a Member of Organized Crime).

On or about 4/23/98, 4/28/98 and 4/29/98, the subject associated with Giovanni Cerbon, a person with a record of prior criminal convictions and an associate of the Colombo organized crime family. The subject was aware of Mr. Cerbon's criminal record and his affiliation with organized crime at the time that the association took place. Information contained in letter dated 5/27/98 from USPO Kennedy. The subject admitted that he had contact with Mr. Cerbon, but, was never aware that Mr. Cerbon had a criminal record, specifically, a felony conviction. The subject denied Charge 1(b), noting that he has no knowledge that Mr. Cerbon is a member of organized crime. The subject explained that even though he was in custody with Mr. Cerbon at the MCC New York and at the MDC Brooklyn, he indicated that at the time Mr. Cerbon was at these facilities that Mr. Cerbon was in pre-trial status. He further noted that after he was subsequently convicted of this charge and through investigation of his attorney it was discovered that Mr. Cerbon was not convicted until numerous months after he was released from pre-trial status. The subject reflected that he was aware that Mr. Cerbon had been the supervisor on a construction job and that his current job was close to expiring and therefore after he got off work from his job he would go by that particular job site to see about employment. He noted that on the dates that he was observed going there he worked on each of those days and that he got off between 2:00 - 2:30 and then went to that job site to inquire about employment. He noted that his normal procedure to do when your particular job site is winding down as far as completion of the job that you then seek employment at another site.

The subject indicated that on the dates that he went by the job site and spoke to Mr. Cerbon who is a supervisor at that construction site they never discussed what occurred concerning his pre-trial status. He noted that on the dates that he went to the job site he did not attempt to hide going there noting that he always parked in front of the job site, went in the building just for a few minutes and exited and subsequently went home.

In asking the subject if he ever met Mr. Cerbon prior to Mr. Cerbon's in custody at the MCC New York and the MDC Brooklyn and he indicated that they grew up in the same neighborhood and that both of their mothers are friends. He indicated that with regards to association with a member of crime, he indicated that when he was initially indicted with the government that Mr. Cerbon was never on the same indictment with him and that he has never known Mr. Cerbon to be a member of organized crime. The subject advised that he never had any further contact with Mr. Cerbon after they departed the MDC Brooklyn and the MCC New York until those few days that he went by the job site where Mr. Cerbon was working. The subject was asked how was he aware that Mr. Cerbon was at that particular job site through information that he received from other workers.

DEMARTIN.220     Typist: GTT     Date Typed: July 29, 1998          Page 2 of 6

The subject's counsel reflected the USPO Kennedy gave her client a list of numerous individuals to avoid contact with and that Mr. Cerbon's name was never on that list. She further noted that she reviewed the two tapes that USPO Kennedy had filmed of the subject going to the particular job site and that the time frames almost dates that the subject was seen driving to the job site are misleading. She reflected that the report of investigation for the times that the subject went to the job site are erroneous. She related that on the time that the subject exited his vehicle at the job site, went into the building and subsequently exited the building was between 3½ and 7 minutes.

At this time the subject's attorney requested that the film be reviewed. The film did reflect that from the time that the subject entered the building and exited the building he only stayed between 3½ to 7 minutes as counsel previously indicated.

USPO Kennedy explained that he filmed two of the surveillances and another probation officer (Anton) filmed one. USPO Kennedy explained that he agreed with the amount of time that counsel has indicated that the subject was in contact with Mr. Cerbon lasted no more then 3½ to 7 minutes and that the time reflected on the report of investigation for the dates of surveillance was never intentionally reflected to be misleading.

Counsel pointed out that on one of the films the subject was seen being kissed by Mr. Cerbon. She indicated that she believes the probation department assumed that this is associated with individuals that are in organized crime. She noted that there are many groups of individuals that as a tradition kiss each other.

USPO Kennedy noted that on many occasions this is some indication of a connection with members of organized crime. Observer Joseph Benfante indicated that he is a member of the Rotary Club and the members are of Italian descent and that it is a long tradition with not only members of Italian descent, but, other ethnic groups throughout this society that a kiss is made on the person's cheek.

