UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| VINCENT DEMARTINO, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 06CV0879 (RJL) |
| F.B.I., et al., | ) | |
| Defendants. | ) | |

**DEFENDANT FBI'S MOTION FOR AN ORDER
PRESERVING CERTAIN EXEMPTIONS**

Plaintiff has requested certain records from the Federal Bureau of Investigation ("FBI") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. All records responsive to Plaintiff's request which are located in the sub-files of the FBI's New York Field Office ("NYFO") are subject to FOIA exemption 7(A) in their entirety. Accordingly, the FBI has withheld the records pursuant to FOIA exemption 7(A), 5 U.S.C. § (b)(7)(A).

Defendant FBI anticipates that its motion will be granted. However, it does not wish to waive any exemptions that may be applicable, in whole or in part, to the records covered by Plaintiff's request relating to the NYFO, for reasons other than exemption 7(A). Nor does it wish to be put to the time and expense of making and justifying exemption claims that are likely to be superfluous. Accordingly, Defendant FBI asks that an order be entered permitting it to move for summary judgment as to the NYFO records based on the applicability of exemption 7(A), without waiving any other exemptions that may be applicable.

I. **THE STATUTORY AND REGULATORY SCHEME**

The FOIA "requires federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions." Students Against Genocide v. Dep't of State, 257 F.3d 823, 833 (D.C. Cir. 2001). Exemption 7(A) of the FOIA encompasses law enforcement records the release of which "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

The Privacy Act deals with "records" within a "system of records." For purposes of the Privacy Act, a "record" is an "item, collection, or grouping of information about an individual that is maintained by an agency." 5 U.S.C. 552a(a)(5). With certain exceptions, an agency maintaining a system of records is required to grant the request of an individual "to gain access to his record or to any information pertaining to him." Id. § 552a(d)(1); see id. §§ 552a(j)(k).

The Central Records System is one of the FBI's systems of records. See FBI Privacy Act Issuances (2003) at 12 (downloaded from http://frewebgate.access.gpo/chi-bin/get/doc.cgi? (Jan. 5, 2005)). The Central Records System consists of the FBI's investigative, personnel, applicant, administrative, and general files. Id. Pursuant to 5 U.S.C. §§ 552a(j) and (k), the Attorney General has exempted information contained in the Central Records System from the access requirement of the Privacy Act, to the extent that the information comes within the purview of §§ 552a(j) and (k). 28 C.F.R. § 16.96(a).

II. **STATEMENT OF FACTS**

Vincent DeMartino ("Plaintiff") has requested access to records on himself in both the NYFO and FBI Headquarters ("FBIHQ") concerning a shooting that occurred on or about July

2

16, 2001, in the Coney Island section of Brooklyn, New York. See Third Hardy Declaration ("3rd Hardy Decl.") at ¶ 3. Plaintiff began serving a 25-year sentence on or about February 15, 2005, following a May 6, 2004 jury verdict against plaintiff for conspiracy to commit murder and related gun charges. See id.

As of the date of its last declaration (October 26, 2007 Declaration of Peggy L. Bellando ("Bellando Decl.")), the FBI had identified the following material responsive to Plaintiff's request: (1) approximately 275 pages in a main NYFO file as well as a CD-Rom of photographs from the NYFO file; the public source material from the NYFO was released to plaintiff on November 14, 2006; and (2) approximately 243 pages of responsive documents from FBIHQ, which were released to plaintiff on or about November 14, 2006, following plaintiff's payment of $14.30 in duplication fees. See 3rd Hardy Decl. at ¶ 4. In the Bellando Decl., the FBI sought, and the Court later granted, an extension of time until December 26, 2007, to complete its review and assertion of applicable FOIA exemptions in a Vaughn declaration and summary judgment motion of this identified material. See Bellando Decl. This declaration is submitted as a result of recent developments which have come to light as the FBI has continued to work towards the court-imposed deadline of December 26, 2007.

