IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VINCENT DEMARTINO,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION, et al.,<br><br>Defendants. | Civil. Action No. 06-CV-0879 |

## THIRD DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1) I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to my joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2) In my official capacity as Section Chief of RIDS, I supervise approximately 211 employees who staff a total of ten (10) units and a field operational service unit whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI

records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended; Presidential, Attorney General, and FBI policies and procedures; judicial decisions and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the treatment which has been afforded the FOIA/Privacy Act requests of Vincent DeMartino for access to records on himself in both the FBI New York Field Office ("NYFO") and FBIHQ concerning a shooting that occurred on or about July 16, 2001, in the Coney Island section of Brooklyn, New York. Plaintiff began serving a 25-year sentence on or about February 15, 2005, following a May 6, 2004 jury verdict against plaintiff for conspiracy to commit murder and related gun charges.

(4)     As of the date of its last declaration (October 26, 2007 Declaration of Peggy L. Bellando ("Bellando Decl.")), the FBI had identified the following material responsive to plaintiff's request: (1) approximately 275 pages in a main NYFO file as well as a CD-Rom of photographs from the NYFO file; the public source material from the NYFO was released to plaintiff on November 14, 2006; and (2) approximately 243 pages of responsive documents from FBIHQ, which were released to plaintiff on or about November 14, 2006, following plaintiff's payment of $14.30 in duplication fees. In the Bellando Decl., the FBI sought, and the Court later granted, an extension of time until December 26, 2007, to complete its review and assertion of

applicable FOIA exemptions in a Vaughn declaration and summary judgment motion of this identified material. See Bellando Decl. This declaration is submitted as a result of recent developments which have come to light as the FBI has continued to work towards the court-imposed deadline of December 26, 2007.

(5)  At the time the FBI submitted the Bellando Decl., it had identified, through a search of its Central Records System ("CRS"), one main file in addition to the files at FBIHQ[1] – a NYFO main file consisting of approximately 275 pages and one CD-Rom containing photographs. See Bellando Decl., ¶ 9. RIDS personnel next requested NYFO personnel to send the file to FBIHQ for further review and processing. Once the file arrived (within the last two weeks) RIDS determined that in addition to the NYFO main file of 275 pages, there are in fact numerous sub-files to this main file, which total approximately 6,300 pages. This page discrepancy is an unusual occurrence for RIDS – personnel normally verify with the assigned case agent(s) that the CRS search has in fact located all responsive field office files and have obtained fairly accurate page counts. In this instance, however, both Special Agents assigned to this case were unavailable due to other assignments which had taken them away from the NYFO, and a more complete page count of the main file and sub-files was not obtained until RIDS personnel obtained the main file and related sub-files.

(6)  Since its discovery of this additional material, RIDS personnel have undertaken the following tasks: (1) promptly notified FBI counsel of this development; and (2) conducted a preliminary review of the approximately 6,300 pages in the sub-files to determine whether and

---

[1]The FBIHQ responsive records consist of two main files and a number of cross-references.

how much of this material is responsive to plaintiff's request (a preliminary review has revealed that a large percentage of the sub-file material may be responsive); all the while continuing to work diligently to complete a December 26, 2007 Vaughn declaration for the 242 FBIHQ pages.[2]

(7)  In light of this newly-discovered material, the FBI anticipates that the only documents which will be ready for summary judgment by December 26, 2007, will be the previously-identified FBIHQ material. The previously-discovered 275 NYFO main file pages and the newly-discovered NYFO sub-file material should be addressed at the same time since both files are subject to Exemption 7(A). This will require additional time to prepare for summary judgment. Precisely how much additional time the FBI will need will depend on which path the Court will allow the FBI to take, as explained in further detail below.

(8)  As its preferred course of action, the FBI requests permission to bifurcate the litigation of exemptions and move for summary judgment solely on the basis of Exemption 7(A). Both the main NYFO file and related sub-files involve a multi-subject pending criminal investigation (plaintiff is one of the multiple subjects), which led to the jury verdict against plaintiff on or about May 6, 2004, for conspiracy to commit murder and related gun charges, in accordance with 18 U.S.C. §§ 1959 and 924(c). Plaintiff's criminal appeal of his conviction and sentencing is presently pending; and plaintiff's co-conspirators are in the process of being tried. The FBI expects the NYFO file and related sub-files to remain open for some time, as district court and appellate proceedings are resolved. Consequently, the FBI is confident in its ability to

---

[2] This Vaughn declaration will also address redactions made to the public source material (e.g., case agent names) in the NYFO main file. This public source material was released to plaintiff on November 14, 2006.

show that the application of Exemption 7(A) to the entirety of the NYFO file, aside from any public source material, is proper, and will continue to apply for the foreseeable future. See Bellando Decl., ¶ 9.

