UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| VINCENT DEMARTINO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06CV0879 (RJL) |
| ) | |
| F.B.I., et al., ) | |
| ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART**[1]

Defendant Federal Bureau of Investigation ("FBI"), respectfully requests that this Court grant summary judgment in part in their favor pursuant to Federal Rule of Civil Procedure, on the grounds that no genuine issue of material fact exists and Defendant is entitled to judgment as a matter of law.[2]

In support of this motion, Defendant respectfully refers the Court to the accompanying Memorandum of Points and Authorities in Support and accompanying Statement of Material

---

[1] This motion addresses records responsive to plaintiff's FOIA requests which are maintained by FBI Headquarters, as well as public source documents that were released to plaintiff by the FBI's New York Field Office. As explained in Defendant's Motion for Order Preserving Certain Exemptions, see docket #34, the defendant intends to file another Motion for Summary Judgment in Part to address the remaining documents which have been withheld by the New York Field Office.

[2] With respect to the other named Defendants, the Court sua sponte dismissed the complaint against the United States Probation Office, entered judgment for the Bureau of Prisons and the Executive Office for the United States Attorneys on claims brought under the Freedom of Information Act and the Privacy Act, and entered judgment for the FBI on the Privacy Act claim. See September 27, 2007 Memorandum Opinion and Order

Facts Not In Dispute, as well as the Fourth Declaration of David M. Hardy.  A proposed Order

consistent with this Motion is attached hereto.[3]

Respectfully submitted,

   /s/
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


   /s/
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney


   /s/
KAREN L. MELNIK, D.C. Bar # 436452
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC 20530
(202) 307-1249
(202) 514-8780 (facsimile)

---

[3]  Plaintiff, is hereby advised that failure to respond to this motion may result in the district court granting the motion.  See Fox v. Strickland, 837 F.2d 507, 509 (D.C. Cir. 1988).  Plaintiff should also take notice that any factual assertions contained in the affidavits and other attachments in support of defendants' motion may be accepted by the Court as true unless the plaintiff submits his own affidavits or other documentary evidence contradicting the assertions in the defendant's attachments.  See Neal v. Kelly, 963 F.2d 453, 457 (D.C. Cir. 1992).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| VINCENT DEMARTINO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06CV0879 (RJL) |
| ) | |
| F.B.I., et al., ) | |
| ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I.    Introduction**

_____Undisputed evidence shows that defendant FBI has fully complied with its obligations under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  The FBI has processed a total of 263 pages responsive to plaintiff's requests, and has released to plaintiff a total of 91 pages in full, 154 pages in part, 7 pages have been withheld in their entireties, 10 pages have been withheld because they are duplicates, and one page has been referred to another government agency.

Plaintiff's FOIA claims should be dismissed because the FBI's redactions and withholdings clearly fall within exemptions to FOIA disclosure requirements.  The disclosure of the records at issue would constitute an unwarranted invasion of privacy, reveal information that could impede the effectiveness of the FBI's internal law enforcement procedures and operations, would violate the secrecy of Federal Grand Jury proceedings, could have a detrimental effect on the current and future cooperation of individuals willing to provide information to the FBI, could

reveal sensitive law enforcement techniques and endanger the life or physical safety of an

individual, could reveal investigative techniques and procedures or guidelines that allow the FBI

to carry out its law enforcement investigations and prosecutions, and could reasonably be

expected to endanger the life and/or physical safety of individuals who provided information

concerning criminal activities of plaintiff and plaintiff's associates.  The Fourth Declaration of

David M. Hardy describes the FBI's response to Plaintiff's FOIA requests and demonstrates that

the FBI properly withheld documents pursuant to Exemptions 2, 3, 6 , 7(C), 7(D), 7(E), 7(F) and

the Privacy Act ("PA") 5 U.S.C. § 552(a)(j)(2).  Plaintiff's challenge should be denied and

summary judgment granted to defendant regarding FBIHQ records.  Therefore, Defendant FBI is

entitled to judgment pursuant to Federal Rule of Civil Procedure 56.

## STATEMENT OF FACTS

Defendants adopts as their statement of facts the Statement of Material Facts Not In

Genuine Dispute, appended hereto.

## ARGUMENT

**I.     Legal Standards**

**A.     Evidentiary Standard for Summary Judgment**

Where no genuine dispute exists as to any material fact, summary judgment is required.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A genuine issue of material fact is one

that would change the outcome of the litigation.  Id. at 247.  "The burden on the moving party

may be discharged by 'showing'—that is, pointing out to the [Court]—that there is an absence of

evidence to support the non-moving party's case."  Sweats Fashions, Inc. v. Pannill Knitting

Company, Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).  Once the moving party has met its

2

burden, the non-movant—here Plaintiff—may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment here, Plaintiff must present some objective evidence that would enable the court to find he is entitled to relief.

In Celotex Corp. v. Catrett, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986); see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor). In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. Pro. 1).

## B.    Summary Judgment in FOIA Cases

The summary judgment standards set forth above also apply to FOIA cases, which are typically decided on motions for summary judgment. See Cappabianca v. Commissioner, U.S. Customs Serv., 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) (citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)). For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to de novo review by the courts. Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980). In a FOIA suit, an agency is entitled to summary judgement once it demonstrates that no material facts are in dispute and that each document that falls within the

3

class requested either has been produced, is unidentifiable, or is exempt from disclosure. See Students Against Genocide v. Dept. of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. U.S. Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).

As a practical matter, this standard for summary judgment means that the agency must provide the Court and the plaintiff with affidavits or declarations and other evidence which show that the documents are exempt from disclosure. See, e.g., Center for Nat'l Security Studies v. U.S. Dep't of Justice, 331 F.3d 918, 927 (D.C. Cir. 2003); Hayden, 608 F.2d at 1384, 1386. Summary judgment may be granted to an agency in a FOIA case solely on the basis of agency affidavits [or declarations] if the "affidavits are 'relatively detailed, non-conclusory, and not impugned by evidence . . . of bad faith on the part of the agency.'" Public Citizen, Inc. v. Dept. of State, 100 F. Supp.2d 10, 16 (D.D.C. 2000) (quoting McGhee v. Central Intelligence Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983)); see also Nat'l Security Studies, 331 F.3d at 927.

Typically, the agency's declarations or affidavits are referred to as a Vaughn index, after the case of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974). There is no set formula for a Vaughn index. "[I]t is well established that the critical elements of the Vaughn index lie in its function, and not in its form." Kay v. FCC, 976 F. Supp. 23, 35 (D.D.C. 1997).

The purpose of a Vaughn index is "to permit adequate adversary testing of the agency's claimed right to an exemption." NTEU v. Customs, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing Mead Data Central v. United States Dept. of the Air Force, 566, F.2d 242, 251 (D.C. Cir. 1977), and Vaughn v. Rosen, 484 F.2d 820, 828 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974)).

Thus, the index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record". NTEU, 802 F.2d at 527 n.9.

The Vaughn Index serves a threefold purpose: (1) it identifies each document withheld; (2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage the interests protected by the claimed exemption. See Citizens Com'n on Human Rights v. Food and Drug Admin., 45 F.3d 1325, 1326 (9th Cir. 1995). "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology of Washington, D.C., Inc. v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979).

Here, the FBI has submitted a declaration and a coded Vaughn index in support of this motion for summary judgment. The declaration was prepared by John M. Hardy, Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at FBI Headquarters ("FBIHQ") in Washington, D.C. See Fourth Declaration of David M. Hardy ("4th Hardy Decl.") at ¶ 1. The Hardy declaration meets the requirements of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 15 U.S. 977, 94 S.Ct. 1564 (1974), and provides the Court with the requisite basis to grant defendant's motion. The Vaughn itemizations identify and describe the documents responsive to Plaintiff's FOIA requests (to the extent responsive documents were found), and set forth the justification for exemptions claimed for the withholding of certain documents.

## II.    The FBI Conducted An Adequate Search for Responsive Records.

The agency's burden is to establish that it has conducted a search reasonably calculated to uncover all responsive records.[4]  Weisberg v. Department of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  The issue is not whether there might possibly exist other records responsive to the request, but whether the search for responsive records was reasonable.  Id.  The agency can establish the reasonableness of its search by affidavits if they are relatively detailed, non-conclusory, and made in good faith.  Weisberg, 745 F.2d at 1485.  Summary judgment is appropriate where the agency submits  a "'reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched,'" unless "a review of the record raises substantial doubt" about the adequacy of the search.  Valencia-Lucena v. United States Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999), quoting Oglesby v. Department of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).

