UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| VINCENT DEMARTINO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06CV0879 (RJL) |
| ) | |
| F.B.I., et al., ) | |
| ) | |
| Defendants. ) | |

**STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**

Pursuant to Local Rule 7(h), Defendant FBI respectfully submits this statement of material facts as to which it contends there is no genuine dispute.

**I. PROCEDURAL HISTORY OF PLAINTIFF'S FOIA CLAIMS**

    **A. Plaintiff's First FOIA Request To FBI Headquarters**

1.    By letter dated February 20, 2005, Plaintiff submitted a FOIA request to FBIHQ for any records maintained at FBIHQ pertaining to "a shooting on July 16, 2001 at 2:30 p.m. at West 32nd Street and Surf Avenue in Coney Island, New York ... 911 transcripts and or tapes, FBI notes, FBI reports, Sprint reports, 302's, DD-5 reports, police officer on the scene reports, radio transmission reports for the police, FBI, EMT workers, ambulance drivers, reports and statements of witnesses at the scene, interviews with John Florida at the 60th Precinct as well as all information on Vincent DeMartino and the investigation. All photographs of the scene and the area used in this investigation, all names and addresses of suspects and witnesses interviewed at the scene, the origin of the phone

        numbers of the 911 calls made in connection with this shooting. All information from Highway 2 Police regarding the stopping of a green van on the Belt Parkway shortly after the shooting." See Docket #22, Declaration of John M. Hardy ("Hardy Decl.") at ¶ 5 and Exhibit A attached thereto.

2.    By letter dated March 8, 2005, FBIHQ returned the request stating that Plaintiff's letter did not contain sufficient information to conduct an accurate search of the central records system and provided a form requesting certain information required to conduct the search. See Hardy Decl. at ¶ 6. The form was completed by Plaintiff and received by FBIHQ on March 23, 2005. See id. and Exhibit B attached thereto.

3.    An undated "Address Change Notification" was received by FBIHQ. See Hardy Decl. at ¶ 7. This notification advised that as of April 1, 2005, Plaintiff's address would be the U.S. Penitentiary Canaan, 2020 Canaan Road, Unit A-2, Waymart, PA 18742. See id. and Exhibit C attached thereto. By letter dated April 12, 2005, FBIHQ sent a form requesting additional information to conduct the search of the central records system to the Plaintiff at his new address. See Hardy Decl. at ¶ 8 and Exhibit D attached thereto.

4.    By letter dated April 13, 2005, FBIHQ acknowledged receipt of Plaintiff's FOIPA request and assigned it FOIPA Request Number 1018449. See Hardy Decl. at ¶ 9. This letter was refused by the recipient and returned to FBIHQ on April 26, 2005. See id. and Exhibit E attached thereto.

5.    By separate letters dated May 6, 2005, sent to both Plaintiff's old and new addresses, FBIHQ advised that a search of the automated indices to the Central Records System at FBIHQ located no records responsive to his FOIPA request. See Hardy Decl. at ¶ 10.

      The FBI advised Plaintiff of his right to file an administrative appeal to the Department of Justice ("DOJ"), Office of Information and Privacy ("OIP"). See id. Plaintiff was further advised should he desire a check of FBI field office files to write directly to the appropriate field office(s). See id. and Exhibit F attached thereto.

6. By letter dated May 24, 2005 to FBIHQ, Plaintiff stated that he had not received any information to date. Plaintiff also provided his current mailing address. See Hardy Decl. at ¶ 11 and Exhibit G attached thereto. By letter dated June 13, 2005 to FBIHQ, Plaintiff acknowledged receipt of FBIHQ's letter dated May 6, 2005 that stated no records had been located responsive to his request. See Hardy Decl. at ¶ 12. Plaintiff stated that he was enclosing "partial sprit [sic] reports from your office I need the whole conversation." See id. Plaintiff also asked for the addresses of FBI field offices so he could make direct FOIA requests. See id. and Exhibit H attached thereto.

