IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VINCENT DEMARTINO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-cv-0879 (RJL) |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

## FOURTH DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)     I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation, Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)     In my current capacity as Section Chief of RIDS, I supervise approximately 211 employees who staff a total of ten (10) FBIHQ units and a field operational service center whose collective mission is to effectively plan, develop, direct, and manage responses to requests for

access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order

12958, as amended; Presidential, Attorney General, and FBI policies and procedures; judicial

decisions; and Presidential and Congressional directives. The statements contained in this

declaration are based upon my personal knowledge, upon information provided to me in my

official capacity, and upon conclusions and determinations reached and made in accordance

therewith.

(3) Due to the nature of my official duties, I am familiar with the procedures followed

by the FBI in responding to requests for information from its files pursuant to the provisions of

the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am

aware of the treatment which has been afforded the FOIA/Privacy Act requests of plaintiff,

Vincent DeMartino, for access to records on himself at FBIHQ and the New York Field Office

("NYFO")[1] concerning a shooting that occurred on or about July 16, 2001, in the Coney Island

section of Brooklyn, New York.

(4) As of this date, the FBI has processed a total of 263 pages responsive to plaintiff's

requests, and has released to plaintiff a total of 91 pages in full, 154 pages in part, 7 pages have

been withheld in their entireties, 10 pages were not released as they are duplicates of other pages

that were released, and 1 page has been referred to the Bureau of Prisons ("BOP"), see infra

---

[1] This Vaughn declaration only includes the public source documents from the NYFO
main file. As stated in the Third Hardy Declaration dated December 14, 2007, the remaining
non-public source documents from the NYFO main and subfiles will be discussed in a later
declaration.

Paragraph 61 for direct response to plaintiff.[2] The purpose of this declaration is to provide the Court and plaintiff with an explanation of the procedures used to search for responsive records and justifications for the withholding of information in accordance with <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir.1973), pursuant to Privacy Act Exemption (j)(2), 5 U.S.C. § 552a(j)(2), and FOIA Exemptions (b)(2), (b)(3), (b)(6), (b)(7)(C), (b)(7)(D), (b)(7)(E), and (b)(7)(F), 5 U.S.C. §§ 552 (b)(2), (b)(3), (b)(6), (b)(7)(C), (b)(7)(D), (b)(7)(E), and (b)(7)(F).

<u>**CORRESPONDENCE FOR PLAINTIFF'S FOIA/PRIVACY ACT REQUESTS**</u>

(5)     The correspondence concerning plaintiff's requests are described in the Hardy Declaration dated October 13, 2006, at paragraphs 5-25 and the Second Hardy Declaration dated December 6, 2006, at paragraphs 5-6.

<u>**EXPLANATION OF THE FBI'S CENTRAL RECORDS SYSTEM**</u>

(6)     The Central Records System ("CRS") enables the FBI to maintain all information which it has acquired in the course of fulfilling its mandated law enforcement responsibilities. The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes. CRS is organized into a numerical sequence of files, called FBI "classifications," which are broken down according to subject matter. The subject matter of a file may correspond to an individual, organization, company, publication, activity, or foreign intelligence matter (or program). Certain records in the CRS are maintained at FBIHQ, whereas records that are pertinent to specific field offices of the FBI are maintained in

---

[2] The total release of 263 pages, includes the FBIHQ files, <u>see</u> <u>infra</u> Paragraph 13, the public source documents from the NYFO main file, <u>see</u> <u>infra</u> Paragraph 12, and the two pages referred to the FBI from the U.S. Parole Commission, <u>see</u> <u>infra</u> Paragraph 62.

those field offices. While the CRS is primarily designed to serve as an investigative tool, the FBI searches the CRS for documents that are potentially responsive to FOIA/Privacy Act requests. The mechanism that the FBI uses to search the CRS is the Automated Case Support System ("ACS").

(7)    On or about October 16, 1995, the ACS system was implemented for all Field Offices, Legal Attaches ("Legats"), and FBIHQ in order to consolidate portions of the CRS that were previously automated. ACS can be described as an internal computerized subsystem of the CRS. Because the CRS cannot electronically query the case files for data, such as an individual's name or social security number, the required information is duplicated and moved to the ACS so that it can be searched. More than 105 million records from the CRS were converted from automated systems previously utilized by the FBI. Automation did not change the CRS; instead, automation has facilitated more economic and expeditious access to records maintained in the CRS.

(8)    The retrieval of data from the CRS is made possible through the ACS using the General Indices, which are arranged in alphabetical order.[3] The entries in the General Indices fall into two categories:

> (a) A "main" entry – A "main" entry, or "main" file, carries the name corresponding with a subject of a file contained in the CRS.
>
> (b) A "reference" entry – "Reference" entries, sometimes called "cross-references," are generally only a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another "main" file on a different subject matter.

---

[3] The General Indices, which became fully automated on September 24, 1987, also include index cards which allow a manual search for records prior to that date.

(9)    Searches made in the General Indices to locate records concerning a particular subject, such as Vincent Anthony DeMartino, are made by searching the subject requested in the index.

(10)    The ACS consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases:

(a) Investigative Case Management ("ICM") – ICM provides the ability to open, assign, and close investigative and administrative cases as well as set, assign, and track leads. The Office of Origin ("OO"), which sets leads for itself and other field offices, as needed, opens a case. The field offices that receive leads from the OO are referred to as Lead Offices ("LOs"). When a case is opened, it is assigned a Universal Case File Number ("UCFN"), which is used by FBIHQ, as well as all FBI field offices and Legats that are conducting or assisting in the investigation. Using file number "91-HQ-118829," which is one of the files responsive in this case, as an example, an explanation of the UCFN is as follows: "91" indicates the classification for the specific type of investigation, which in this case is Bank Robbery, "HQ" is the abbreviated form used for the OO of the investigation, which in this case is FBIHQ; and "118829" denotes the individual case file number for the particular investigation.

(b) Electronic Case File ("ECF") – ECF serves as the central electronic repository for the FBI's official text-based documents. ECF supports the universal serial concept in that only the creator of a document serializes it into a file. This provides a single-source entry of serials into the computerized ECF system. All original serials are maintained in the OO case file.