USPO Kennedy was asked about the list that he furnished the subject and he indicated that he furnished the subject with a list of individuals not to associate with which was approximately 140 people. He indicated that Mr. Cerbon's name was not on that list, however, he assumed that since Mr. Cerbon had been tied in with the same organization that the subject has belonged to that not only was the subject aware of Mr. Cerbon's association with a member of crime, but, that it is logical to assume that the subject and Mr. Cerbon had discussed the disposition of Mr. Cerbon's conviction.

Counsel cross examined USPO Kennedy and asked if the subject ever associated with any names on the list that he provided the subject and he responded "no." Counsel inquired if the USPO has ever been contacted by any other authorities reflecting that the subject has had any contact with any known members of organized crime and he responded "no." She further inquired if the USPO knows for a fact that the subject was ever advised that Mr. Cerbon was a convicted felon and he responded "no." Counsel inquired if the USPO went by the subject's job site and had the subject ever advised him that his job was ending and he responded "yes" to both questions. She further inquired that on the dates that the subject went by the job site and departed where was the subject's final destination and USPO Kennedy responded that the subject drove to his residence on each occasion. Counsel inquired if the USPO ever discussed with the subject about Mr. Cerbon's

DEMARTIN.220   Typist: GTT   Date Typed: July 29, 1998                Page 3 of 6

conviction and he responded "no."

The subject indicated that he was never attempting to hide his contact with Mr. Cerbon and that if he was attempting to conceal something he surely could have utilized a better method. He further inquired as to why would he violate his parole by associating with a person having a criminal record when all he had to do if he was aware of that fact is to reflect that on his supervision report. He further noted that several times he had contacts with individuals that had prior records and he reflected this on his supervision report as required.

Attorney Sheffield explained that initially one of the attorneys that was involved in Mr. Cerbon's case thought that Mr. Cerbon had been convicted of a misdemeanor for illegal gambling and that if the attorney thought this then the word got out in the community that other people probably would have thought this as well. She reflected that Mr. Cerbon was convicted of illegal gambling and was sentenced to time served and placed on supervised release. She further noted that Mr. Cerbon is reporting to the same probation office as the subject, but, the subject and Mr. Cerbon have never been to the probation office at the same time. She asked USPO Kennedy if the subject and Mr. Cerbon have ever been observed in the probation office at the same time and he indicated that "no, not to his knowledge."

Counsel indicated that at the time that the Preliminary Interview was conducted by USPO Yelenovic that a statement was made in her report are very misleading and assumptions that her client was aware of Mr. Cerbon's conviction because they were both in custody together at the MDC Brooklyn. She noted that because of her statements this was the basis that the Commission made probable cause and that in her opinion there is even under the preponderance of evidence standard that her client had knowledge of Mr. Cerbon's conviction. She indicated that Mr. Cerbon is not a member of organized crime noting that he has never been indicted for the same. She believes that based on the fact that the probation officer never advised her client that Mr. Cerbon had a conviction and to assume that he knew of Mr. Cerbon's conviction is just not sufficient to violate him on an assumption. She believes that based on the latest violations that her client should be given an opportunity to remain in the community in some type of community placement program as opposed to returning to custody. She noted that the US Parole Commission rules and regulations support that a person can be sanctioned to a community based program as opposed to return to custody.

**Evidentiary Findings:**

The examiner believes that there is insufficient evidence to support an association with a person having a criminal record. However, the examiner believes that based on the preponderance of evidence standard that there was sufficient evidence to support that the subject was aware that Mr. Cerbon is a member of organized crime.

**Charge No. 2: Falsifying Supervision Reports.**

The subject admitted that he had contact, but, was unaware that he had to report the contact because he was not aware of Mr. Cerbon's prior record.

**Evidentiary Findings:**

DEMARTIN.220    Typist: GTT    Date Typed: July 29, 1998    Page 4 of 6



The examiner believes that based on the testimony and documentation that has been submitted that there is insufficient evidence to support this violation.