At the time the FBI submitted the Bellando Decl., it had identified, through a search of its Central Records System ("CRS"), one main file in addition to the files at FBIHQ[1] - - a NYFO main file consisting of approximately 275 pages and one CD-Rom containing photographs. See Bellando Decl. at ¶ 9. RIDS personnel next requested NYFO personnel to send the file to

---

[1] The FBIHQ responsive records consist of two main files and a number of cross-references.

FBIHQ for further review and processing.  See id.  Once the file arrived (within the last two weeks) RIDS determined that in addition to the NYFO main file of 275 pages, there were numerous sub-files to this main file, which total approximately 6,300 pages.  See id.  This page discrepancy is an unusual occurrence for RIDS – personnel normally verify with the assigned case agent(s) that the CRS search has in fact located all responsive field office files and have obtained fairly accurate page counts.  See id.  In this instance, however, both Special Agents assigned to this case were unavailable due to other assignments which had taken them away from the NYFO, and a more complete page count of the main file and sub-files was not obtained until RIDS personnel obtained the main file and related sub-files.  See id.

     Since its discovery of this additional material, RIDS personnel have undertaken the following tasks: (1) promptly notified FBI counsel of this development; and (2) conducted a preliminary review of the approximately 6,300 pages in the sub-files to determine whether and how much of this material is responsive to Plaintiff's request (a preliminary review has revealed that a large percentage of the sub-file material may be responsive); all while continuing to work diligently to complete a December 26, 2007 Vaughn declaration for the 242 FBIHQ pages.[2]  See 3rd Hardy Decl. at ¶ 6.

     In light of this newly-discovered material, the FBI anticipates that the only documents which will be ready for summary judgment by December 26, 2007, will be the previously-identified FBIHQ material.  See id. at ¶ 7.  The previously-discovered 275 NYFO main file pages and the newly-discovered NYFO sub-file material, which should be addressed at the same time

---

[2] This Vaughn declaration will also address redactions made to the public source material (e.g., case agent names) in the NYFO main file.  This public source material was released to plaintiff on November 14, 2006.

since both files are subject to Exemption 7(A), will require additional time to prepare for summary judgment.  See id.  Precisely how much additional time the FBI will need will depend on which path the Court will allow the FBI to take, as explained in further detail below.

As its preferred course of action, the FBI requests permission to bifurcate the litigation of exemptions and move for summary judgment solely on the basis of Exemption 7(A).  Both the main NYFO file and related sub-files involve a multi-subject pending criminal investigation (Plaintiff is one of the multiple subjects), which led to the jury verdict against Plaintiff on or about May 6, 2004, for conspiracy to commit murder and related gun charges, in accordance with 18 U.S.C. §§ 1959 and 924(c).  See 3rd Hardy Decl. at ¶ 8.  Plaintiff's criminal appeal of his conviction and sentencing is presently pending; and Plaintiff's co-conspirators are in the process of being tried.  See id.  The FBI expects the NYFO file and related sub-files to remain open for some time, as district court and appellate proceedings are resolved.  See id.  Consequently, the FBI is confident in its ability to show that the application of Exemption 7(A) to the entirety of the NYFO file, aside from any public source material, is proper, and will continue to apply for the foreseeable future.  See Bellando Decl., ¶ 9.

Notwithstanding the strength of its Exemption 7(A) assertion over the NYFO file, the FBI wishes to avoid the following scenario: (a) it moves for summary judgment on the entirety of the NYFO file based solely on the applicability of Exemption 7(A); (b) its motion is denied; and (c) it is held, pursuant to Maydak v. DOJ, 218 F.3d 760 (D.C. Cir. 2000), to be precluded from asserting the applicability of exemptions other than Exemption 7(A).  The FBI could avoid the foregoing scenario by reviewing the material in these sub-files and preparing a detailed justification of not only Exemption 7(A), but all applicable underlying exemptions, including

Exemptions 2, 3, 5, 6, 7(C), 7(D), 7(E), and 7(F).  See 3rd Hardy Decl. at ¶ 9.