(9) Notwithstanding the strength of its Exemption 7(A) assertion over the NYFO file, the FBI wishes to avoid the following scenario: (a) it moves for summary judgment on the entirety of the NYFO file based solely on the applicability of Exemption 7(A); (b) its motion is denied; and (c) it is held, pursuant to Maydak v. DOJ, 218 F.3d 760 (D.C. Cir. 2000), to be precluded from asserting the applicability of the exemptions underlying Exemption 7(A). The FBI could avoid the foregoing scenario by reviewing the material in these sub-files and preparing a detailed justification of not only Exemption 7(A), but all applicable underlying exemptions, including Exemptions 2, 3, 5, 6, 7(C), 7(D), 7(E), and 7(F).

(10) However, as the FBI has explained previously, two significant sets of factors affecting RIDS' workload makes this option unattractive. See Bellando Decl., ¶ 12. RIDS' continuing physical relocation to Frederick County, Virginia, has taken a particularly hard toll on those RIDS employees who remain at FBIHQ. Faced with the option of moving to Winchester, Virginia, or retiring/resigning/or finding alternate employment, a total of 82 RIDS employees have now chosen the latter set of options. See Bellando Decl., ¶¶ 13-14. Unfortunately, those RIDS employees who have left -- or are scheduled to leave in the near future -- have typically been the most senior and experienced employees. Dwindling personnel resources, coupled with RIDS' limited ability to hire and train new personnel quickly, means that only a limited number of experienced employees remain to handle plaintiff's FOIA requests. See Bellando Decl., ¶15. And those remaining limited number of experienced RIDS employees have been faced with a

significant increase in the FBI's FOIA litigation workload, with court-imposed and/or court-sanctioned urgent and competing deadlines in several cases. See Bellando Decl., ¶¶ 16-19. In addition, this limited number of RIDS personnel are also handling initial administrative requests and appeals. See Bellando Decl., ¶ 20.

(11)   The FBI also anticipates that the upcoming holidays, along with RIDS employees who have significant "use or lose" annual leave balances, will further impair the FBI's ability to move for summary judgment on the NYFO main and sub-files in the near future. As a result, the most prudent and resource-saving course of action for the FBI is to seek the Court's permission to raise the threshold defense of Exemption 7(A) for the NYFO main file and sub-files, and reserve the right to invoke the remaining exemptions at a later date, if necessary. Thus, the FBI proposes to review and move for summary judgment on the NYFO main file and sub-files based solely on the applicability of Exemption 7(A), without waving the applicability of underlying exemptions – Exemptions 2, 3, 5, 6, 7(C), 7(D), 7(E), and 7(F). In so doing, the FBI would review the 275-page main NYFO file and approximately 6,300 pages of sub-files and prepare a Vaughn declaration which would list, in categorical fashion, the types of documents which are included in the main file and sub-files (i.e., witness interviews, internal memoranda, etc.). Based on RIDS' current resource limitations, the FBI estimates that it will need until January 31, 2008 – to complete its review and Vaughn declaration solely on the basis of Exemption 7(A).[3]

(12)   In the event that the Court is disinclined to proceed with the FBI's preferred

---

[3] Part of this time will be devoted to preparing the documents to be scanned in to RIDS' FOIPA Document Processing System ("FDPS"); reviewing and scoping out any non-responsive pages; identifying and processing for release any public source documents; and identifying and categorizing with particularity each document and page.

approach, as a secondary course of action the FBI proposes that it review and prepare a representative sample of documents from the NYFO main file and NYFO sub-files – approximately 330 pages, or five (5) percent – and prepare a <u>Vaughn</u> declaration based on this sample. The FBI estimates that this sampling approach will require an additional nine (9) months or until September 26, 2008.[4]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of December, 2007.

DAVID M. HARDY
Section Chief
Records/Information Dissemination Section
Federal Bureau of Investigation
Washington, D.C.

---

[4] If required to <u>Vaughn</u> the entirety of the NYFO files (275 pages in the main file and approximately 6,300 pages in the sub-files), to include both Exemption 7(A) and the underlying exemptions, the FBI estimates that it will require in excess of 18 months. This estimate is based not only on the volume of material that is at issue, but on the dwindling resources available to RIDS during the next several months.