The FOIA does not require that an agency search every division or field office in response to a FOIA request when responsive documents are likely to be located in one place.  Marks v. Dep't of Justice, 578 F.2d 261, 263 (9th Cir. 1978).  "When a request does not specify the locations in which an agency should search, the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return; in other words, the agency generally need not 'search every record system.'"  Campbell v. United States

---

[4]  An agency must respond to a FOIA request only if it "reasonably describes" the records it seeks.  5 U.S.C. § 552(a)(3)(A).  A request meets this standard only if a professional agency employee familiar with the subject area is able to locate the requested records with a "reasonable amount of effort."  H.R. Rep. No. 93-876, at 6 (1974), reprinted in 1974 U.S.C.C.A.N. 6271.

Dep't of Justice, 164 F.3d 20, 28 (D.C. Cir. 1998), quoting Oglesby, 920 F.2d at 68. "The agency is not required to speculate about potential leads" to the location of responsive documents, Kowalczyk v. Department of Justice, 73 F.3d 386, 389 (D.C. Cir. 1996), although it is required "to follow through on obvious leads to discover requested documents." Valencia-Lucena, 180 F.3d at 325. "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." Safecard Serv., Inc. v. Securities & Exch. Comm'n, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

In this case, the FBI conducted a reasonable search for responsive records and found 263 pages to either release in whole or in part, or withhold in their entirety. See 4th Hardy Decl. at ¶ 4. Specifically, in response to plaintiffs requests, FBIHQ searched the Central Records System ("CRS"). See id. at ¶¶ 6-13. The Central Records System ("CRS") enables the FBI to maintain all information which it has acquired in the course of fulfilling its mandated law enforcement responsibilities. See id. at ¶ 6. The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes. See id. CRS is organized into a numerical sequence of files, called FBI "classifications," which are broken down according to subject matter. See id. The subject matter of a file may correspond to an individual, organization, company, publication, activity, or foreign intelligence matter (or program). See id. Certain records in the CRS are maintained at FBIHQ, whereas records that are pertinent to specific field offices of the FBI are maintained in those field offices. See id. While the CRS is primarily designed to serve as an investigative tool, the FBI searches the CRS for documents that are potentially responsive to FOIA/Privacy Act requests. See id. The mechanism that the FBI uses to search the CRS is the Automated Case Support System ("ACS"). See id.

On or about October 16, 1995, the ACS system was implemented for all Field Offices, Legal Attaches ("Legats"), and FBIHQ in order to consolidate portions of the CRS that were previously automated.  See id. at ¶ 7.  ACS can be described as an internal computerized subsystem of the CRS.  See id.  Because the CRS cannot electronically query the case files for data, such as an individual's name or social security number, the required information is duplicated and moved to the ACS so that it can be searched.  See id.  More than 105 million records from the CRS were converted from automated systems previously utilized by the FBI. See id.  Automation did not change the CRS; instead, automation has facilitated more economic and expeditious access to records maintained in the CRS.  See id.

The retrieval of data from the CRS is made possible through the ACS using the General Indices, which are arranged in alphabetical order.[5]  See id. at ¶ 8.  The entries in the General Indices fall into two categories:

> (a) A "main" entry – A "main" entry, or "main" file, carries the name corresponding with a subject of a file contained in the CRS.

> (b) A "reference" entry – "Reference" entries, sometimes called "cross-references," are generally only a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another "main" file on a different subject matter.

See id.

Searches made in the General Indices to locate records concerning a particular subject, such as Vincent Anthony DeMartino, are made by searching the subject requested in the index. See id. at ¶ 9.  The ACS consists of three integrated, yet separately functional, automated

---

[5]  The General Indices, which became fully automated on September 24, 1987, also include index cards which allow a manual search for records prior to that date.

applications that support case management functions for all FBI investigative and administrative cases:

(a)  Investigative Case Management ("ICM") – ICM provides the ability to open, assign, and close investigative and administrative cases as well as set, assign, and track leads.  The Office of Origin ("OO"), which sets leads for itself and other field offices, as needed, opens a case.  The field offices that receive leads from the OO are referred to as Lead Offices ("LOs").  When a case is opened, it is assigned a Universal Case File Number ("UCFN"), which is used by FBIHQ, as well as all FBI field offices and Legats that are conducting or assisting in the investigation.  Using file number "91-HQ-118829," which is one of the files responsive in this case, as an example, an explanation of the UCFN is as follows:  "91" indicates the classification for the specific type of investigation, which in this case is Bank Robbery, "HQ" is the abbreviated form used for the OO of the investigation, which in this case is FBIHQ; and "118829" denotes the individual case file number for the particular investigation.

(b)  Electronic Case File ("ECF") – ECF serves as the central electronic repository for the FBI's official text-based documents.  ECF supports the universal serial concept in that only the creator of a document serializes it into a file.  This provides a single-source entry of serials into the computerized ECF system.  All original serials are maintained in the OO case file.

(c)  Universal Index ("UNI") – UNI continues the universal concepts of ACS by providing a complete subject/case index to all investigative and administrative cases.  Only the OO is required to index; however, the LOs may index additional information as needed.  UNI, an index of approximately 100.0 million records, functions to index names to cases, and to search names and cases for use in FBI investigations.  Names of individuals or organizations are

9

recorded with identifying applicable information such as date or place of birth, race, sex, locality, Social Security number, address, and/or date of event. See id. at ¶ 10.

The decision to index names other than subjects, suspects, and victims is a discretionary decision made by the FBI Special Agent ("SA") – and on occasion, professional support employees – assigned to work on the investigation, the Supervisory SA ("SSA") in the field office conducting the investigation, and the SSA at FBIHQ. See id. at ¶ 11. The FBI does not index every name in its files; rather, it indexes only that information considered to be pertinent, relevant, or essential for future retrieval. See id. Without a "key" (index) to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved. See id. The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI, which is to investigate violations of federal criminal and national security statutes. See id. Therefore, the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual, i.e., Vincent Anthony DeMartino. See id.

Here, In response to plaintiff's June 16, 2005 request to the NYFO for information on the June 16, 2001 shooting in the Coney Island section of Brooklyn, New York, the FBI located one main file, 281A-NY-281501, which, with the exception of public source material, was withheld in full pursuant to FOIA Exemption (b)(7)(A). See id. at ¶ 12. Twenty-eight pages of public source material from this NYFO main file was reviewed and on November 14, 2006, 25 pages

10

were released in full and three (3) pages were released with redactions taken pursuant to Privacy

Act Exemption (j)(2) and FOIA Exemptions (b)(6) and (b)(7)(C).[6]  See id.

In response to plaintiff's undated letter to FBIHQ for records on himself,[7] the FBI located

main files 183-HQ-6685 and 91-HQ-118829, as well as cross-references 91-HQ-112598-5, 6,

and 7; 91-HQ-1419-34-964; and 92A-HQ-1043395-5 and 16x5.[8]  See id. at ¶ 13.  These were

processed for release on November 14, 2006--at the same time as the NYFO public source

documents.  See id. at ¶¶ 12-13.  The documents from the FBIHQ files comprise 233 pages,[9] of

which 1) 10 pages were not released as they were duplicates of other pages released; 2) 66 pages

were released in full;  3) 1 page was referred to the Bureau of Prisons;[10]  4) 149 pages were

released in part pursuant to Privacy Act Exemption (j)(2) and FOIA Exemptions (b)(2), (b)(3),

(b)(6), (b)(7)(C), (b)(7)(D), (b)(7)(E), and (b)(7)(F); and 5) 7 pages were withheld in full

---

[6] This release consists of the following pages: DeMartino 227-254.

[7]  The FBI also conducted a search pursuant to plaintiff's February 20, 2005 request to FBIHQ for records related to a shooting that occurred on or about July 16, 2001, in the Coney Island section of Brooklyn, New York.  This search yielded no responsive records.  See Docket #22, Hardy Declaration, at ¶¶ 5-19.

[8]  The correspondence concerning plaintiff's requests are described in the Hardy Declaration, see docket #22, at ¶¶ 5-25, and the Second Hardy Declaration, see docket #25, at ¶¶ 5-6.