7. By letter dated June 13, 2005, Plaintiff appealed to the OIP the FBI's "no records" response to his FOIPA request. See Hardy Decl. at ¶ 13 and Exhibit I attached thereto. By letter dated June 28, 2005, OIP acknowledged receipt of Plaintiff's administrative appeal and assigned it Appeal Number 05-2118. See id. at ¶ 14 and Exhibit J attached thereto.

8. By letter dated June 29, 2005, FBIHQ acknowledged receipt of Plaintiff's June 13, 2005 FOIPA request and advised him that his request was being reopened and assigned FOIPA Request No. 1018449-001. See Hardy Decl. at ¶ 15 and Exhibit K attached thereto. By letter to FBIHQ dated July 12, 2005, Plaintiff inquired about his FOIA request and enclosed a copy of his original FOIA request letter dated February 20, 2005. See id. at ¶

16. Plaintiff advised FBIHQ to check under "Di" and "De" in the spelling of his last name DeMartino and of his current mailing address. See id. and Exhibit L attached thereto.

9. By letter to FBIHQ dated October 3, 2005, plaintiff inquired as to the status of his FOIA request. See Hardy Decl. at ¶ 17. Plaintiff also requested a fee waiver for his request. See id. and Exhibit M attached thereto. By letter addressed to OIP dated October 3, 2005, Plaintiff inquired as to the status of his appeal. See id. at ¶ 18 and Exhibit N attached thereto.

10. By letter dated October 24, 2005, FBIHQ again advised plaintiff that his FOIA request concerning a shooting that occurred on July 16, 2001 in the Coney Island section of Brooklyn, New York does not contain enough descriptive information to permit a search of FBI records. See Hardy Decl. at ¶ 19. FBIHQ requested plaintiff to provide more specific information, such as complete names of individuals, organizations or events, dates and places of birth and the approximate time frame of the information sought, etc. See id. and Exhibit O attached thereto.

### B. Plaintiff's Second Request To FBI Headquarters

11. By undated letter to FBIHQ, plaintiff submitted a FOIA request for all records relating to Vincent A. DeMartino, aka. Chickie. See Hardy Decl. at ¶ 24. Plaintiff's request specifically included "main" files and "see" references; including but not limited to, numbered and lettered subfiles, 1A envelopes, enclosures behind files (EBF's), Bulky Exhibits, control files, and "June files." See id. Plaintiff provided identifying information and his notarized signature dated December 6, 2005. See id. and Exhibit T

attached thereto.

12. By letter dated September 21, 2006, FBIHQ advised plaintiff that 243 pages of records responsive to his request are available for release. See Hardy Decl. at ¶ 25. Plaintiff was advised that pursuant to Title 28, Code of Federal Regulations, Sections 16.11 and 16.49, there is a fee of ten cents per page for duplication. See id. No fees are accessed for the first 100 pages. See id. Plaintiff was advised that upon receipt of his check or money order in the amount of $14.30 made payable to the FBI, the documents would be forwarded to him. See id. Plaintiff was further advised that if payment was not received by the FBI within 45 days from the date of this letter, no documents would be released and his request would be administratively closed. See id. and Exhibit U attached thereto.

13. On or around November 13, 2006, FBIHQ received plaintiff's advance payment of $14.30 for 232 pages of FBI material to be released in response to plaintiff's FOIA requests to FBIHQ and the New York Field Office ("NYFO").[1] See Docket #25, Second Hardy Declaration and Exhibits thereto, ("Second Hardy Decl.") at ¶ 5 and Exhibit A attached thereto.

14. By letter dated November 14, 2006, plaintiff was provided the 243 pages of responsive material pertaining to his FOIA requests to FBIHQ and NYFO. See id. at ¶ 6. The FBI advised that deletions were made pursuant to the FOIA Exemptions (b)(2), (b)(3), (b)(6), (b)(7)(C), (b)(7)(D), (b)(7)(E), and (b)(7)(F), and Privacy Exemption (j)(2). See id.