(c) Universal Index ("UNI") – UNI continues the universal concepts of ACS by

-5-

providing a complete subject/case index to all investigative and administrative cases. Only the OO is required to index; however, the LOs may index additional information as needed. UNI, an index of approximately 100.0 million records, functions to index names to cases, and to search names and cases for use in FBI investigations. Names of individuals or organizations are recorded with identifying applicable information such as date or place of birth, race, sex, locality, Social Security number, address, and/or date of event.

(11)    The decision to index names other than subjects, suspects, and victims is a discretionary decision made by the FBI Special Agent ("SA") – and on occasion, professional support employees – assigned to work on the investigation, the Supervisory SA ("SSA") in the field office conducting the investigation, and the SSA at FBIHQ. The FBI does not index every name in its files; rather, it indexes only that information considered to be pertinent, relevant, or essential for future retrieval. Without a "key" (index) to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved. The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI, which is to investigate violations of federal criminal and national security statutes. Therefore, the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual, i.e., Vincent Anthony DeMartino.

### SEARCHES FOR RECORDS RESPONSIVE TO PLAINTIFF'S REQUESTS

(12)    In response to plaintiff's June 16, 2005 request to the NYFO for information on the June 16, 2001 shooting in the Coney Island section of Brooklyn, New York, the FBI located one main file, 281A-NY-281501, which, with the exception of public source material, was

withheld in full pursuant to FOIA Exemption (b)(7)(A).[4]  Twenty-eight pages of public source

material from this NYFO main file was reviewed and on November 14, 2006, 25 pages were

released in full and three (3) pages were released with redactions taken pursuant to Privacy Act

Exemption (j)(2) and FOIA Exemptions (b)(6) and (b)(7)(C).[5]

(13)     In response to plaintiff's undated letter to FBIHQ for records on himself,[6] the FBI

located main files 183-HQ-6685 and 91-HQ-118829, as well as cross-references 91-HQ-112598-

5, 6, and 7; 91-HQ-1419-34-964; and 92A-HQ-1043395-5 and 16x5.[7]  These were processed for

release on November 14, 2006--at the same time as the NYFO public source documents. See

supra Paragraph 12.  The documents from the FBIHQ files comprise 233 pages,[8] of which 1) 10

pages were not released as they were duplicates of other pages released; 2) 66 pages were

released in full; 3) 1 page was referred to the Bureau of Prisons;[9]  4) 149 pages were released in

part pursuant to Privacy Act Exemption (j)(2) and FOIA Exemptions (b)(2), (b)(3), (b)(6),

---

[4] The correspondence concerning plaintiff's requests are described in the Hardy
Declaration dated October 13, 2006, at paragraphs 5-25 and the Second Hardy Declaration dated
December 10, 2006, at paragraphs 5-6.

[5] This release consists of the following pages: DeMartino 227-254.

[6] The FBI also conducted a search pursuant to plaintiff's February 20, 2005 request to
FBIHQ for records related to a shooting that occurred on or about July 16, 2001, in the Coney
Island section of Brooklyn, New York.  This search yielded no responsive records. See Hardy
Declaration dated October 13, 2006, at paragraphs 5-19.

[7] The correspondence concerning plaintiff's requests are described in the Hardy
Declaration dated October 13, 2006, at paragraphs 5-25 and the Second Hardy Declaration dated
December 10, 2006, at paragraphs 5-6.

[8] The FBI has subsequently determined that the page count included in the November 14,
2006 release letter was incorrect and that 233 pages is the correct total page count. See Paragraph
6 of the Second Hardy Declaration, dated December 6, 2006.

[9] See infra Paragraph 61.

(b)(7)(C), (b)(7)(D), (b)(7)(E), and (b)(7)(F); and 5) 7 pages were withheld in full pursuant to

Privacy Act Exemption (j)(2) and FOIA Exemptions (b)(2), (b)(3), (b)(6), (b)(7)(C), (b)(7)(D),

(b)(7)(E), and (b)(7)(F).[10]

 (14) Attached as **Exhibit A** is a copy of the responsive records discussed in this

declaration as they are now being released to plaintiff.

## EXPLANATION OF THE FORMAT USED FOR THE JUSTIFICATION OF DELETED MATERIAL

 (15) All documents were processed to achieve maximum disclosure consistent with the

access provisions of the Privacy Act and the FOIA. Every effort was made to provide plaintiff

with all material in the public domain and with all reasonably segregable portions of releasable

material. To further describe the information withheld could identify the material sought to be

protected. Each page is consecutively numbered "DeMartino 1" through "DeMartino 263" at the

bottom right-hand corner of the page.

 (16) Copies of the documents contain, on their face, coded categories of exemptions

which detail the nature of the information withheld pursuant to the provisions of the FOIA. No

reasonably segregable, nonexempt portions are withheld from plaintiff. The coded categories are

provided to aid the Court and plaintiff in their review of the FBI's explanations for the FOIA

exemptions used to withhold the protected material. Accordingly, a review of this information

will reveal that all material withheld is exempt from disclosure pursuant to one or more FOIA

exemptions.

 (17) Each instance of information withheld pursuant to the FOIA on the attached

documents and Deleted Page Information Sheets ("DPIS") is accompanied by a coded

---

[10] This release consists of the following pages: DeMartino 1-226 and 257-263.

designation that corresponds to the categories listed below.  For example, if "(b)(7)(C)-1"

appears on a document, the (b)(7)(C) designation refers to Exemption (b)(7)(C) of the FOIA

concerning "Unwarranted Invasion of Privacy."  The numerical designation, "1" following the

"(b)(7)(C)" narrows the main category to the more specific subcategory, "Names and/or

Identifying Information of FBI Special Agents and Support Personnel."  Listed below are the

categories used to explain the FOIA exemptions asserted to withhold this material.