**V. Findings of Fact And Basis:**

The Examiner finds that subject has committed the following violation(s): Charge No. 1(b): Violation of Special Condition (Association With a Member of Organized Crime.)
Basis: Testimony of USPO Kennedy, documentation submitted by USPO Kennedy and information in the Preliminary Interview supports that the preponderance of evidence standard that you were aware that Mr. Cerbon is a member of organized crime. . .

**No Findings And Supporting Rational:**

The Examiner makes no finding concerning the following charge(s): Charge No. 1(a): Association With a Person Having a Criminal Record.

Charge No. 2: Falsifying Supervision Reports.

There is insufficient evidence to support that you had knowledge of the conviction for a person you associated with (Mr. Cerbon). .

**VI. Previous Commission Action:**

Please refer to the Pre-Hearing Assessment dated 7/17/98.

**VII. Fines, Restitution, Other court Ordered Payments:**

None.

**VIII. Parole Risk:**

Based on the subject's criminal background he appears to be a poorer risk then reflected by the SFS of 4.

**IX. Community Resources And Issues:**

The subject indicated that upon his release he will attempt to secure employment in Local Union 731 and continue to reside in the apartment that is located in his mother's residence. The subject indicated that he is hopeful to marry his girlfriend once returned to the community.

**X. Salient Factor Score:**

    0 - A. Prior Convictions/Adjudications (Adult or Juvenile)
    0 - B. Prior Commitment(s) of More than 30 Days (Adult/ Juvenile)
    2 - C. Age at Current Offense/Prior Commitments
        No (5 or more commitments)
    0 - D. Recent Commitment Free Period (Three Years)
    0 - E. Probation/Parole/Confinement/Escape Status Violator

DEMARTIN.220    Typist: GTT    Date Typed: July 29, 1998

```
1   - F. Heroin/Opiate Dependence
1   - G. Older Offenders
4   - Total Salient Factor Score
```

## XI. Evaluation:

The examiner believes that based on the preponderance of evidence standard that there was sufficient evidence to support that the subject was aware of Mr. Cerbon's association with organized crime. The examiner bases this on the fact that both individuals grew up in the same neighborhood and that both have been associated with the same organized crime family. However, the examiner does not believe that there was sufficient evidence even under the preponderance of evidence standard to support that the subject had knowledge that Mr. Cerbon was a convicted felon. Although, one can summarize that perhaps this was discussed during the course of their conversations at the time that the subject had visited Mr. Cerbon on the job site. This examiner believes that the probation officer should have confronted the subject concerning his contact with Mr. Cerbon, but, this did not occur. USPO Kennedy summarized that as a rule of thumb that more then the subject and Mr. Cerbon had discussed them at some time during the course of their conversations. USPO Kennedy acknowledged that the contact that the subject had with Mr. Cerbon was only for a short period of time from the time that the subject entered the building and returned to his vehicle, lasting anywhere from 3½ to 7 minutes. Furthermore, during the course of the viewing of the video tape it reflected that numerous individuals were also in the building that the subject entered to speak to Mr. Cerbon. Furthermore, the superintendent of the job site submitted a letter reflecting that the subject had come to the job site to make inquiries about prospective employment with his company. In addition, the probation officer testified that up to this point there was no previous known contact with Mr. Cerbon or any other members of organized crime. In light of the fact that the subject's contact with Mr. Cerbon was for three days and lasted from 3½ to 7 minutes, in open view that the examiner believes that as opposed to return to custody that community sanction can be imposed.

## XII. Recommendation:

Revoke Parole. All of the time spent on Parole shall be credited. Parole Effective after the service of 2 months on 8/21/98. Home Confinement (Electronic Monitoring for 5 months) and not to have any contact (direct or indirect) or association with any member of organized crime.

## XIII. Reasons:

Your Parole violation behavior has been rated as Category One severity because it involved administrative violations. Your new salient factor score is 4. As of 7/21/98, you have been in Federal custody for 1 months. Guidelines established by the Commission indicate a customary range of 8-12 months to be served before release. After review of all relevant factors and information presented, a decision below the guidelines appears warranted because your violations were ~~not serious and~~ not long in duration.

Subsequent statutory interim not required.