However, as the FBI has explained previously, two significant sets of factors affecting RIDS' workload makes this option unattractive.  See Bellando Decl. at ¶ 12; 3rd Hardy Decl. at ¶ 10.  RIDS' continuing physical relocation to Frederick County, Virginia, has taken a particularly hard toll on those RIDS employees who remain at FBIHQ.  Faced with the option of moving to Winchester, Virginia, or retiring/resigning/or finding alternate employment, a total of 82 RIDS employees have now chosen the latter set of options.  See Bellando Decl. at ¶¶ 13-14.  Unfortunately, those RIDS employees who have left – or are scheduled to leave in the near future – have typically been the most senior and experienced employees.  Dwindling personnel resources, coupled with RIDS' limited ability to hire and train new personnel quickly, means that only a limited number of experienced employees remain to handle plaintiff's FOIA requests.  See Bellando Decl. at ¶15.  And those remaining limited number of experienced RIDS employees have been faced with a significant increase in the FBI's FOIA litigation workload, with court-imposed and/or court-sanctioned urgent and competing deadlines in several cases.  See Bellando Decl. at ¶¶ 16-19.  In addition, this limited number of RIDS personnel are also handling initial administrative requests and appeals.  See Bellando Decl. at ¶ 20.

The FBI also anticipates that the upcoming holidays, along with RIDS employees who have significant "use or lose" annual leave balances, will further impair the FBI's ability to move for summary judgment on the NYFO main and sub-files in the near future.  See Hardy Decl. at ¶ 11.  As a result, the most prudent and resource-saving course of action is to seek the Court's permission to raise the threshold defense of Exemption 7(A) for the NYFO main file and sub-files, and reserve the right to invoke the remaining exemptions at a later date, if necessary.  See

id. Thus, the FBI proposes to review and move for summary judgment on the NYFO main file and sub-files based solely on the applicability of Exemption 7(A), without waving the applicability of Exemptions 2, 3, 5, 6, 7(C), 7(D), 7(E), and 7(F). See id. In so doing, the FBI would review the 275-page main NYFO file and approximately 6,300 pages of sub-files and prepare a Vaughn declaration which would list, in categorical fashion, the types of documents which are included in the main file and sub-files (i.e., witness interviews, internal memoranda, etc.). Based on RIDS' current resource limitations, the FBI estimates that it will need until January 31, 2008 – to complete its review and Vaughn declaration solely on the basis of Exemption 7(A).[3] See id.

In the event that the Court is disinclined to proceed with the FBI's preferred approach, as a secondary course of action the FBI proposes that it review and prepare a representative sample of documents from the NYFO main file and NYFO sub-files – approximately 330 pages, or five (5) percent – and prepare a Vaughn declaration based on this sample. The FBI estimates that this sampling approach will require an additional nine (9) months or until September 26, 2008.[4] See 3rd Hardy Decl. at ¶ 12.

---

[3] Part of this time will be devoted to preparing the documents to be scanned in to RIDS' FOIPA Document Processing System ("FDPS"); reviewing and scoping out any non-responsive pages; identifying and processing for release any public source documents; and identifying and categorizing with particularity each document and page.

[4] If required to Vaughn the entirety of the NYFO files (275 pages in the main file and approximately 6,300 pages in the sub-files), to include both Exemption 7(A) and the underlying exemptions, the FBI estimates that it will require in excess of 18 months. This estimate is based not only on the volume of material that is at issue, but on the dwindling resources available to RIDS during the next several months.

## III. ARGUMENT

**Defendant Should Be Permitted To Move For Summary
Judgment As To The NYFO Records Without Waiving
Any Other Exemptions That May Be Applicable.**

In actions under the FOIA, "the agency bears the burden of justifying its decision to withhold requested information. King v. U.S. DOJ, 830 F.2d 210, 217 (D.C. Cir. 1987). "The agency may meet this burden by filing affidavits describing the material withheld and the manner in which it falls within the exemption claimed." Id.