[9]  The FBI has subsequently determined that the page count included in the November 14, 2006 release letter was incorrect and that 233 pages is the correct total page count.  See Second Hardy Declaration at ¶ 6.

[10]  See 4th Hardy Decl. at ¶ 61.

pursuant to Privacy Act Exemption (j)(2) and FOIA Exemptions (b)(2), (b)(3), (b)(6), (b)(7)(C),

(b)(7)(D), (b)(7)(E), and (b)(7)(F).[11]  See id.  at ¶ 13.

## III.    FBI's Declaration Is Sufficient.

The FBI has submitted in support of this motion the Fourth Declaration of David M.

Hardy.  Mr. Hardy has been the Section Chief of RIDS/RMD at FBIHQ since 2002.  See 4th

Hardy Decl. at ¶ 1.  In his current capacity as Section Chief of RIDS, he supervises

approximately 211 employees who staff a total of ten (10) FBIHQ units and a field operational

service center whose collective mission is to effectively plan, develop, direct, and manage

responses to requests for access to FBI records and information pursuant to the FOIA; Privacy

Act; Executive Order 12958, as amended; Presidential, Attorney General, and FBI policies and

procedures; judicial decisions; and Presidential and Congressional directives.  See id.  The

statements contained in the Fourth Declaration are based upon his personal knowledge, upon

information provided to him in his official capacity, and upon conclusions and determinations

reached and made in accordance therewith.  See id. at ¶ 2.

Due to the nature of his official duties, Mr. Hardy is familiar with the procedures

followed by the FBI in responding to requests for information from its files pursuant to the

provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.  See id. at

¶ 3.  Specifically, he is aware of the treatment which has been afforded the FOIA/Privacy Act

requests of plaintiff, Vincent DeMartino, for access to records on himself at FBIHQ and the New

---

[11]  This release consists of the following pages: DeMartino 1-226 and 257-263.  See 4th Hardy
Decl. at n.10

York Field Office ("NYFO")[12] concerning a shooting that occurred on or about July 16, 2001, in the Coney Island section of Brooklyn, New York. See id. In describing the FBI's response to Plaintiff's request, Mr. Hardy's declaration is sufficiently detailed and non-conclusory and provides the court with an adequate basis for review of the FBI's response to Plaintiff's request. There is no evidence of bad faith by the agency.

As set forth above, the declaration submitted in support of this motion meets the requirements of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564 (1974), and provides the Court with the requisite basis to grant Defendant's motion.

## IV.    Defendant FBI Properly Invoked Certain FOIA Exemptions To Withhold Information Protected From Disclosure[13]

As explained below, Defendant withheld documents responsive to plaintiff's FOIA requests pursuant to Privacy Act Exemption (j)(2) and FOIA Exemptions (b)(2), (b)(3), (b)(6), (b)(7)(C), (b)(7)(D), (b)(7)(E), and (b)(7)(F).

### A.    Privacy Act Exemption (j)(2)

The contents of plaintiff's criminal case files are exempt from the Privacy Act's disclosure provisions. Subsection (j)(2) of the Privacy Act allows an agency by regulation, to exempt from mandatory disclosure:

> records maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent,

---

[12] This Vaughn declaration only includes the public source documents from the NYFO main file. As stated in the Third Hardy Declaration, see docket 34, the remaining non-public source documents from the NYFO main and subfiles will be discussed in a later declaration.

[13] For a complete explanation of the format used for the justification of the deleted material, and a summary of the justification categories, refer to the Fourth Hardy Declaration at ¶¶ 15-17.

> control, or reduce crime or to apprehend criminals, and the
> activities of prosecutors, courts, correctional, probation, pardon, or
> parole authorities, and which consists of ...(B) information
> compiled for the purpose of a criminal investigation, including
> reports of informants and investigators, and associated with an
> identifiable individual; or (C) reports identifiable to an individual
> compiled at any stage of the process of enforcement of the criminal
> laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a (j)(2).

Investigatory records located in main file 91-HQ-118829 were compiled as a result of the

FBI's legitimate investigation of plaintiff's involvement in a bank robbery, in violation of 18

U.S.C. § 2113(a) and 18 U.S.C. § 2.  See 4th Hardy Decl. at ¶ 20.  Pertinent cross-references

located in files 91-HQ-C1419 and 91-HQ-112598 were also collected as a result of bank robbery

investigations.  See id.  Main file 183-HQ-6685 was compiled during a criminal investigation of

plaintiff and his suspected involvement in a Racketeer Influence and Corrupt Organization

("RICO"), in violation of 18 U.S.C. §§ 1961-9163, commonly referred to as the RICO Statute.

See id.  Lastly, pertinent cross-references from 92A-HQ-1043385 were compiled as part of

plaintiff's involvement in a violation of the RICO statute, 18 U.S.C. 1961(1).  See id.

Accordingly, these files are exempt from disclosure pursuant to 5 U.S.C. § 552a(j)(2) of the

Privacy Act, in conjunction with 28 C.F.R. § 16.96.  Although access to the records at issue was

denied under the Privacy Act, the documents were processed under the access provisions of the

FOIA to achieve maximum disclosure.

**B.    Exemption (b)(2)**

Section 552 (b)(2) of FOIA exempts from mandatory disclosure records "related solely to

the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  Exemption (b)(2)

14

applies primarily to two categories of materials: (1) internal agency matters so routine or trivial that they could not be "subject to ... a genuine and significant public interest;" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations. <u>Dept. of Air Force v. Rose</u>, 425 U.S. 352, 369-70 (1976); <u>National Treasury Employees Union v. U.S. Customs Service</u>, 802 F.2d 525, 528-30 (D.C. Cir. 1986); <u>Crooker v. Bureau of Alcohol, Tobacco and Firearms</u>, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981).  The second category, sometimes referenced in the governing case law as the "high (b)(2) category," <u>see</u> <u>Schiller v. NLRB</u>, 964 F.2d 1205, 1207 (D.C. Cir. 1992), exempts from mandatory disclosure documents relating to more substantive internal matters.  <u>Id</u>.

An agency is authorized to withhold documents  in this category to the extent that disclosure would reveal techniques and procedures for law enforcement investigations or prosecutions, <u>id</u>.; would disclose guidelines for law enforcement investigations; or would risk circumvention of an agency statute or impede the effectiveness of an agency's law enforcement activities.  <u>See</u> <u>Crooker</u>, 670 F.2d 1051 (D.C. Cir. 1981) (<u>en</u> <u>banc</u>); <u>Hardy v. ATF</u>, 631 F.2d 653, 656 (9th Cir. 1980).

## 1.  <u>Internal FBI Telephone Numbers</u>

The FBI properly evaluated responsive information, and withheld certain information pursuant to Exemption (b)(2).  <u>See</u> 4th Hardy Decl. ¶¶ 21-25.  Specifically, Exemption (b)(2)-1 has been asserted to protect the business telephone numbers of FBI SAs and support personnel. <u>See</u> <u>id</u>. at ¶ 23.  The telephone numbers of FBI employees clearly relate to the internal practices of the FBI in that all these numbers are utilized by FBI personnel during the performance of their jobs.  <u>See</u> <u>id</u>.  Disclosure of these telephone numbers could subject these individuals to harassing

telephone calls which could disrupt official business, including impeding the ability of the FBI

SAs and professional support employees to conduct and conclude law enforcement investigations

in a timely manner.  See id.  Release of routine internal administrative information such as

telephone numbers serves no public benefit, and there is no indication that there is a genuine

public interest in the disclosure of these numbers.  See id.  Accordingly, because an internal

telephone number is related solely to the internal practices of the FBI, because disclosure would

not serve any public benefit, and because disclosure would impede the FBI's effectiveness, the

FBI has withheld this information pursuant to Exemption (b)(2)-1 on the following pages:

DeMartino 20, 87, 120-121, 143, 152, 171, 238, and 258-263.

### 2.  Operational Funds

The FBI has asserted exemption (b)(2)-2 to protect information concerning operational

funds that were dispensed during the course of a law enforcement investigation.  See 4th Hardy

Decl. at ¶ 24.  This is internal administrative information which, if disclosed, could provide

insight into the funding of undercover operations.  See id.  Disclosure of this information would

permit the general public to calculate how the FBI funds similar matters.  See id.  This

information could be used to exhaust the FBI's funding of a particular investigation, which in

turn could impede the FBI's effectiveness in administering its operations. See id.  Accordingly,

the FBI properly protected this information pursuant to FOIA Exemption (b)(2) on the following

pages:  DeMartino 7, 20-21, 126, 130, 133-134, 139-140, 154, 241, and 257.