15. Plaintiff was advised that the information exempted pursuant to FOIA Exemption (b)(3)

---

[1] As stated in the Third Hardy Declaration, dated December 10, 2007, records from the NYFO's files and sub-files will be discussed in a later declaration to be filed in January.

was exempt in accordance with Rule 6(e) of the Federal Rules of Criminal Procedure. See id. and Exhibit B attached thereto. Plaintiff was also advised that documents were located that originated with, or contained information containing other government agency(ies) (("OGA"). See id. This information was referred to the OGA for review and direct response to plaintiff. The FBI advised plaintiff of his right to file an administrative appeal to the Department of Justice, Office of Information and Privacy. See id.

      C.      **Plaintiff's Request to the New York Field Office**

16. By letter dated June 16, 2005, plaintiff submitted a FOIPA request to the FBI's New York Field Office (NYFO) for information pertaining to the shooting on July 16, 2001 in the Coney Island section of Brooklyn, New York. The details of his request were the same as his original February 20, 2005 FOIA request to FBIHQ. See Hardy Decl. at ¶ 20 and Exhibit P attached thereto.

17. By letter dated July 6, 2005, FBIHQ acknowledged receipt of plaintiff's FOIPA request to the NYFO and assigned it FOIPA Request Number 1023930-000. See id. at ¶ 21 and Exhibit Q attached thereto.

18. By letter to the NYFO dated October 3, 2005, plaintiff inquired as to the status of his FOIA request. See id. at ¶ 22 and Exhibit R attached thereto.

19. By letter dated October 20, 2005, FBIHQ advised plaintiff that the material he requested from the NYFO is located in an investigative file which is exempt from disclosure pursuant to Title 5, United States Code, Section 552, Subsection (b)(7)(A). Plaintiff was advised if this file were to be reviewed under FOIPA in the future, additional exemptions may be applied at that time. Plaintiff was advised of his right to file an administrative

appeal for this denial to the DOJ, OIP. See id. at ¶ 23 and Exhibit S attached thereto.

**II.     Searches For Records Responsive To Plaintiff's Requests**

20.    In response to plaintiffs requests, FBIHQ searched the Central Records System ("CRS"). See id. at ¶¶ 6-13. The Central Records System ("CRS") enables the FBI to maintain all information which it has acquired in the course of fulfilling its mandated law enforcement responsibilities. See id. at ¶ 6. The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes. See id. CRS is organized into a numerical sequence of files, called FBI "classifications," which are broken down according to subject matter. See id. The subject matter of a file may correspond to an individual, organization, company, publication, activity, or foreign intelligence matter (or program). See id.

21.    Certain records in the CRS are maintained at FBIHQ, whereas records that are pertinent to specific field offices of the FBI are maintained in those field offices. See id. While the CRS is primarily designed to serve as an investigative tool, the FBI searches the CRS for documents that are potentially responsive to FOIA/Privacy Act requests. See id. The mechanism that the FBI uses to search the CRS is the Automated Case Support System ("ACS"). See id.

22.    On or about October 16, 1995, the ACS system was implemented for all Field Offices, Legal Attaches ("Legats"), and FBIHQ in order to consolidate portions of the CRS that were previously automated. See id. at ¶ 7. ACS can be described as an internal computerized subsystem of the CRS. See id. Because the CRS cannot electronically query the case files for data, such as an individual's name or social security number, the

required information is duplicated and moved to the ACS so that it can be searched. See id. More than 105 million records from the CRS were converted from automated systems previously utilized by the FBI. See id. Automation did not change the CRS; instead, automation has facilitated more economic and expeditious access to records maintained in the CRS. See id.

23. The retrieval of data from the CRS is made possible through the ACS using the General Indices, which are arranged in alphabetical order.[2] See id. at ¶ 8. The entries in the General Indices fall into two categories:

> (a) A "main" entry – A "main" entry, or "main" file, carries the name corresponding with a subject of a file contained in the CRS.
>
> (b) A "reference" entry – "Reference" entries, sometimes called "cross-references," are generally only a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another "main" file on a different subject matter.

See id.