## SUMMARY OF JUSTIFICATION CATEGORIES

| **Category (b)(2)** | **Internal Rules and Practices** |
|---|---|
| (b)(2)-1 | Internal FBI Telephone Numbers (Cited in conjunction with (b)(6)-1 and (b)(7)(C)-1.) |
| (b)(2)-2 | Operational Funds |
| (b)(2)-3 | Effectiveness Ratings of Investigative Techniques (Cited in conjunction with (b)(7)(E)-1.) |
| **Category (b)(3)** | **Information Withheld Pursuant to Statute** |
| (b)(3) | Federal Grand Jury Information |
| **Category (b)(6)** | **Clearly Unwarranted Invasion of Personal Privacy** |
| (b)(6)-1 | Names and/or Identifying Information of FBI Special Agents and Support Personnel (Cited in conjunction with (b)(7)(C)-1 and (b)(2)-1.) |
| (b)(6)-2 | Names and/or Identifying Information of Third Parties of Investigative Interest (Cited in conjunction with (b)(7)(C)-2.) |
| (b)(6)-3 | Names and/or Identifying Information of State, Local, and Non-FBI Federal Law Enforcement Personnel (Cited in conjunction with (b)(7)(C)-3.) |
| (b)(6)-4 | Names of Third Parties Merely Mentioned (Cited in |

| | conjunction with (b)(7)(C)-4.) |
|---|---|
| (b)(6)-5 | Names and/or Identifying Information of Individuals Who Provided Information to State, Local, Non-FBI, and FBI Federal Law Enforcement Personnel (Cited in conjunction with (b)(7)(C)-5.) |

**Category (b)(7)(C)**                    **Unwarranted Invasion of Personal Privacy**

| (b)(7)(C)-1 | Names and/or Identifying Information of FBI Special Agents and Support Personnel (Cited in conjunction with (b)(6)-1 and (b)(2)-1.) |
|---|---|
| (b)(7)(C)-2 | Names and/or Identifying Information of Third Parties of Investigative Interest (Cited in conjunction with (b)(6)-2.) |
| (b)(7)(C)-3 | Names and/or Identifying Information of State, Local, and Non-FBI Federal Law Enforcement Personnel (Cited in conjunction with (b)(6)-3.) |
| (b)(7)(C)-4 | Names of Third Parties Merely Mentioned (Cited in conjunction with (b)(6)-4.) |
| (b)(7)(C)-5 | Names and/or Identifying Information of Individuals Who Provided Information to State, Local, Non-FBI, and FBI Federal Law Enforcement Personnel (Cited in conjunction with (b)(6)-5.) |

**Category (b)(7)(D)**                    **Confidential Source Material**

| (b)(7)(D) | Names and/or Identifying Information Provided by Individuals under an "Express" Assurance of Confidentiality |
|---|---|

**Category (b)(7)(E)**                    **Investigative Technique/Procedures**

| (b)(7)(E)-1 | Effectiveness Ratings of Investigative Techniques (Cited in conjunction with (b)(2)-3.) |
|---|---|
| (b)(7)(E)-2 | Bank Security Procedures |

**Category (b)(7)(F)**                    **Endangerment To Life and Physical Safety**

-10-

(b)(7)(F)                          Names and/or Identifying Information Provided by
                                   Witnesses or Third Parties Who Provided Information
                                   Regarding Criminal Activities (Cited in conjunction with
                                   (b)(6)-5, (b)(7)(C)-5, and (b)(7)(D).)

## JUSTIFICATION FOR REDACTIONS

(18)    The paragraphs that follow explain defendant's rationale for withholding each

particular category of information under the specific exemption categories described above.

## PRIVACY ACT EXEMPTION (j)(2)

(19)    Section (j)(2) of the Privacy Act exempts from mandatory disclosure systems

of records "maintained by an agency or component thereof which performs as its principal

function any activity pertaining to the enforcement of criminal laws, including police efforts to

prevent, control, or reduce crime or to apprehend criminals . . . ."

(20)    Investigatory records located in main file 91-HQ-118829 were compiled as a

result of the FBI's legitimate investigation of plaintiff's involvement in a bank robbery, in

violation of 18 U.S.C. § 2113(a) and 18 U.S.C. § 2. Pertinent cross-references located in files

91-HQ-C1419 and 91-HQ-112598 were also collected as a result of bank robbery investigations.

Main file 183-HQ-6685 was compiled during a criminal investigation of plaintiff and his

suspected involvement in a Racketeer Influence and Corrupt Organization ("RICO"), in violation

of 18 U.S.C. §§ 1961-9163, commonly referred to as the RICO Statute. Lastly, pertinent cross-

references from 92A-HQ-1043385 were compiled as part of plaintiff's involvement in a violation

of the RICO statute, 18 U.S.C. 1961(1). Accordingly, these files are exempt from disclosure

pursuant to 5 U.S.C. § 552a(j)(2) of the Privacy Act, in conjunction with 28 C.F.R. § 16.96.

Although access to the records at issue was denied under the Privacy Act, the documents were

processed under the access provisions of the FOIA to achieve maximum disclosure.

-11-

## FOIA EXEMPTION (b)(2)
## INTERNAL AGENCY RULES AND PRACTICES

(21)    5 U.S.C. § 552(b)(2) exempts from disclosure information "related solely to the internal personnel rules and practices of an agency."

(22)    This exemption protects routine internal administrative matters and functions of the FBI which have no effect on the public at large.  Disclosure of this information could impede the effectiveness of the FBI's internal law enforcement procedures.

### (b)(2)-1        Internal FBI Telephone Numbers

(23)    Exemption (b)(2)-1 has been asserted to protect the business telephone numbers of FBI SAs and support personnel. The telephone numbers of FBI employees clearly relate to the internal practices of the FBI in that all these numbers are utilized by FBI personnel during the performance of their jobs.  Disclosure of these telephone numbers could subject these individuals to harassing telephone calls which could disrupt official business, including impeding the ability of the FBI SAs and professional support employees to conduct and conclude law enforcement investigations in a timely manner.  Release of routine internal administrative information such as telephone numbers serves no public benefit, and there is no indication that there is a genuine public interest in the disclosure of these numbers.  Accordingly, because an internal telephone number is related solely to the internal practices of the FBI, because disclosure would not serve any public benefit, and because disclosure would impede the FBI's effectiveness, the FBI has withheld this information pursuant to Exemption (b)(2)-1 on the following pages:  DeMartino 20, 87, 120-121, 143, 152, 171, 238, and 258-263.