In Maydak v. U.S. DOJ, 218 F.3d 760 (D.C. Cir. 2000), the defendant relied on FOIA exemption 7(A), 5 U.S.C. § 552(b)(7)(A), to withhold certain records pertaining to certain pending criminal proceedings. By its terms, exemption 7(A) permits the withholding of "records or information compiled for law enforcement purposes," provided that their disclosure "could reasonably be expected to interfere with enforcement proceedings." After the defendant had moved for summary judgment, and after the motion had been granted, the criminal proceedings came to an end, thereby mooting the application of exemption 7(A) to the requested records. Responding to this fact, the defendant moved for an order remanding the case to the district court, so that a showing could be made that other FOIA exemptions applied. Denying this motion, and directing that all of the records be released, the Court of Appeals said: "We have plainly and repeatedly told the government that, as a general rule, it must assert all exemptions at the same time, in the original district court proceedings." 218 F.3d at 764.

In this case, the FBI intends to rely exclusively on FOIA exemption 7(A) in withholding the NYFO records responsive to Plaintiff's request. However, other exemptions of the FOIA or Privacy Act appear to be applicable. See 3rd Hardy Decl. at ¶ 11. These exemptions may include

FOIA exemptions 2, 3, 5, 6, 7(C), 7(D), 7(E), and 7(F).  5 U.S.C. § 552(b)(2), (3), (5), (6), (7)(C)-(F); 3rd Hardy Decl. at ¶ 11.

Notwithstanding the confidence with which defendant approaches this case, it wishes to avoid the following scenario: (1) it moves for summary judgment regarding the NYFO records based solely on the applicability of exemption 7(A); (2) the motion is denied; (3) defendant is held pursuant to Maydak to be precluded from asserting the applicability of other exemptions. Defendant could avoid this scenario by waiting to move for summary judgment until the FBI conducts another review of the requested records and prepares the detailed justification that the motion would require for exemptions other than exemption 7(A).  However, as stated in Defendant FBI's previous motion for an extension of time, the workload of the FBI makes this option unattractive and time-consuming.

Based on the foregoing, defendant is reluctant to add to RIDS's burden by asking it to review records and prepare a detailed justification for exemption claims that are likely to be superfluous.  Accordingly, the "prudent course of action [is] to obtain the court's permission to raise the threshold defense first in order to specifically reserve the right to invoke the remaining exemptions at a later date, if necessary."  See OIP, Freedom of Information Guide & Privacy Act Overview, at 823 (2004).  Adopting this suggestion, defendant asks that it be permitted to move for summary judgment as to the NYFO records based on the applicability of exemption 7(A) without waiving any other exemptions that may be applicable.  Where, as here, the request is not made for the purpose of "gain[ing] a tactical advantage over the FOIA requester," it can and should be granted.  See August v. FBI, 328 F.3d 697, 698 (D.C. Cir. 2003).

**CONCLUSION**

For the foregoing reasons, defendant's motion for an order preserving certain exemptions should be granted.

                                             Respectfully submitted,

                                             /s/
                                           JEFFREY A. TAYLOR, D.C. Bar #498610
                                           United States Attorney

                                           /s/
                                           RUDOLPH CONTRERAS, D.C. Bar #434122
                                           Assistant United States Attorney

                                           /s/
                                           KAREN L. MELNIK, D.C. Bar #436452
                                           Assistant United States Attorney
                                           555 4th Street, N.W.
                                           Washington, DC 20530
                                           (202) 307-0338
                                           (202) 514-8780 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of December, 2007, I caused the foregoing to be served on Plaintiff via first class United States Mail:

Vincent DeMartino
Register No. 22044-053
FCI Allenwood
P.O. Box 2000
White Deer, PA.  17887

                                        /s/
                                  KAREN L. MELNIK
                                  Assistant United States Attorney