### 3.  Effectiveness Ratings of Investigative Techniques

Form FD-515 is a form used by FBI investigative SAs to report investigative

accomplishments.  See 4th Hardy Decl. at ¶ 25.  This form is submitted at various stages of an

investigation to report statistical accomplishments such as an arrest, the recovery of stolen

property, and so forth.  See id.  At the upper right hand side of this form is a block captioned

"Investigative Assistance and Techniques Used."  This block lists investigative techniques, some

of which were used by the investigative personnel during the investigation of plaintiff and others.

See id.  Opposite each investigative technique is a rating column that records a numerical rating

from 1 to 4 to rate each technique used by investigative personnel during the course of the

investigation.  The numerical rating evaluates the effectiveness of each technique used in

bringing the investigation to a successful conclusion.  See id.  The entire rating column has been

deleted to protect from release the various techniques used in the investigation of plaintiff and

others in the records responsive to plaintiff's request.  See id.

        If the rating columns were released along with the ratings of each technique used,

plaintiff and others involved in criminal violations such as this could change their activities and

modus operandi in order to avoid detection and/or surveillance in the future. See id.  Therefore,

protection of these rating columns is essential to prevent future circumvention of the law by

criminals.  See id.  The FBI will use the same or similar techniques to bring similar future

investigations to a successful conclusion.  See id.  Thus the FBI has properly withheld this

information, in conjunction with Exemption (b)(7)(E)-1, pursuant to FOIA Exemption (b)(2)-3

on the following pages:  DeMartino 208 and 210-211.

        **C.      Exemption (b)(3)**

        Title 5 U.S.C. § 552(b)(3) allows for the deletion of information "specifically exempted

from disclosure by statute (other than section 552(b) of this title), provided that such statute (A)

requires that the matters be withheld from the public in such a manner as to leave no discretion

17

on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  Id.[14]

     Rule 6(e) explicitly bars disclosure of "matters occurring before the grand jury", and serves to preserve the secrecy of the grand jury proceedings.[15]  It has long been recognized that Fed.R.Crim.P. 6(e) qualifies as a FOIA Exemption (b)(3) statute.  See, e.g., Church of Scientology International v. U.S. Dept. of Justice, 30 F.3d 224, 235 (1st Cir. 1994); Fund for Constitutional Government v. National Archives and Records Service, 656 F.2d 856, 867-68 (D.C.Cir. 1981) (the argument that the Federal Rules of Criminal Procedure are not "statutes" for FOIA Exemption (b)(3) purposes was soundly rejected with respect to Rule 6(e).)

     Rule 6(e) is precise in its description of the circumstances under which grand jury information may be disclosed, none of which are applicable here.  See Fed.R.Crim.P. 6(e)(3).  First, disclosure may be made to a government attorney "for use in the performance of such attorney's duty", Fed.R.Crim.P. 6(e)(3)(A)(i).  Second, limited disclosure may be made to "government personnel" deemed necessary by a federal government attorney to assist federal government counsel in the "performance of such attorney's duty to enforce federal criminal law." Fed.R.Crim.P. 6(e)(3)(A)(ii).  Three other exceptions permit disclosure only by court order.  See

---

[14] "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage."  Goland v. CIA, 607 F.2d 339, 350 (D.C. Cir. 1978), cert. denied, 445 U.S. 927 (1980).

[15]    In relevant part, Rule 6(3)(2) provides: "General Rule of Secrecy.  A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or a person to whom disclosure is made pursuant to paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury....  A knowing violation of Rule 6 may be punished as a contempt of court."

Fed.R.Crim.P. 6(e)(3)(C)(i),(ii), and (iv).  The last exception permits a federal government attorney to disclose otherwise secret material "to another federal grand jury".  Fed.R.Crim.P. 6(e)(3)(C)(iii). Thus, Rule 6(e) establishes particular criteria as to the withholding of information.  None of the criteria are applicable in this case.  Thus, because none of the Rule 6(e) exceptions apply, the rule's "ban on disclosure is for FOIA purposes absolute and falls within subpart (A) of Exemption 3."  <u>Fund for Constitutional Government</u>, 656 F.2d at 868.

In order to effectuate Rule 6(e)'s objectives, "the scope of the secrecy is necessarily broad. It encompasses not only the direct revelation of grand jury transcripts but also the disclosure of information which would reveal 'the identities of witnesses or jurors, the substance of the testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors, and the like.'"  <u>Fund for Constitutional Government</u>, 656 F.2d at 869 (quoting <u>SEC v. Dresser Industries Inc.</u>,628 F.2d 1368, 1382 (D.C.Cir. 1980)).

Exemption (b)(3) was asserted pursuant to 6(e) of the Federal Rules of Criminal Procedure to withhold Federal Grand Jury ("FGJ") information.  <u>See</u> 4th Hardy Decl. at ¶ 27.  It is well established that Rule 6(e) embodies a broad, sweeping policy of preserving the secrecy of FGJ proceedings regardless of the substance of the material being withheld.  The name of an individual who testified and specific material subpoenaed by the FGJ were withheld pursuant to this exemption.  <u>See id.</u>  Accordingly, any such disclosure would clearly violate the secrecy of FGJ proceedings and could reveal the inner workings of the FGJ process.  Exemption (b)(3) has been asserted on the following pages:  DeMartino 18 and 212.  <u>See id.</u>

D.     **Exemption (b)(6)**

Exemption 6 of the FOIA protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  "The Supreme Court has interpreted the phrase 'similar files' to include *all information* that applies to a particular individual." Lepelletier v.  FDIC, 164 F.3d 37, 46 (D.C. Cir.  1999) (quoting Department of State v. Washington Post Co., 456 U.S. 595, 602 (1982)) (emphasis added).  The Court has also emphasized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person."  U.S. Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 763 (1989).

To determine whether there would be a "clearly unwarranted invasion of personal privacy," the court must balance the interests of protecting "an individual's private affairs from unnecessary public scrutiny," and "the public's right to governmental information."  Lepelletier, 164 F.3d at 46 (citing United States Dept.  of Defense Dept.  of Military Affairs v.  FLRA, 964 F.2d 26, 29 (D.C. Cir.  1992) and quoting Department of Air Force v.  Rose, 425 U.S. 352, 372 (1976)) (internal quotation marks omitted).  In determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA: "[T]he *only* relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"  Lepelletier, 164 F.3d at 46 (quoting United States Dept.  of Defense v.  FLRA, 510 U.S. 487, 497 (1994)) (emphasis added and internal quotation marks omitted) . See also Reporters Committee, 489 U.S.

at 773.   Information that does not directly reveal the operation or activities of the federal

government "falls outside the ambit of the public interest that the FOIA was enacted to serve."

Id. at 775.   Further, "something, even a modest privacy interest, outweighs nothing every time."

National Ass'n of Retired Fed.  Employees v.  Horner, 879 F.2d 873, 879 (D.C. Cir. 1989); but

see Lepelletier, 164 F.3d at 48 (in extraordinary circumstance where the individuals whose

privacy the government seeks to protect have a "clear interest" in release of the requested

information, the balancing under Exemption 6 must include consideration of that interest).

When asserting this exemption, each piece of information was scrutinized to

determine the nature and strength of the privacy interest of any individual whose name and/or

identifying information appeared in the pages at issue.   See 4th Hardy Decl. at ¶ 29.   When

withholding information pursuant to this exemption, the FBI is required to balance the privacy

interest of the individuals mentioned against any public interest in disclosure.   When making this

analysis, the public interest in disclosure was determined by whether the information in question

would inform plaintiff or the general public about the FBI's performance of its mission to protect

and defend the United States against terrorist and foreign intelligence threats, to uphold and

enforce the criminal laws of the United States, and to provide leadership and criminal justice

services to federal, state, municipal, and international agencies and partners.   See id.   In each

instance where information was withheld, it was determined that individual privacy rights

outweighed the public interest.