24. Searches made in the General Indices to locate records concerning a particular subject, such as Vincent Anthony DeMartino, are made by searching the subject requested in the index. See id. at ¶ 9.

25. The ACS consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases:

> (a) Investigative Case Management ("ICM") – ICM provides the ability to

open, assign, and close investigative and administrative cases as well as set,

---

[2] The General Indices, which became fully automated on September 24, 1987, also include index cards which allow a manual search for records prior to that date.

assign, and track leads. The Office of Origin ("OO"), which sets leads for itself and other field offices, as needed, opens a case. The field offices that receive leads from the OO are referred to as Lead Offices ("LOs"). When a case is opened, it is assigned a Universal Case File Number ("UCFN"), which is used by FBIHQ, as well as all FBI field offices and Legats that are conducting or assisting in the investigation. Using file number "91-HQ-118829," which is one of the files responsive in this case, as an example, an explanation of the UCFN is as follows: "91" indicates the classification for the specific type of investigation, which in this case is Bank Robbery, "HQ" is the abbreviated form used for the OO of the investigation, which in this case is FBIHQ; and "118829" denotes the individual case file number for the particular investigation.

(b) Electronic Case File ("ECF") – ECF serves as the central electronic repository for the FBI's official text-based documents. ECF supports the universal serial concept in that only the creator of a document serializes it into a file. This provides a single-source entry of serials into the computerized ECF system. All original serials are maintained in the OO case file.

(c) Universal Index ("UNI") – UNI continues the universal concepts of ACS by providing a complete subject/case index to all investigative and administrative cases. Only the OO is required to index; however, the LOs may index additional information as needed. UNI, an index of approximately 100.0 million records, functions to index names to cases, and to search names and cases for use in FBI investigations. Names of individuals or organizations are recorded

with identifying applicable information such as date or place of birth, race, sex, locality, Social Security number, address, and/or date of event. See id. at ¶ 10.

26. The decision to index names other than subjects, suspects, and victims is a discretionary decision made by the FBI Special Agent ("SA") – and on occasion, professional support employees – assigned to work on the investigation, the Supervisory SA ("SSA") in the field office conducting the investigation, and the SSA at FBIHQ. See id. at ¶ 11. The FBI does not index every name in its files; rather, it indexes only that information considered to be pertinent, relevant, or essential for future retrieval. See id.

27. Without a "key" (index) to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved. See id. The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI, which is to investigate violations of federal criminal and national security statutes. See id. Therefore, the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual, i.e., Vincent Anthony DeMartino. See id.

28. In response to plaintiff's June 16, 2005 request to the NYFO for information on the June 16, 2001 shooting in the Coney Island section of Brooklyn, New York, the FBI located one main file, 281A-NY-281501, which, with the exception of public source material, was withheld in full pursuant to FOIA Exemption (b)(7)(A). See 4th Hardy Decl. at ¶ 12. Twenty-eight pages of public source material from this NYFO main file was reviewed and on November 14, 2006; 25 pages were released in full and three (3) pages were

released with redactions taken pursuant to Privacy Act Exemption (j)(2) and FOIA Exemptions (b)(6) and (b)(7)(C).  See id.

29. As of this date, the FBI has processed a total of 263 pages responsive to plaintiff's requests, and has released to plaintiff a total of 91 pages in full, 154 pages in part, 7 pages have been withheld in their entireties, 10 pages were not released as they are duplicates of other pages that were released, and 1 page has been referred to the Bureau of Prisons ("BOP").[3]  See 4th Hardy Decl. at ¶¶ 4, 61.

Respectfully submitted,

/s/
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


/s/
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


/s/
KAREN L. MELNIK DC BAR # 436452
Assistant United States Attorney
555 4TH Street, N.W. Rm. E-4112
Washington, D.C. 20530
(202) 307-0338

---

[3] The total release of 263 pages, includes the FBIHQ files, see 4th Hardy Decl. at ¶ 13, the public source documents from the NYFO main file, see id. at ¶ 12, and the two pages referred to the FBI from the U.S. Parole Commission, see id. at ¶ 62.