### (b)(2)-2        Operational Funds

(24)    The FBI has asserted exemption (b)(2)-2 to protect information concerning

-12-

operational funds that were dispensed during the course of a law enforcement investigation. This is internal administrative information which, if disclosed, could provide insight into the funding of undercover operations. Disclosure of this information would permit the general public to calculate how the FBI funds similar matters. This information could be used to exhaust the FBI's funding of a particular investigation, which in turn could impede the FBI's effectiveness in administering its operations. Accordingly, the FBI properly protected this information pursuant to FOIA Exemption (b)(2) on the following pages: DeMartino 7, 20-21, 126, 130, 133-134, 139-140, 154, 241, and 257.

### (b)(2)-3     Effectiveness Ratings of Investigative Techniques

(25)     Form FD-515 is a form used by FBI investigative SAs to report investigative accomplishments. This form is submitted at various stages of an investigation to report statistical accomplishements such as an arrest, the recovery of stolen property, and so forth. At the upper right hand side of this form is a block captioned "Investigative Assistance and Techniques Used." This block lists investigative techniques, some of which were used by the investigative personnel during the investigation of plaintiff and others. Opposite each investigative technique is a rating column that records a numerical rating from 1 to 4 to rate each technique used by investigative personnel during the course of the investigation. The numerical rating evaluates the effectiveness of each technique used in bringing the investigation to a successful conclusion. The entire rating column has been deleted to protect from release the various techniques used in the investigation of plaintiff and others in the records responsive to plaintiff's request. If the rating columns were released along with the ratings of each technique used, plaintiff and others involved in criminal violations such as this could change their activities and modus operandi in order to avoid

detection and/or surveillance in the future. Therefore, protection of these rating columns is essential to prevent future circumvention of the law by criminals. The FBI will use the same or similar techniques to bring similar future investigations to a successful conclusion. Thus the FBI has properly withheld this information, in conjunction with Exemption (b)(7)(E)-1, pursuant to FOIA Exemption (b)(2)-3 on the following pages:  DeMartino 208 and 210-211.

**EXEMPTION (b)(3)**
**INFORMATION PROTECTED BY STATUTE**

(26)   5 U.S.C. § 552 (b)(3) exempts from disclosure information which is:

> specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) established particular criteria for withholding or refers to particular types of matters to be withheld.

**(b)(3)**          **Federal Grand Jury Information**

(27)    Exemption (b)(3) was asserted pursuant to 6(e) of the Federal Rules of Criminal Procedure to withhold Federal Grand Jury ("FGJ") information.  It is well established that Rule 6(e) embodies a broad, sweeping policy of preserving the secrecy of FGJ proceedings regardless of the substance of the material being withheld.  The name of an individual who testified and specific material subpoenaed by the FGJ were withheld pursuant to this exemption.  Accordingly, any such disclosure would clearly violate the secrecy of FGJ proceedings and could reveal the inner workings of the FGJ process.  Exemption (b)(3) has been asserted on the following pages: DeMartino 18 and 212.

**EXEMPTION (b)(6)**
**CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY**

(28)    5 U.S.C. § 552 (b)(6) exempts from disclosure:

> personnel and medical files and similar files when the disclosure of such

-14-

information would constitute a clearly unwarranted invasion of personal privacy.

(29)    When asserting this exemption, each piece of information was scrutinized to determine the nature and strength of the privacy interest of any individual whose name and/or identifying information appeared in the pages at issue.  When withholding information pursuant to this exemption, the FBI is required to balance the privacy interest of the individuals mentioned against any public interest in disclosure.  When making this analysis, the public interest in disclosure was determined by whether the information in question would inform plaintiff or the general public about the FBI's performance of its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners. In each instance where information was withheld, it was determined that individual privacy rights outweighed the public interest.

### (b)(6)-1    Names and/or Identifying Information of FBI Special Agents and Support Personnel

(30)    Exemption (b)(6)-1 has been asserted in conjunction with Exemption (b)(7)(C)-1 to protect the names and identifying information, including telephone numbers and Social Security Numbers of FBI SAs responsible for conducting investigations of individuals who pose a threat to the United States in terrorism, espionage, racketeering, and bank robbery cases as well as professional support employees responsible for providing assistance to FBI SAs conducting investigations of these individuals.  Disclosure of the names and identifying information could subject these employees to unauthorized inquiries by members of the media and the general public who seek access to this type of information.  Accordingly, the FBI determined that the FBI SAs and professional support employees referenced in the responsive records maintain

-15-

substantial privacy interests in not having their identities disclosed. The FBI next examined the records at issue to determine whether there was any public interest that outweighed the substantial privacy interests of the FBI SAs and professional support employees. The FBI could not identify any discernible public interest. The disclosure of the names and identifying information of FBI SAs and professional support employees would not demonstrate how the FBI performs its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners. Ultimately, disclosure of the names and identifying information of FBI SAs and professional support employees would shed no light on the performance of the FBI's mission. Consequently, the privacy interests of these individuals outweighs no discernible public interest in disclosure and the disclosure of the names and identifying information of these individuals would constitute a clearly unwarranted invasion of their personal privacy. The FBI has properly asserted Exemption (b)(6)-1 in conjunction with (b)(7)(C)-1 on the following pages: DeMartino 1, 5, 9, 14, 20-22, 23, 37, 41, 43, 45, 48, 50-53, 61, 75, 84-85, 87, 96, 99, 106, 114, 116-124, 126-127, 131, 137-139, 141-143, 150-152, 154-158, 160-161, 166, 170-171, 193, 203, 206, 208, 210-211, 214-218, 227, 240-241, and 251.

### (b)(6)-2    Names and/or Identifying Information of Third Parties of Investigative Interest

(31)    Exemption (b)(6)-2 has been asserted in conjunction with Exemption (b)(7)(C)-2 to withhold the names and identifying information of third parties who were of investigative interest to the FBI. During the course of the FBI's investigation into plaintiff's criminal activities, information was developed and recorded in the course of interviews conducted with

plaintiff's associates. Due to their criminal activities, these third-party individuals were of investigative interest to the FBI. Disclosure of the identities of third parties in this context could cause unsolicited and unnecessary attention to be focused on them and disclosure may embarrass them. For these reasons the FBI has determined that these individuals maintain a substantial privacy interest in not having their identities disclosed.