    1.   Names and/or Identifying Information of FBI Special Agents and
        Support Personnel

Exemption (b)(6)-1 has been asserted in conjunction with Exemption (b)(7)(C)-1

to protect the names and identifying information, including telephone numbers and Social Security Numbers of FBI SAs responsible for conducting investigations of individuals who pose a threat to the United States in terrorism, espionage, racketeering, and bank robbery cases as well as professional support employees responsible for providing assistance to FBI SAs conducting investigations of these individuals. See id. at ¶ 30. Disclosure of the names and identifying information could subject these employees to unauthorized inquiries by members of the media and the general public who seek access to this type of information. See id. Accordingly, the FBI determined that the FBI SAs and professional support employees referenced in the responsive records maintain substantial privacy interests in not having their identities disclosed. See id.

The FBI next examined the records at issue to determine whether there was any public interest that outweighed the substantial privacy interests of the FBI SAs and professional support employees. See id. The FBI could not identify any discernible public interest. See id. The disclosure of the names and identifying information of FBI SAs and professional support employees would not demonstrate how the FBI performs its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners. See id. Ultimately, disclosure of the names and identifying information of FBI SAs and professional support employees would shed no light on the performance of the FBI's mission. Consequently, the privacy interests of these individuals outweighs no discernible public interest in disclosure and the disclosure of the names and identifying information of these individuals would constitute a clearly unwarranted invasion of their personal privacy. See id. The FBI has properly asserted Exemption (b)(6)-1 in conjunction

22

with (b)(7)(C)-1 on the following pages:  DeMartino 1, 5, 9, 14, 20-22, 23, 37, 41, 43, 45, 48, 50-53, 61, 75, 84-85, 87, 96, 99, 106, 114, 116-124, 126-127, 131, 137-139, 141-143, 150-152, 154-158, 160-161, 166, 170-171, 193, 203, 206, 208, 210-211, 214-218, 227, 240-241, and 251.  <u>See</u> <u>id.</u>

               2.  <u>Names and/or Identifying Information of Third Parties of Investigative Interest</u>

Exemption (b)(6)-2 has been asserted in conjunction with Exemption (b)(7)(C)-2 to withhold the names and identifying information of third parties who were of investigative interest to the FBI.  <u>See</u> 4th Hardy Decl. at ¶ 31.  During the course of the FBI's investigation into plaintiff's criminal activities, information was developed and recorded in the course of interviews conducted with plaintiff's associates.  <u>See</u> <u>id.</u>  Due to their criminal activities, these third-party individuals were of investigative interest to the FBI.  <u>See</u> <u>id.</u>  Disclosure of the identities of third parties in this context could cause unsolicited and unnecessary attention to be focused on them and disclosure may embarrass them. For these reasons the FBI has determined that these individuals maintain a substantial privacy interest in not having their identities disclosed.  <u>See</u> <u>id.</u>

After identifying the substantial privacy interest of these third parties, the FBI balanced those interests against the public interest in disclosure.  <u>See</u> <u>id.</u> at ¶ 32.  The FBI could identify no discernible public interest in the disclosure of this information because the disclosure of third parties' names and identifying information would not shed light on the operations and activities of the FBI.  <u>See</u> <u>id.</u>  Accordingly, the FBI determined that the disclosure of  this information would constitute a clearly unwarranted invasion of personal privacy.  Thus, the FBI properly

withheld the names of these third parties pursuant to Exemption (b)(6)-2 on the following pages: DeMartino 1, 5, 9, 14, 18, 20, 22-24, 45-46, 48-49, 53, 55-61, 63-66, 69, 71-75, 77-80, 82, 84, 87, 96-99, 101-102, 104, 106-108, 116-124, 126, 131-132, 135, 137, 139, 141, 143, 146-147, 149-152, 155, 157-161, 163-164, 166-167, 169, 171, 173-174, 176, 186-189, 193, 195-196, 198, 203-204, 206-220, and 257-263.  See id.

3.  Names and/or Identifying Information of State, Local, and Non-FBI Federal Law Enforcement Personnel

Exemption (b)(6)-3 has been asserted in conjunction with (b)(7)(C)-3 to withhold the names and identifying information, specifically work locations of state, local, and non-FBI federal law enforcement personnel who assisted in the investigation of plaintiff.  See 4th Hardy Decl. at ¶ 33.  Disclosure of this identifying information could subject these law enforcement officials to unauthorized inquiries and harassment which would constitute a clearly unwarranted invasion of their personal privacy.  See id.  The rational for protecting non-FBI law enforcement officials is the same as that for FBI employees.  See 4th Hardy Decl. at ¶¶ 30, 33.  In balancing the legitimate privacy interests against any public interest in disclosure, the FBI could discern no public interest in the disclosure of this information because this type of information would not shed light on the operations and activities of the federal government.  See id. at ¶ 30.  Accordingly, the FBI properly withheld this information pursuant to Exemption (b)(6)-3 on the following pages:  DeMartino 7, 46, 49-50, 52, 86, 108, and 204.  See id.

4.  Names of Third Parties Merely Mentioned

Exemption (b)(6)-4 has been asserted in conjunction with (b)(7)(C)-4 to withhold

the names of third parties merely mentioned in documents concerning the criminal investigation of plaintiff. See 4th Hardy Decl. at ¶ 34. The FBI obtained information concerning third parties who came into contact with plaintiff during the course of his activities. See id. These individuals were not of investigative interest to the FBI; and, they maintain legitimate privacy interests in not having this identifying information disclosed. See id. If the FBI disclosed their names, the disclosure would reveal that these third parties were connected with the FBI's investigation of plaintiff in some way. See id. Disclosure of these third parties' names in connection with the FBI's investigation of plaintiff's activities carries an extremely negative connotation. Disclosure of their identities could subject these individuals to possible harassment or criticism and focus derogatory inferences and suspicion on them. See id.

Accordingly, the FBI determined that these third parties maintain a substantial privacy interest in not having information about them disclosed. After identifying the substantial privacy interests these individuals maintain, the FBI balanced their right to privacy against the public interest in disclosure. See id. The FBI has determined that there is no public interest. Thus, the privacy interests of these individuals outweighs no discernible public interest in disclosure, and the release of this information would constitute a clearly unwarranted invasion of their personal privacy. See id. Exemption (b)(6)-4 in conjunction with (b)(7)(C)-4 is invoked on the following pages: DeMartino 49, 105-106, 160, and 216. See id.

5. Names and/or Identifying Information of Individuals Who Provided Information to State, Local, Non-FBI, and FBI Law Enforcement Personnel

Exemption (b)(6)-5 has been asserted in conjunction with Exemption (b)(7)(C)-5 to protect the names and identifying information of third parties who provided information to state,

local, non-FBI, and FBI federal law enforcement personnel.  See 4th Hardy Decl. at ¶ 35.

Disclosure of the identities of these third parties could have a detrimental effect on the current

and future cooperation of other individuals willing to provide information inasmuch as they

would have little or no faith in the FBI's ability to maintain their information in confidence.  See

id.  The FBI has found that information provided by individuals during an interview is one of the

most productive investigative tools used by law enforcement agencies.  See id.

The largest roadblock in successfully obtaining the desired information through an

interview is fear by the interviewee that his/her identity will possibly be exposed and

consequently the interviewee may be harassed, intimidated, or threatened with legal and/or

economic reprisal, or possible physical harm.  See id.  In order to surmount these obstacles,

persons interviewed must be assured that information received from them will be held in the

strictest confidence.  See id.  The continued access by the FBI to persons willing to honestly

relate pertinent facts bearing upon a particular investigation outweighs any benefit plaintiff might

derive from being provided the identities of those who cooperated with state, local, non-FBI, and

FBI law enforcement officers.  See id.

Disclosure of the identities of third parties who furnished information to state, local, non-

FBI, and FBI law enforcement officers in connection with this investigation could likewise

embarrass those individuals.  See id. at ¶ 36.  Thus, the FBI has determined that the third party

interviewees maintain a substantial privacy interest in not having their identities disclosed.  See

id.  After identifying the substantial privacy interests of the third parties interviewed during the

course of the investigation, the FBI balanced the privacy interest of these individuals against any

public interest in disclosure.  See id.  The FBI could not identify any discernible public interest in

disclosure, and therefore, the privacy interest of these individuals outweighs no discernable

public interest in disclosure.  See id.  Consequently, the FBI has properly withheld this

information pursuant to Exemption (b)(6)-5 on the following pages:  DeMartino 1-4, 6, 8, 14-18,

21, 50-52, 55, 63, 77, 126-134, 139-140, and 154.  See id.