(32)    After identifying the substantial privacy interest of these third parties, the FBI balanced those interests against the public interest in disclosure. The FBI could identify no discernible public interest in the disclosure of this information because the disclosure of third parties' names and identifying information would not shed light on the operations and activities of the FBI. Accordingly, the FBI determined that the disclosure of this information would constitute a clearly unwarranted invasion of personal privacy. Thus, the FBI properly withheld the names of these third parties pursuant to Exemption (b)(6)-2 on the following pages: DeMartino 1, 5, 9, 14, 18, 20, 22-24, 45-46, 48-49, 53, 55-61, 63-66, 69, 71-75, 77-80, 82, 84, 87, 96-99, 101-102, 104, 106-108, 116-124, 126, 131-132, 135, 137, 139, 141, 143, 146-147, 149-152, 155, 157-161, 163-164, 166-167, 169, 171, 173-174, 176, 186-189, 193, 195-196, 198, 203-204, 206-220, and 257-263.

### (b)(6)-3    Names and/or Identifying Information of State, Local, and Non-FBI Federal Law Enforcement Personnel

(33)    Exemption (b)(6)-3 has been asserted in conjunction with (b)(7)(C)-3 to withhold the names and identifying information, specifically work locations of state, local, and non-FBI federal law enforcement personnel who assisted in the investigation of plaintiff. Disclosure of this identifying information could subject these law enforcement officials to unauthorized inquiries and harassment which would constitute a clearly unwarranted invasion of their personal

-17-

privacy. The rational for protecting non-FBI law enforcement officials is the same as that for FBI
employees. See supra Paragraph 30. In balancing the legitimate privacy interests against any
public interest in disclosure, the FBI could discern no public interest in the disclosure of this
information because this type of information would not shed light on the operations and activities
of the federal government. Accordingly, the FBI properly withheld this information pursuant to
Exemption (b)(6)-3 on the following pages: DeMartino 7, 46, 49-50, 52, 86, 108, and 204.

### (b)(6)-4     Names of Third Parties Merely Mentioned

(34)     Exemption (b)(6)-4 has been asserted in conjunction with (b)(7)(C)-4 to withhold
the names of third parties merely mentioned in documents concerning the criminal investigation
of plaintiff. The FBI obtained information concerning third parties who came into contact with
plaintiff during the course of his activities. These individuals were not of investigative interest to
the FBI; and, they maintain legitimate privacy interests in not having this identifying information
disclosed. If the FBI disclosed their names, the disclosure would reveal that these third parties
were connected with the FBI's investigation of plaintiff in some way. Disclosure of these third
parties' names in connection with the FBI's investigation of plaintiff's activities carries an
extremely negative connotation. Disclosure of their identities could subject these individuals to
possible harassment or criticism and focus derogatory inferences and suspicion on them.
Accordingly, the FBI determined that these third parties maintain a substantial privacy interest in
not having information about them disclosed. After identifying the substantial privacy interests
these individuals maintain, the FBI balanced their right to privacy against the public interest in
disclosure. The FBI has determined that there is no public interest. Thus, the privacy interests of
these individuals outweighs no discernible public interest in disclosure, and the release of this

information would constitute a clearly unwarranted invasion of their personal privacy.

Exemption (b)(6)-4 in conjunction with (b)(7)(C)-4 is invoked on the following pages:

DeMartino 49, 105-106, 160, and 216.

### (b)(6)-5    Names and/or Identifying Information of Individuals Who Provided Information to State, Local, Non-FBI, and FBI Law Enforcement Personnel

(35)    Exemption (b)(6)-5 has been asserted in conjunction with Exemption (b)(7)(C)-5 to protect the names and identifying information of third parties who provided information to state, local, non-FBI, and FBI federal law enforcement personnel. Disclosure of the identities of these third parties could have a detrimental effect on the current and future cooperation of other individuals willing to provide information inasmuch as they would have little or no faith in the FBI's ability to maintain their information in confidence. The FBI has found that information provided by individuals during an interview is one of the most productive investigative tools used by law enforcement agencies. The largest roadblock in successfully obtaining the desired information through an interview is fear by the interviewee that his/her identity will possibly be exposed and consequently the interviewee may be harassed, intimidated, or threatened with legal and/or economic reprisal, or possible physical harm. In order to surmount these obstacles, persons interviewed must be assured that information received from them will be held in the strictest confidence. The continued access by the FBI to persons willing to honestly relate pertinent facts bearing upon a particular investigation outweighs any benefit plaintiff might derive from being provided the identities of those who cooperated with state, local, non-FBI, and FBI law enforcement officers.

(36)    Disclosure of the identities of third parties who furnished information to state,

local, non-FBI, and FBI law enforcement officers in connection with this investigation could likewise embarrass those individuals. Thus, the FBI has determined that the third party interviewees maintain a substantial privacy interest in not having their identities disclosed. After identifying the substantial privacy interests of the third parties interviewed during the course of the investigation, the FBI balanced the privacy interest of these individuals against any public interest in disclosure. The FBI could not identify any discernible public interest in disclosure, and therefore, the privacy interest of these individuals outweighs no discernable public interest in disclosure. Consequently, the FBI has properly withheld this information pursuant to Exemption (b)(6)-5 on the following pages:  DeMartino 1-4, 6, 8, 14-18, 21, 50-52, 55, 63, 77, 126-134, 139-140, and 154.

## EXEMPTION 7

## EXEMPTION 7 THRESHOLD

(37)    Exemption 7 of the FOIA protects from mandatory disclosure records or information compiled for law enforcement purposes, but only to the extent that disclosure could reasonably be expected to cause one of the harms enumerated in the subpart of the exemption. See 5 U.S.C. § 552 (b)(7). In this case, the harm that could reasonably be expected to result from disclosure concerns invasion of personal privacy, revealing the identities of confidential sources, revealing sensitive law enforcement techniques, and endangering the life or physical safety of an individual.

(38)  · Before an agency can invoke any of the harms enumerated in Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Law enforcement agencies such as the FBI must demonstrate that the

records at issue are related to the enforcement of federal laws and that the enforcement activity is within the law enforcement duty of that agency. The documents at issue in this case were compiled for criminal law enforcement purposes during the course of the FBI's performance of its law enforcement mission. This mission includes the investigation of criminal activities, which covers the investigation of plaintiff's involvement with bank robberies and RICO violations. Thus, there is no doubt that this investigation falls within the law enforcement duties of the FBI. Accordingly, the information readily meets the threshold requirement of Exemption 7. The remaining inquiry is whether its disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy, disclose the identities of confidential sources, disclose little known law enforcement techniques, or endanger the safety of third parties

## EXEMPTION (b)(7)(C)
### UNWARRANTED INVASION OF PERSONAL PRIVACY

(39)    5 U.S.C. § 552(b)(7)(C) exempts from disclosure:

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . .

(40)    When withholding information pursuant to this exemption, the FBI is required to balance the privacy interests of the individuals mentioned in the documents against any public interest in disclosure. When asserting this exemption, each piece of information was scrutinized to determine the nature and strength of the privacy interest of each individual whose name and/or identifying information appears in the documents at issue. The FBI identified the public interest in disclosure of the information to be whether the information in question would inform plaintiff

-21-

or the general public about the FBI's performance of its mission to enforce federal criminal and national security statutes, and/or how the FBI actually conducts its internal operations and investigations. Every effort has been made to release all segregable information contained in these pages without infringing upon the privacy rights of the individuals mentioned in the responsive records. As explained below, there is no legitimate public interest in the information that has been withheld pursuant to Exemption (b)(7)(C).

### (b)(7)(C)-1    Names and/or Identifying Information of FBI Special Agents and Support Personnel

(41)    Exemption (b)(7)(C)-1 has been asserted in conjunction with Exemption (b)(6)-1 to protect the names and identifying information, including the telephone numbers and Social Security Numbers, of FBI SAs responsible for conducting investigations of individuals who pose a threat to the United States in terrorism, espionage, racketeering, and bank robbery cases and professional support employees responsible for providing assistance to FBI SAs conducting investigations of these individuals. The disclosure of the names and identifying information could subject these employees to unauthorized inquiries by members of the media and the general public who seek access to this type of information. Accordingly, the FBI determined that the FBI SAs and professional support employees referenced in the responsive records maintain substantial privacy interests in not having their identities disclosed. The FBI next examined the records at issue to determine whether there was any public interest that outweighed the substantial privacy interests of the FBI SAs and professional support employees. The FBI could not identify any discernible public interest. The disclosure of the names of FBI SAs and the professional support employees would not demonstrate how the FBI performs its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold

-22-

and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners. Ultimately, disclosure of the names and identifying information of FBI SAs and the professional support employees would shed no light on the performance of the FBI's mission. Thus, disclosure of the names and identifying information of these employees could constitute an unwarranted invasion of their personal privacy.

(42)  In balancing the substantial privacy interest of these individuals against no legitimate public interest in its disclosure, the FBI has determined that this information regarding FBI SAs and professional support employees has been properly asserted pursuant to Exemption (b)( 7)(C)-1, in conjunction with Exemption (b)(6)-1, because the release of this information would constitute an unwarranted invasion of their personal privacy. Exemption (b)(7)(C) has been asserted on the following pages: DeMartino 1, 5, 9, 14, 20-23, 37, 41, 43, 45, 48, 50-53, 61, 75, 84, 85, 87, 96, 99, 106, 114, 116-124, 126-127, 131, 135, 137, 139, 141-143, 150-152, 154-158, 160-161, 166, 170-171, 193, 203, 206, 208, 210-211, 214-218, 227, 240- 241, and 251.

### (b)(7)(C)-2    Names and/or Identifying Information of Third Parties of Investigative Interest

(43)  Exemption (b)(7)(C)-2 has been asserted in conjunction with Exemption (b)(6)-2 to withhold the names and identifying information of third parties who were of investigative interest to the FBI. During the course of the FBI's investigation into plaintiff's criminal activities, information was developed and recorded in the course of interviews conducted with plaintiff's associates. Due to the criminal activities of one or more of plaintiff's associates, these third-party individuals were of investigative interest to the FBI. Disclosure of the identities of

third parties in this context could cause unsolicited and unnecessary attention to be focused on them and disclosure may embarrass them. For these reasons, the FBI has determined that these individuals maintain a substantial privacy interest in not having their identities disclosed.

(44)    After identifying the substantial privacy interest of the third parties mentioned, the FBI balanced those interests against the public interest in disclosure. The FBI could identify no discernible public interest in the disclosure of this information because the disclosure of third parties' names and identifying information will not shed light on the operations and activities of the FBI. Accordingly, the FBI determined that the disclosure of this information would constitute an unwarranted invasion of personal privacy. Thus, the FBI properly withheld the names and identifying information of these third parties pursuant to Exemption (b)(7)(C)-2, in conjunction with Exemption (b)(6)-2, on the following pages: DeMartino 1, 5, 9, 14, 18, 20, 22-24, 29-35, 45-46, 48-49, 53, 55-61, 63-66, 69, 71-75, 77-80, 82, 84, 87, 96-99, 101-102, 104, 106-108, 116-124, 126, 131-132, 135, 137, 139, 141, 143, 146-147, 149-152, 155, 157-161, 163-164, 166-167, 169, 171, 173-174, 176, 186-189, 193, 195-196, 198, 203-204, 206 - 220, and 257 - 263.

### (b)(7)(C)-3    Names and/or Identifying Information of State, Local, and Non-FBI Law Enforcement Personnel

(45)    Exemption (b)(7)(C)-3 has been asserted in conjunction with (b)(6)-3 to withhold the names and identifying information, specifically work locations, of state, local, and non-FBI law enforcement personnel who worked with the FBI in the investigation of plaintiff. Disclosure of this identifying information could subject these law enforcement officials to unauthorized inquiries and harassment which would constitute an unwarranted invasion of their personal privacy. The rational for protecting non-FBI law enforcement officials is the same as that for FBI

-24-

employees. See supra Paragraph 30. In balancing the legitimate privacy interests against any public interest in disclosure, the FBI could not discern any public interest in the disclosure of this information because this type of information would not shed light on the operations and activities of the FBI. Accordingly, the FBI properly withheld this information pursuant to Exemption (b)(7)(C)-3 on the following pages: DeMartino 7, 46, 49-50, 52, 86, 108, and 204.