### E.    Exemption (b)(7)(C)

The FOIA exempts from the requirement of disclosure

> (7)  records or information compiled for law enforcement purposes,
> . . . to the extent that the production of such law enforcement
> records or information . . . (C) could reasonably be expected to
> constitute an unwarranted invasion of personal privacy. . . .

5 U.S.C. § (b)(7)(C).  This exemption protects the identities of suspects and other persons of

investigatory interest who are identified in agency records in connection with law enforcement

investigations.  Reporters Comm. for Freedom of the Press v. U.S. Dept of Justice, 816 F.2d 730,

780 (D.C. Cir. 1987), modified on other grounds, 831 F.2d 1124 (D.C. Cir. 1987), rev'd on other

grounds, 489 U.S. 749 (1989); Computer Prof'ls for Social Responsibility v. U.S. Secret Serv.,

72 F.3d 897, 904 (D.C. Cir. 1996).  Indeed, the mere mention of identities of witnesses or other

persons in law enforcement files in such a way as to associate them with criminal activity is

subject to protection under Exemption 7(C).  Reporters Comm. for Freedom of the Press, 489

U.S. at 780; Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-96 (D.C. Cir.

1995); SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1206 (D.C. Cir. 1991).

Once a privacy interest has been established, it must be balanced against the public

interest, if any, that would be served by disclosure.  Albuquerque Publ'g Co. v. Dep't of Justice,

726 F. Supp. 851, 855 (D.D.C. 1989).  The public interest in disclosure is limited to the FOIA's

27

"core purpose" of shed[ing] light on an agency's performance of its statutory duties." Reporters Comm. for Freedom of the Press v. U.S. Dept of Justice, 489 U.S. 749, 773 (1989). This standard is not easily satisfied when law enforcement information pertaining to individuals is sought, for there "is no reasonably conceivable way in which the release of one individual's name . . . would allow citizens to know 'what their government is up to.'" Fitzgibbon v. CIA, 911 F.2d 755, 768 (D.C. Cir. 1990). See also Albuquerque Publ'g Co., 726 F. Supp. at 855-56 (no public interest in disclosure of sensitive information DEA obtained about individuals and their activities, where such material would not shed light on DEA's conduct with respect to the investigation). Furthermore, in order to overcome legitimate privacy interests, the requester must not only demonstrate the existence of the public interest, but also that the public interest is both significant and compelling. Senate of Puerto Rico v. Dep't of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987); Stone v. FBI, 727 F. Supp. 662, 667-69 (D.D.C. 1990).

The FBI properly evaluated responsive information in light of Exemption (b)(7)(C) and withheld protected information. See 4th Hardy Decl. at ¶¶ 37-48. When asserting this exemption, each piece of information was scrutinized to determine the nature and strength of the privacy interest of each individual whose name and/or identifying information appears in the documents at issue. See id. at ¶ 40. The FBI identified the public interest in disclosure of the information to be whether the information in question would inform plaintiff or the general public about the FBI's performance of its mission to enforce federal criminal and national security statutes, and/or how the FBI actually conducts its internal operations and investigations. See id. Every effort has been made to release all segregable information contained in these pages without infringing upon the privacy rights of the individuals mentioned in the responsive records. See id. As explained

28

below, there is no legitimate public interest in the information that has been withheld pursuant to

Exemption (b)(7)(C).

          1.   Names and/or Identifying Information of FBI Special Agents and Support Personnel

Exemption (b)(7)(C)-1 has been asserted in conjunction with Exemption (b)(6)-1

to protect the names and identifying information, including the telephone numbers and Social

Security Numbers, of FBI SAs responsible for conducting investigations of individuals who pose

a threat to the United States in terrorism, espionage, racketeering, and bank robbery cases and

professional support employees responsible for providing assistance to FBI SAs conducting

investigations of these individuals. See id. at ¶ 41. The disclosure of the names and identifying

information could subject these employees to unauthorized inquiries by members of the media

and the general public who seek access to this type of information. See id. Accordingly, the FBI

determined that the FBI SAs and professional support employees referenced in the responsive

records maintain substantial privacy interests in not having their identities disclosed. See id.

      The FBI next examined the records at issue to determine whether there was any public

interest that outweighed the substantial privacy interests of the FBI SAs and professional support

employees. See id. The FBI could not identify any discernible public interest. See id. The

disclosure of the names of FBI SAs and the professional support employees would not

demonstrate how the FBI performs its mission to protect and defend the United States against

terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United

States, and to provide leadership and criminal justice services to federal, state, municipal, and

international agencies and partners. See id. Ultimately, disclosure of the names and identifying

information of FBI SAs and the professional support employees would shed no light on the

performance of the FBI's mission.  Thus, disclosure of the names and identifying information of

these employees could constitute an unwarranted invasion of their personal privacy.  See id.

    In balancing the substantial privacy interest of these individuals against no

legitimate public interest in its disclosure, the FBI has determined that this information regarding

FBI SAs and professional support employees has been properly asserted pursuant to

Exemption (b)( 7)(C)-1, in conjunction with Exemption (b)(6)-1, because the release of this

information would constitute an unwarranted invasion of their personal privacy.  See id. at ¶ 42.

Exemption (b)(7)(C) has been asserted on the following pages:  DeMartino 1, 5, 9, 14, 20-23, 37,

41, 43, 45, 48, 50-53, 61, 75, 84, 85, 87, 96, 99, 106, 114, 116-124, 126-127, 131, 135, 137, 139,

141-143, 150-152, 154-158, 160-161, 166, 170-171, 193, 203, 206, 208, 210-211, 214-218, 227,

240- 241, and 251.  See id.

    2.  Names and/or Identifying Information of Third Parties of
        Investigative Interest

    Exemption (b)(7)(C)-2 has been asserted in conjunction with Exemption (b)(6)-2

to withhold the names and identifying information of third parties who were of investigative

interest to the FBI.  See 4th Hardy Decl. at ¶ 43.  During the course of the FBI's investigation

into plaintiff's criminal activities, information was developed and recorded in the course of

interviews conducted with plaintiff's associates.  See id.  Due to the criminal activities of one or

more of plaintiff's associates, these third-party individuals were of investigative interest to the

FBI.  See id.  Disclosure of the identities of third parties in this context could cause unsolicited

and unnecessary attention to be focused on them and disclosure may embarrass them.  See id.

30

For these reasons, the FBI has determined that these individuals maintain a substantial privacy interest in not having their identities disclosed.

After identifying the substantial privacy interest of the third parties mentioned, the FBI balanced those interests against the public interest in disclosure. See id. at ¶ 44. The FBI could identify no discernible public interest in the disclosure of this information because the disclosure of third parties' names and identifying information will not shed light on the operations and activities of the FBI. See id. Accordingly, the FBI determined that the disclosure of this information would constitute an unwarranted invasion of personal privacy. Thus, the FBI properly withheld the names and identifying information of these third parties pursuant to Exemption (b)(7)(C)-2, in conjunction with Exemption (b)(6)-2, on the following pages: DeMartino 1, 5, 9, 14, 18, 20, 22-24, 29-35, 45-46, 48-49, 53, 55-61, 63-66, 69, 71-75, 77-80, 82, 84, 87, 96-99, 101-102, 104, 106-108, 116-124, 126, 131-132, 135, 137, 139, 141, 143, 146-147, 149-152, 155, 157-161, 163-164, 166-167, 169, 171, 173-174, 176, 186-189, 193, 195-196, 198, 203-204, 206 - 220, and 257 - 263. See id.

            3.  Names and/or Identifying Information of State, Local, and Non-FBI Law
                Enforcement Personnel

Exemption (b)(7)(C)-3 has been asserted in conjunction with (b)(6)-3 to withhold the names and identifying information, specifically work locations, of state, local, and non-FBI law enforcement personnel who worked with the FBI in the investigation of plaintiff. See id. at ¶ 45. Disclosure of this identifying information could subject these law enforcement officials to unauthorized inquiries and harassment which would constitute an unwarranted invasion of their personal privacy. See id. The rational for protecting non-FBI law enforcement officials is the

same as that for FBI employees.  See id. at ¶¶ 30, 45.  In balancing the legitimate privacy

interests against any public interest in disclosure, the FBI could not discern any public interest in

the disclosure of this information because this type of information would not shed light on the

operations and activities of the FBI.  See id. at ¶ 45.  Accordingly, the FBI properly withheld this

information pursuant to Exemption (b)(7)(C)-3 on the following pages:  DeMartino 7, 46, 49-50,

52, 86, 108, and 204.  See id.