### (b)(7)(C)-4     Names of Third Parties Merely Mentioned

(46)     Exemption (b)(7)(C)-4 has been asserted in conjunction with (b)(6)-4 to withhold the names of third parties merely mentioned in documents concerning the criminal investigation of plaintiff. The FBI obtained information concerning third parties who came into contact with plaintiff during the course of his activities. These individuals were not of investigative interest to the FBI. These third parties maintain legitimate privacy interests in not having this information disclosed. If the FBI disclosed their names, the disclosure could reveal that these third parties were connected with the FBI's investigation of plaintiff in some way. Disclosure of these third parties' identifies in connection with the FBI's investigation of plaintiff's activities carries an extremely negative connotation. Disclosure of their identities could subject these individuals to possible harassment or criticism and focus derogatory inferences and suspicion on them. Accordingly, the FBI determined that these third parties maintained a substantial privacy interest in not having information about them disclosed. After identifying the substantial privacy interests these individuals maintain, the FBI balanced their right to privacy against the public interest in disclosure and determined that there is no public interest. Thus, the privacy interests of these individuals outweighs no discernible public interest in disclosure, and therefore, disclosure of this information could constitute an unwarranted invasion of their personal privacy.

-25-

Exemption (b)(7)(C)-4 in conjunction with (b)(6)-4 is invoked on the following pages:

DeMartino 49, 105-106, 160 and 216.

### (b)(7)(C)-5    Names and/or Identifying Information of Third Parties Who Provided Information to State, Local, and Non-FBI Law Enforcement Personnel

(47)    Exemption (b)(7)(C)-5 has been asserted in conjunction with Exemption (b)(6)-5 to protect the names and identifying information of third parties who provided information to state, local and non-FBI, and FBI federal law enforcement personnel. Disclosure of the identities of these third parties could have a detrimental effect on the current and future cooperation of other individuals willing to provide information inasmuch as they would have little or no faith in the FBI's ability to maintain their information in confidence. The FBI has found that information provided by individuals during an interview is one of the most productive investigative tools used by law enforcement agencies. The largest roadblock to successfully obtaining the desired information through an interview is fear by the interviewee that his/her identity will possibly be exposed and consequently the interviewee may be harassed, intimidated, or threatened with legal and/or economic reprisal, or possible physical harm. In order to surmount these obstacles, persons interviewed must be assured that information received from them will be held in the strictest confidence. The continued access by the FBI to persons willing to honestly relate pertinent facts bearing upon a particular investigation outweighs any public benefit that could be derived from being furnished the names of those who cooperated with State, local, and non-FBI, and FBI law enforcement officers.

(48)    Disclosure of the identities of third parties who furnished information to State,

-26-

local, Non-FBI, and FBI law enforcement officers in connection with this investigation could

likewise embarrass those individuals. Thus, the FBI has determined that the third party

interviewees maintain a substantial privacy interest in not having their identities disclosed. After

identifying the substantial privacy interests of the third parties interviewed during the course of

the investigation, the FBI balanced the privacy interest of these individuals against any public

interest in disclosure. The FBI could not identify any discernible public interest, and therefore,

the privacy interest of these individuals outweighs no discernable public interest in disclosure.

Consequently, the FBI has properly withheld this information pursuant to Exemption (b)(7)(C)-5

in conjunction with (b)(6)-5 on the following pages: DeMartino 1-4, 6, 8, 14-18, 21, 50-52, 55,

63, 77, 126-134, 139-140, and 154.

### FOIA EXEMPTION (b)(7)(D)
### CONFIDENTIAL SOURCE MATERIAL

(49)    5 U.S.C. § 552(b)(7)(D) provides protection for:

> records or information compiled for law enforcement purposes, but
> only to the extent that the production of such law enforcement
> records or information . . . could reasonably be expected to disclose
> the identity of a confidential source, including a State, local or
> foreign agency or authority or any private institution which
> furnished information on a confidential basis, and, in the case of a
> record or information compiled by criminal law enforcement
> authority in the course of a criminal investigation, or by an agency
> conducting a lawful national security intelligence investigation,
> information furnished by a confidential source . . . .

### (b)(7)(D)    Names and/or Identifying Information Provided by Individuals under an "Express" Assurance of Confidentiality

(50)    Numerous confidential sources report to the FBI on a regular basis and are

"informants" within the common definition of the term. Often, they provide information under

express assurances of confidentiality. At other times, sources provide information to the FBI in circumstances under which an assurance of confidentiality may be implied. Releasing the information provided by these sources could reveal a confidential source's identity. The release of a source's identity could forever eliminate that source as a future means of obtaining information. In addition, when the identity of one source is revealed, that revelation has a chilling effect on the activities and cooperation of other sources. It is only with the understanding of complete confidentiality that the aid of such sources can be enlisted, and through this confidence that these sources can be persuaded to continue providing valuable assistance in the future. Thus, the information provided by, as well the identities of, these sources has been protected pursuant to Exemption (b)(7)(D).

(51)    Exemption 7(D)-1 has been asserted to protect the names and information of third parties who were interviewed during the course of FBIHQ's investigation of criminal activities under an express grant of confidentiality. In this case, individuals specifically requested that their identities not be disclosed because they feared reprisal. Prior to conducting the interviews, the FBI expressly promised the third party interviewees that their identities and the information they provided would not be disclosed. This is evidenced by the fact that when the names of individuals are referenced in the file, the words "protect identity" or "protect identity by request" are also referenced. The words "protect identity" or "protect identity by request" are positive indicia which supports an express assurance of confidentiality.

(52)    In this instance, there is particular concern about releasing any identifying information about these informants. The informants are suspected of membership or alliances with known La Cosa Nostra ("LCN"), which could cause extreme danger to the lives and

physical safety of the informants should their names or other identifying information be released.

(53)    It is likely that the informants mentioned in these records either have been or one day will be brought back into an LCN association. If their identities were to become public knowledge, they could be at risk of physical injury or death. Their very association with the United States Government would lead other LCN member to believe that the individual had divulged information to the Government. The disclosure of their identities or identifying information would doubtless expose them to extreme danger. Additionally, the identification of informants may provide the LCN with a guide book to as to the criteria used in determining who is sent back to an LCN organization and who is not, as well as who is prosecuted and who is not.

(54)    For the reasons described above, the identities of these confidential sources and any specific information provided by them which would identify them has been withheld from disclosure pursuant to Exemption (b)(7)(D) on the following pages: DeMartino 1-4, 6-9, 14-18, 21, 50-52, 55, 63, 71, 77, 126-134, 139-140, 154, and 260.