### 4.  Names of Third Parties Merely Mentioned

Exemption (b)(7)(C)-4 has been asserted in conjunction with (b)(6)-4 to withhold

the names of third parties merely mentioned in documents concerning the criminal investigation

of plaintiff.  See 4th Hardy Decl. at ¶ 46.  The FBI obtained information concerning third parties

who came into contact with plaintiff during the course of his activities.  See id.  These

individuals were not of investigative interest to the FBI.  These third parties maintain legitimate

privacy interests in not having this information disclosed.  See id.  If the FBI disclosed their

names, the disclosure could reveal that these third parties were connected with the FBI's

investigation of plaintiff in some way.  See id.  Disclosure of these third parties' identifies in

connection with the FBI's investigation of plaintiff's activities carries an extremely negative

connotation.  See id.  Disclosure of their identities could subject these individuals to possible

harassment or criticism and focus derogatory inferences and suspicion on them.  Accordingly, the

FBI determined that these third parties maintained a substantial privacy interest in not having

information about them disclosed.  See id.

After identifying the substantial privacy interests these individuals maintain, the FBI

balanced their right to privacy against the public interest in disclosure and determined that there

is no public interest.  See id.  Thus, the privacy interests of these individuals outweighs no

discernible public interest in disclosure, and therefore, disclosure of this information could

constitute an unwarranted invasion of their personal privacy.  Exemption (b)(7)(C)-4 in

conjunction with (b)(6)-4 is invoked on the following pages:  DeMartino 49, 105-106, 160 and

216.  See id.

> 5.  Names and/or Identifying Information of Third Parties Who Provided
>     Information to State, Local, and Non-FBI Law Enforcement Personnel

_____Exemption (b)(7)(C)-5 has been asserted in conjunction with Exemption (b)(6)-5 to

protect the names and identifying information of third parties who provided information to state,

local and non-FBI, and FBI federal law enforcement personnel.  See 4th Hardy Decl. at ¶ 47.

Disclosure of the identities of these third parties could have a detrimental effect on the current

and future cooperation of other individuals willing to provide information inasmuch as they

would have little or no faith in the FBI's ability to maintain their information in confidence.  See

id.  The FBI has found that information provided by individuals during an interview is one of the

most productive investigative tools used by law enforcement agencies.  See id.  The largest

roadblock to successfully obtaining the desired information through an interview is fear by the

interviewee that his/her identity will possibly be exposed and consequently the interviewee may

be harassed, intimidated, or threatened with legal and/or economic reprisal, or possible physical

harm.  See id.  In order to surmount these obstacles, persons interviewed must be assured that

information received from them will be held in the strictest confidence.  See id.  The continued

access by the FBI to persons willing to honestly relate pertinent facts bearing upon a particular

investigation outweighs any public benefit that could be derived from being furnished the names

of those who cooperated with State, local, and non-FBI, and FBI law enforcement officers.  See id.

Disclosure of the identities of third parties who furnished information to State, local, Non-FBI, and FBI law enforcement officers in connection with this investigation could likewise embarrass those individuals.  See id. at ¶ 48.  Thus, the FBI has determined that the third party interviewees maintain a substantial privacy interest in not having their identities disclosed.  See id.  After identifying the substantial privacy interests of the third parties interviewed during the course of the investigation, the FBI balanced the privacy interest of these individuals against any public interest in disclosure.  See id.  The FBI could not identify any discernible public interest, and therefore, the privacy interest of these individuals outweighs no discernable public interest in disclosure.  Consequently, the FBI has properly withheld this information pursuant to Exemption (b)(7)(C)-5 in conjunction with (b)(6)-5 on the following pages:  DeMartino 1-4, 6, 8, 14-18, 21, 50-52, 55, 63, 77, 126-134, 139-140, and 154.  See id.

### F.    Exemption (b)(7)(D)

Exemption 7(D) of the FOIA protects

> records or information compiled for law enforcement purposes
> [which] could reasonably be expected to disclose the identity of a
> confidential source -- including a state, local, or foreign agency or
> authority or any private institution which furnished information on
> a confidential basis -- and, in the case of a record or information
> compiled by a criminal law enforcement authority in the course of
> a criminal investigation, or by an agency conducting a lawful
> national security intelligence investigation, information furnished
> by a confidential source.

5 U.S.C. § 552 (b)(7)(D).  Its purpose "is to keep open the Government's channels of confidential information."  Birch v. United States Postal Serv., 803 F.2d 1206, 1212 (D.C. Cir. 1986).

34

Successful law enforcement investigations depend on information provided by individuals who may be exposed to relentless harassment and possible harm if their identities are revealed. Gula v. Meese, 699 F. Supp. 956, 960 (D.D.C. 1988). Accordingly, Exemption 7(D) not only protects obviously identifying information, such as an informant's name and address, but also all information which would reveal the source's identity. See Stone v. Defense Investigative Serv., 816 F. Supp. 782, 788 (D.D.C. 1993) (protecting information that "was 'so singular that to release it would likely identify the individual, particularly to a knowledgeable party'"). Additionally, in order to prevent indirect source identification, even the name of a third party who is not a confidential source, but who acted as an intermediary for the source in his/her communications with the agency, can be withheld. Birch, 803 F.2d at 1212.

Exemption 7(D)-1 has been asserted to protect the names and information of third parties who were interviewed during the course of FBIHQ's investigation of criminal activities under an express grant of confidentiality. See 4th Hardy Decl. at ¶ 51. In this case, individuals specifically requested that their identities not be disclosed because they feared reprisal. See id. Prior to conducting the interviews, the FBI expressly promised the third party interviewees that their identities and the information they provided would not be disclosed. See id. This is evidenced by the fact that when the names of individuals are referenced in the file, the words "protect identity" or "protect identity by request" are also referenced. See id. The words "protect identity" or "protect identity by request" are positive indicia which supports an express assurance of confidentiality. See id.

In this instance, there is particular concern about releasing any identifying information about these informants. The informants are suspected of membership or alliances with known La

Cosa Nostra ("LCN"), which could cause extreme danger to the lives and physical safety of the informants should their names or other identifying information be released.  See id. at ¶ 52.  It is likely that the informants mentioned in these records either have been or one day will be brought back into an LCN association.  See id. at ¶ 53.  If their identities were to become public knowledge, they could be at risk of physical injury or death.  See id.  Their very association with the United States Government would lead other LCN member to believe that the individual had divulged information to the Government.  See id.  The disclosure of their identities or identifying information would doubtless expose them to extreme danger.  Additionally, the identification of informants may provide the LCN with a guide book to as to the criteria used in determining who is sent back to an LCN organization and who is not, as well as who is prosecuted and who is not. See id.

For the reasons described above, the identities of these confidential sources and any specific information provided by them which would identify them has been withheld from disclosure pursuant to Exemption (b)(7)(D) on the following pages: DeMartino 1-4, 6-9, 14-18, 21, 50-52, 55, 63, 71, 77, 126-134, 139-140,154, and 260.  See id. at ¶ 54.

### G.    Exemption (b)(7)(E)

Exemption 7(E) of the FOIA provides protection for all information compiled for law enforcement purposes when release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

36

"[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope." Mittleman v. Office of Personnel Mgmt, 76 F.3d 1240, 1243 (D.C. Cir. 1996), cert. denied, 519 U.S. 1123 (1997) (citing Pratt v. Webster, 673 F.2d 408, 420 n.32 (D.C. Cir. 1982)). When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." Keys v. U.S. Dept. of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987) (citing Pratt v. Webster, 673 F.2d 408, 418 (D.C. Cir. 1982)). A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least 'a colorable claim' of its rationality." Keys, 830 F.2d at 340 (quoting Pratt, 673 F.2d at 421).