## EXEMPTION (b)(7)(E)
## INVESTIGATIVE TECHNIQUE/PROCEDURE

(55)    5 U.S.C. § 552 (b)(7)(E) provides the withholding of:

> records or information compiled for law enforcement purposes, but
> only to the extent that the production of such law enforcement records
> or information . . . (E) would disclose techniques and procedures for law
> enforcement investigations or prosecutions, or would disclose guidelines
> for law enforcement investigations or prosecutions if such disclosure
> could reasonably be expected to risk circumvention of the law.

(56)    This exemption's purpose is to protect those investigative techniques and procedures or guidelines that allow the FBI to carry out its law enforcement investigations and prosecutions. A technique or procedure need not be new or even sophisticated to qualify for

-29-

protection, however, it should be generally unknown to the public and be of such character that revelation will impair its future effectiveness. On the other hand, a technique or procedure may be protected if it is known to the public, but the circumstance of its usefulness may not be widely known.

### (b)(7)(E)-1     Effectiveness Ratings of Investigative Techniques

(57)     Form FD-515 is a form used by FBI investigative SAs to report investigative accomplishments. This form is submitted at various stages of an investigation to report statistical accomplishments such as an arrest, the recovery of stolen property, and so forth. At the upper right hand side of this form is a block captioned "Investigative Assistance and Techniques Used." This block lists investigative techniques, some of which were used by the investigative personnel during the investigation of plaintiff and others. Opposite each investigative technique is a rating column that records a numerical rating from 1 to 4 to rate each technique used by investigative personnel during the course of the investigation. The numerical rating evaluates the effectiveness of each technique used in bringing the investigation to a successful conclusion. The entire rating column has been deleted to protect from release the various techniques used in the investigation of plaintiff and others in the records responsive to plaintiff's request. If the rating columns were released along with the ratings of each technique used, plaintiff and others involved in criminal violations such as this could change their activities and modus operandi in order to avoid detection and/or surveillance in the future. Therefore, protection of these rating columns is essential to prevent future circumvention of the law by criminals. The FBI will use the same or similar techniques to bring similar future investigations to a successful conclusion. Thus the FBI has properly withheld this information, in conjunction with Exemption (b)(2)-3, pursuant to

-30-

FOIA Exemption (b)(7)(E) on the following pages:  DeMartino 208 and 210-211.

### (b)(7)(E)-2    Bank Security Procedures

(58)    Exemption (b)(7)(E)-2 has been asserted to protect whether or not specific

security procedures and techniques were used by Chase Manhattan Bank to prevent bank

robberies.  If the FBI were to disclose the specific techniques used by the financial institutions it

could reduce or even nullify their effectiveness.  Therefore, in order to protect financial

institutions from robberies, Exemption (b)(7)(E)-2 has been cited on the following page:

DeMartino 71 and 257-263.

### EXEMPTION (b)(7)(F)
### ENDANGERMENT TO LIFE AND PHYSICAL SAFETY

(59)    5 U.S.C. § 552(b)(7)(F) exempts from disclosure:

> records or information compiled for law enforcement purposes, but only to the
> extent that the production of such law enforcement records or information . . .
> could reasonably be expected to endanger the life or physical safety of any
> individual.

### (b)(7)(F)    Names and/or Identifying Information Provided by Witnesses
### or Third Parties Who Provided Information Regarding Criminal
### Activities

(60)    Exemption (b)(7)(F) has been asserted to protect information the release of which

could reasonably be expected to endanger the life and/or physical safety of individuals who

provided information concerning criminal activities of plaintiff and plaintiff's associates.  The

disclosure of these individuals' names and detailed information which they provided to the FBI

would readily reveal the identities of these sources.  In some instances, the information provided

is sufficiently singular in nature for an individual familiar with the criminal investigations to

determine the identities of the individuals who provided the information.  In light of the detailed

nature of the information these sources have provided to the FBI and the type of activity that plaintiff and his associates were involved in, including bank robbery and RICO violations, it is reasonable to expect that release of their identities would place them at great risk. For these reasons, the FBI has asserted Exemption (b)(7)(F), in conjunction with (b)(6)(5), (b)(7)(C)-5 and (b)(7)(D), on the following pages:  DeMartino 2-4, 6-8, 14-18, 21, 50-52, 55, 63, 77, 126-134, 139-140, and 154.

## REFERRALS OF DOCUMENTS

(61)    By letter dated November 14, 2006, the FBI forwarded a one page document to BOP which originated with that agency. This page is identified as DeMartino 226.  In preparation of this declaration, the FBI consulted with BOP and was advised that this page was released to plaintiff in a letter dated January 23, 2007. Redactions were made to this page pursuant to FOIA Exemptions 7(C) and 7(F).  BOP has informed FBI that these the redacted material consisted of names of individuals, other than the plaintiff, who were previously convicted of bank robbery charges, and were being released from prison. See Exhibit B.

(62)    By letter dated January 16, 2007, the U.S. Parole Commission forwarded a referral package to the FBI consisting of two (2) pages of Parole Commission documents containing FBI-originated  information to be processed for direct response to plaintiff.  These two (2) pages were released to plaintiff in a letter dated February 21, 2007, with redactions taken pursuant to Privacy Act Exemption (j)(2) and FOIA Exemptions (b)(6) and (b)(7)(C).  These pages are identified as DeMartino 255-256.

## CONCLUSION

(63)    Plaintiff has been provided all responsive records pursuant to his FOIA/Privacy

Act requests to the FBI. Furthermore, all segregable information has been released to plaintiff, and no reasonably segregable portion of the withheld material can be released. Each of the documents was individually reviewed for segregability. As demonstrated above, the only information withheld by the FBI consists of information that is exempt from the Privacy Act and would disclose internal rules and practices, reveal Federal Grand Jury information protected by statute, infringe upon the personal privacy of third party individuals, disclose the identities of confidential sources, disclose law enforcement techniques and procedures, and endanger the safety of third parties. This information cannot be further segregated without revealing the protected information itself.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibit A attached hereto is a true and correct copy.

Executed this _____ day of December, 2007.

DAVID M. HARDY
Section Chief
Record/Information Dissemination
Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

-33-