The first clause of Exemption 7(E) affords "categorical" protection for "techniques and procedures" used in law enforcement investigations or prosecutions. Smith v. Bureau of Alcohol, Tobacco and Firearms, 977 F.Supp. 496, 501 (D.D.C. 1997) (citing Fisher v. United States Dep't of Justice, 772 F. Supp. 7, 12 n. 9 (D.D.C. 1991), aff'd, 968 F.2d 92 (D.C. Cir. 1992)). While Exemption 7(E)'s protection is generally limited to techniques or procedures that are not well known to the public, even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness. See, e.g., Coleman v. FBI, 13 F.Supp. 2d. 75, 83 (D.D.C. 1998) (applying 7(E) to behavioral science analysis and details of polygraph examination); Perrone v. FBI, 908 F.Supp. 24, 28 (D.D.C. 1995) (applying 7(E) to type of polygraph test, type of machine used, polygraph questions and sequence). In justifying the application of Exemption 7(E) the agency may describe the general nature of the technique while withholding the full details. See, e.g. Bowen v. FDA, 925 F.2d 1225, 1228 (9th Cir. 1991).

37

The agency is not, however, required to describe secret law enforcement techniques, even in general terms, if the description would disclose the very information sought to be withheld. <u>Coleman</u>, 13 F. Supp. 2d at 83; <u>Smith</u>, 977 F.Supp. at 501.

Exemption 7(E)'s second clause separately protects "guidelines for law enforcement investigations or prosecutions if [their] disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Accordingly, this clause of the Exemption protects any "law enforcement guideline" that pertains to the prosecution or investigative stage of a law enforcement matter whenever its disclosure "could reasonably be expected to risk circumvention of the law." <u>See, e.g.</u>, <u>PHE, Inc. v. United States Dep't of Justice</u>, 983 F.2d 248, 251 (D.C. Cir. 1993) ("release of FBI guidelines as to what sources of information are available to its agents might encourage violators to tamper with those sources of information and thus inhibit investigative efforts"); <u>Jimenez v. FBI</u>, 938 F.Supp. 21, 30 (D.D.C. 1996) (applying 7(E) to gang-validation criteria used by Bureau of Prisons to determine whether individual is gang member).

Using the accepted criteria for evaluating responsive information under Exemption (b)(7)(E), the FBI properly withheld responsive information from its production to plaintiff. <u>See</u> 4th Hardy Decl. ¶¶ 55-58.

1. <u>Effectiveness Ratings of Investigative Techniques</u>

Form FD-515 is a form used by FBI investigative SAs to report investigative accomplishments. <u>See</u> <u>id.</u> at ¶ 57. This form is submitted at various stages of an investigation to report statistical accomplishments such as an arrest, the recovery of stolen property, and so forth. <u>See</u> <u>id.</u> At the upper right hand side of this form is a block captioned "Investigative Assistance

and Techniques Used." This block lists investigative techniques, some of which were used by the investigative personnel during the investigation of plaintiff and others. See id. Opposite each investigative technique is a rating column that records a numerical rating from 1 to 4 to rate each technique used by investigative personnel during the course of the investigation. See id. The numerical rating evaluates the effectiveness of each technique used in bringing the investigation to a successful conclusion. See id. The entire rating column has been deleted to protect from release the various techniques used in the investigation of plaintiff and others in the records responsive to plaintiff's request.

If the rating columns were released along with the ratings of each technique used, plaintiff and others involved in criminal violations such as this could change their activities and modus operandi in order to avoid detection and/or surveillance in the future. See id. Therefore, protection of these rating columns is essential to prevent future circumvention of the law by criminals. See id. The FBI will use the same or similar techniques to bring similar future investigations to a successful conclusion. Thus the FBI has properly withheld this information, in conjunction with Exemption (b)(2)-3, pursuant to FOIA Exemption (b)(7)(E) on the following pages: DeMartino 208 and 210-211. See id.

    2. Bank Security Procedures

Exemption (b)(7)(E)-2 has been asserted to protect whether or not specific security procedures and techniques were used by Chase Manhattan Bank to prevent bank robberies. See id. at ¶ 58. If the FBI were to disclose the specific techniques used by the financial institutions it could reduce or even nullify their effectiveness. See id. Therefore, in order to protect financial

39

institutions from robberies, Exemption (b)(7)(E)-2 has been cited on the following page: DeMartino 71 and 257-263.  See id.

### H.    Exemption (b)(7)(F)

Exemption 7(F) of the FOIA protects law enforcement information that, if produced, "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F); Maroscia v. Levi, 569 F.2d 1000, 1002 (7th Cir. 1977) (exemption (b)(7)(F) provides protection to information the release of which could endanger law enforcement officers).

Exemption (b)(7)(F) has been asserted to protect information the release of which could reasonably be expected to endanger the life and/or physical safety of individuals who provided information concerning criminal activities of plaintiff and plaintiff's associates.  See 4th Hardy Decl. at ¶ 60.  The disclosure of these individuals' names and detailed information which they provided to the FBI would readily reveal the identities of these sources.  See id.  In some instances, the information provided is sufficiently singular in nature for an individual familiar with the criminal investigations to determine the identities of the individuals who provided the information.  See id.  In light of the detailed nature of the information these sources have provided to the FBI and the type of activity that plaintiff and his associates were involved in, including bank robbery and RICO violations, it is reasonable to expect that release of their identities would place them at great risk.  See id.  For these reasons, the FBI has asserted Exemption (b)(7)(F), in conjunction with (b)(6)(5), (b)(7)(C)-5 and (b)(7)(D), on the following pages:  DeMartino 2-4, 6-8, 14-18, 21, 50-52, 55, 63, 77, 126-134, 139-140, and 154.  See id.

40

## I.     <u>Segregability</u>

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue <u>sua sponte</u>." <u>Trans-Pacific Policing Agreement v. United States Customs Service</u>, 177 F.3d 1022, 1028 (D.C. Cir. 1999).  The FOIA requires that, if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions."  5 U.S.C. § 552(b); <u>Mead Data Cent., Inc. v. United States Dept. of the Air Force</u>, 566 F.2d 242, 260 (D.C. Cir. 1977).

To demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements." <u>Mead Data</u>, 566 F.2d at 261.  The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed.  <u>Id</u>.  All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated.  <u>Armstrong v. Executive Office of the President</u>, 97 F.3d 575, 578-79 (D.C. Cir. 1996).  Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." <u>Mead Data</u>, 566 F.2d at 261, n.55.

In this matter, all reasonably segregable information has been provided to Plaintiff.  <u>See</u> 4th Hardy Decl. at ¶ 63.

**J.        Referrals Of Documents**

By letter dated November 14, 2006, the FBI forwarded a one page document to BOP which originated with that agency.  See 4th Hardy Decl. at ¶ 61.  This page is identified as DeMartino 226.  See id.  In preparation of this declaration, the FBI consulted with BOP and was advised that this page was released to plaintiff in a letter dated January 23, 2007.  See id. Redactions were made to this page pursuant to FOIA Exemptions 7(C) and 7(F).  See id.  BOP has informed FBI that these the redacted material consisted of names of individuals, other than the plaintiff, who were previously convicted of bank robbery charges, and were being released from prison.  See id. and Exhibit B attached thereto.[16]

By letter dated January 16, 2007, the U.S. Parole Commission forwarded a referral package to the FBI consisting of two (2) pages of Parole Commission documents containing FBI-originated  information to be processed for direct response to plaintiff.  See id.  at ¶ 62.[17]  These two (2) pages were released to plaintiff in a letter dated February 21, 2007, with redactions taken pursuant to Privacy Act Exemption (j)(2) and FOIA Exemptions (b)(6) and (b)(7)(C).  See  id. These pages are identified as DeMartino 255-256.  See id.

## CONCLUSION

Defendant FBI has demonstrated that it responded properly to Plaintiff's FOIA request, releasing to him all records and portions thereof not exempted from disclosure.  Accordingly, Defendant FBI respectfully request that its motion for summary judgment in part be granted.

---

[16]  The undersigned will address the exemptions asserted by the BOP in her January filing.

[17]  The U.S. Parole Commission is not a party to this action.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney




_____/s/_____
KAREN L. MELNIK, D.C. Bar #436452
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC 20530
(202) 307-0338
(202) 514-8780 (facsimile)



## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of December, 2007, I caused the foregoing to be

served on Plaintiff via first class United States Mail:


Vincent DeMartino
Register No. 22044-053
FCI Allenwood
P.O. Box 2000
White Deer, PA.  17887


_____/s/_____
KAREN L. MELNIK
Assistant United States Attorney