# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VINCENT DEMARTINO,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 06CV0879 (RJL)** |
| ) | |
| **F.B.I., et al.,** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART[1]

Defendant Federal Bureau of Investigation ("FBI"), respectfully requests that this Court

grant summary judgment in part in their favor pursuant to Federal Rule of Civil Procedure, on the

grounds that no genuine issue of material fact exists and Defendant is entitled to judgment as a

matter of law.

In support of this motion, Defendant respectfully refers the Court to the accompanying

Memorandum of Points and Authorities in Support and accompanying Statement of Material

Facts Not In Dispute, as well as the Fourth Declaration of David M. Hardy. A proposed Order

consistent with this Motion is attached hereto.[2]

---

[1]  This motion addresses records responsive to plaintiff's FOIA requests which are maintained by
the FBI's New York Field Office.

[2]  Plaintiff, is hereby advised that failure to respond to this motion may result in the district court
granting the motion. See Fox v. Strickland, 837 F.2d 507, 509 (D.C. Cir. 1988). Plaintiff should
also take notice that any factual assertions contained in the affidavits and other attachments in
support of defendants' motion may be accepted by the Court as true unless the plaintiff submits
his own affidavits or other documentary evidence contradicting the assertions in the defendant's
attachments. See Neal v. Kelly, 963 F.2d 453, 457 (D.C. Cir. 1992).

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney


_____/s/_____
KAREN L. MELNIK, D.C. Bar # 436452
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC 20530
(202) 307-1249
(202) 514-8780 (facsimile)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VINCENT DEMARTINO,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 06CV0879 (RJL)** |
| ) | |
| **F.B.I., et al.,** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT IN PART

Plaintiff has requested certain records from the Federal Bureau of Investigation ("FBI")

pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5

U.S.C. § 552a.  All records responsive to Plaintiff's request which are located in the sub-files of

the FBI's New York Field Office ("NYFO") are subject to FOIA exemption 7(A) in their

entirety.  Accordingly, the FBI has withheld the records pursuant to FOIA exemption 7(A), 5

U.S.C. § (b)(7)(A).

Exemption 7 of the FOIA protects from mandatory disclosure records or information

compiled for law enforcement purposes, but only to the extent that disclosure could reasonably

be expected to cause one of the harms enumerated in the subpart of the exemption. See 5 U.S.C

§ 552 (b)(7).  In this case, the harm that could reasonably be expected to result from disclosure

concerns interference with future law enforcement proceedings.  The Fifth Declaration of David

M. Hardy describes the FBI's response to Plaintiff's FOIA requests.  Mr. Hardy's declaration as

well as Special Agent James J. DeStefano's Declaration demonstrate that the FBI's NYFO

properly withheld documents pursuant to Exemption 7(A) and the Privacy Act ("PA") 5 U.S.C. §

552(a)(j)(2).  Plaintiff's challenge should be denied and summary judgment granted to defendant

regarding NYFO records.  Therefore, Defendant FBI is entitled to judgment pursuant to Federal

Rule of Civil Procedure 56.

**STATEMENT OF FACTS**

Defendant adopts as its statement of facts the Statement of Material Facts Not In Genuine

Dispute, appended hereto.

**ARGUMENT**

**I.      Legal Standards**

**A.      Evidentiary Standard for Summary Judgment**

Where no genuine dispute exists as to any material fact, summary judgment is required.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A genuine issue of material fact is one

that would change the outcome of the litigation.  Id. at 247.  "The burden on the moving party

may be discharged by 'showing'—that is, pointing out to the [Court]—that there is an absence of

evidence to support the non-moving party's case."  Sweats Fashions, Inc. v. Pannill Knitting

Company, Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).  Once the moving party has met its

burden, the non-movant—here Plaintiff—may not rest on mere allegations, but must instead

proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Thus, to avoid summary judgment here, Plaintiff

must present some objective evidence that would enable the court to find he is entitled to relief.

In Celotex Corp. v. Catrett, the Supreme Court held that, in responding to a proper

motion for summary judgment, the party who bears the burden of proof on an issue at trial must

2

"make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986); see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor). In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. Pro. 1).

## B.    Summary Judgment in FOIA Cases

The summary judgment standards set forth above also apply to FOIA cases, which are typically decided on motions for summary judgment. See Cappabianca v. Commissioner, U.S. Customs Serv., 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) (citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)). For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to de novo review by the courts. Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980). In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, is unidentifiable, or is exempt from disclosure. See Students Against Genocide v. Dept. of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. U.S. Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).

As a practical matter, this standard for summary judgment means that the agency must provide the Court and the plaintiff with affidavits or declarations and other evidence which show that the documents are exempt from disclosure. See, e.g., Center for Nat'l Security Studies v.

U.S. Dep't of Justice, 331 F.3d 918, 927 (D.C. Cir. 2003); Hayden, 608 F.2d at 1384, 1386.

Summary judgment may be granted to an agency in a FOIA case solely on the basis of agency

affidavits [or declarations] if the "affidavits are 'relatively detailed, non-conclusory, and not

impugned by evidence . . . of bad faith on the part of the agency.'" Public Citizen, Inc. v. Dept.

of State, 100 F. Supp.2d 10, 16 (D.D.C. 2000) (quoting McGhee v. Central Intelligence Agency,

697 F.2d 1095, 1102 (D.C. Cir. 1983)); see also Nat'l Security Studies, 331 F.3d at 927.

Typically, the agency's declarations or affidavits are referred to as a Vaughn index, after

the case of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974).

There is no set formula for a Vaughn index.  "[I]t is well established that the critical elements of

the Vaughn index lie in its function, and not in its form."  Kay v. FCC, 976 F. Supp. 23, 35

(D.D.C. 1997).

The purpose of a Vaughn index is "to permit adequate adversary testing of the agency's

claimed right to an exemption."  NTEU v. Customs, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing

Mead Data Central v. United States Dept. of the Air Force, 566, F.2d 242, 251 (D.C. Cir. 1977),

and Vaughn v. Rosen, 484 F.2d 820, 828 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974)).

Thus, the index must contain "an adequate description of the records" and "a plain statement of

the exemptions relied upon to withhold each record".  NTEU, 802 F.2d at 527 n.9.

The Vaughn Index serves a threefold purpose: (1) it identifies each document withheld;

(2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage

the interests protected by the claimed exemption.  See  Citizens Com'n on Human Rights v. Food

and Drug Admin., 45 F.3d 1325, 1326 (9th Cir. 1995).  "Of course the explanation of the

exemption claim and the descriptions of withheld material need not be so detailed as to reveal

that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology of Washington, D.C., Inc. v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979).

Here, the FBI has submitted a declaration and a coded Vaughn index in support of this motion for summary judgment. The submission identifies categories of documents which are being withheld. The declaration was prepared by John M. Hardy, Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at FBI Headquarters ("FBIHQ") in Washington, D.C. See Fifth Declaration of David M. Hardy ("5th Hardy Decl.") at ¶ 1. The Hardy declaration meets the requirements of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 15 U.S. 977, 94 S.Ct. 1564 (1974), and provides the Court with the requisite basis to grant defendant's motion. The Vaughn itemizations identify and describe the types of documents responsive to Plaintiff's FOIA requests (to the extent responsive documents were found), and set forth the justifications for exemption 7(A) for withholding all of the documents.

## II.    The FBI Conducted An Adequate Search for Responsive Records.

The agency's burden is to establish that it has conducted a search reasonably calculated to uncover all responsive records.[3] Weisberg v. Department of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The issue is not whether there might possibly exist other records responsive to the request, but whether the search for responsive records was reasonable. Id. The agency can

---

[3] An agency must respond to a FOIA request only if it "reasonably describes" the records it seeks. 5 U.S.C. § 552(a)(3)(A). A request meets this standard only if a professional agency employee familiar with the subject area is able to locate the requested records with a "reasonable amount of effort." H.R. Rep. No. 93-876, at 6 (1974), reprinted in 1974 U.S.C.C.A.N. 6271.

establish the reasonableness of its search by affidavits if they are relatively detailed, non-conclusory, and made in good faith. Weisberg, 745 F.2d at 1485. Summary judgment is appropriate where the agency submits a "'reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched,'" unless "a review of the record raises substantial doubt" about the adequacy of the search. Valencia-Lucena v. United States Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999), quoting Oglesby v. Department of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).

The FOIA does not require that an agency search every division or field office in response to a FOIA request when responsive documents are likely to be located in one place. Marks v. Dep't of Justice, 578 F.2d 261, 263 (9th Cir. 1978). "When a request does not specify the locations in which an agency should search, the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return; in other words, the agency generally need not 'search every record system.'" Campbell v. United States Dep't of Justice, 164 F.3d 20, 28 (D.C. Cir. 1998), quoting Oglesby, 920 F.2d at 68. "The agency is not required to speculate about potential leads" to the location of responsive documents, Kowalczyk v. Department of Justice, 73 F.3d 386, 389 (D.C. Cir. 1996), although it is required "to follow through on obvious leads to discover requested documents." Valencia-Lucena, 180 F.3d at 325. "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." Safecard Serv., Inc. v. Securities & Exch. Comm'n, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

In this case, the FBI conducted a reasonable search for responsive records. Specifically,

in response to plaintiffs' FOIPA request to the NYFO, the FBIHQ initiated  searches of its

Automated General Indices to the Central Records System[4] at NYFO to identify any records

concerning plaintiff and the investigation of a July 21, 2001 shooting at Coney Island.  See Fifth

Hardy Decl. at ¶ 8.  The Automated General Indices to the CRS were searched for any records

pertaining to "Vincent Anthony DeMartino".  See id.  As a result of these searches, FBIHQ

identified New York Office main file, 281A-NY-281501, as responsive to plaintiff's request.

See id.

New York file 281A-NY-28150 pertains to the multi-subject investigation of the

Columbo crime family and the attempted murder of Joseph Campanella.  See Fifth Hardy Decl.

at ¶ 9.  On May 6, 2004,  Vincent DeMartino and a co-defendant, Giovanni Floridia, were

convicted for the attempted murder of Joseph Campanella.  See id.  The Case Agent in the New

York Field Office has advised that this attempted murder investigation is not over; it is still being

actively investigated and prosecuted; that interviews of persons are still being conducted; that

evidentiary documentary material is still being obtained through Federal Grand Jury subpoenas

and other investigatory methods; and that release of any information from this file, other than

public source information, could reasonably be expected to interfere with potential criminal law

enforcement proceedings in the Federal Courts.  See id.; Declaration of Special Agent James J.

DeStefano ("DeStefano Decl.") at ¶¶ 13-21.  This file currently consists of a total of 6,377 pages

of documents.  See id. at ¶ 9.[5]

_____

[4]  A complete explanation of the FBI's Central Records System ("CRS") can be found in the
Fourth Declaration of David M. Hardy.  See Dkt. #35, Fourth Hardy Decl. at ¶¶ 6-11.

[5]  Twenty-eight pages of public source material from the file and sub-files at issue were
processed and released to Plaintiff on November 14, 2006.  See Fifth Hardy Decl. at ¶ 9.

7

IV.    **Defendant FBI Properly Invoked FOIA Exemption 7(A) To Withhold Information Protected From Disclosure**

As explained below, Defendant withheld documents responsive to Plaintiff's FOIA requests pursuant to Privacy Act Exemption (j)(2) and FOIA Exemption (b)(7)(A).

A.    **Privacy Act Exemption (j)(2)**

The contents of plaintiff's criminal case files are exempt from the Privacy Act's disclosure provisions.  Subsection (j)(2) of the Privacy Act allows an agency by regulation, to exempt from mandatory disclosure:

> records maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of ...(B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a (j)(2).

The investigatory records at issue in this matter are part of the FBI's CRS and concern criminal investigation of Plaintiff and others conducted by the FBI New York Field Office.  See Fifth Hardy Decl. at ¶ 11.  This investigation concerned the attempted murder of Columbo family member Joseph Campanella on July 16, 2001.  See id.  Accordingly, the documents contained in this file are exempt from disclosure pursuant to the Privacy Act, 5 U.S.C. § 552a(j)(2), in conjunction with 28 C.F.R. § 16.93.  See id.  Although access to these records was denied pursuant to the Privacy Act, they were then considered for release pursuant to the access

8

provisions of the FOIA.  See id.

**B.    The FBI Properly Withheld Responsive Records In Their Entirety Pursuant
    To Exemption 7(A)**

As noted above, the FBI released public source documents and all other documents not

withheld pursuant to the above-referenced exemption.  Regarding the NYFO documents, the FBI

withheld all responsive records pursuant to FOIA Exemption 7(A).

1.    Exemption 7(A) Generally

Exemption 7(A) permits the withholding of "records or information compiled for law

enforcement purposes . . . to the extent that the production of such law enforcement records or

information . . . could reasonably be expected to interfere with enforcement proceedings."  5

U.S.C. § 552(b)(7)(A).  Exemption 7(A) applies to pending or prospective proceedings,

including ongoing criminal, civil and administrative investigations.  This exemption applies to all

records or information compiled for law enforcement purposes "whenever the government's case

in court . . . would be harmed by the premature release of evidence or information."  National

Labor Relations Board v. Robbins tire & Rubber Co., 437 U.S. 214, 232 (1978) (internal

quotation and citation omitted).  In light of the important interests protected by Exemption 7(A),

to satisfy its burden justifying the applicability of the exemption, the Government need only

demonstrate that (1) a law enforcement proceeding is pending or prospective; and (2) release of

the information could reasonably be expected to cause some articulable harm.  See, e.g., Voinche

v. FBI, 46 F.Supp. 2d 26, 31 (D.D.C. 1999).

With respect to the showing of harm to a law enforcement proceeding required to invoke

Exemption 7(A), courts have long accepted that Congress intended this exemption to apply

whenever the Government's case in court could be harmed by the premature release of evidence

or information, or when disclosure could impede any necessary investigation prior to the

enforcement proceeding.  See, e.g., Robbins Tire, 437 U.S. at 232 ("the release of information in

investigatory files prior to the completion of an actual, contemplated enforcement proceeding

was precisely the kind of interference that Congress continued to want to protect against").  For

instance, courts have upheld that applicability of Exemption 7(A) when disclosure could reveal

the scope, direction, or nature of a law enforcement investigation or allow suspects to elude

detection.  See, e.g., Solar Sources, Inc. v. United States, 142 f.3d 1033, 1039 (7th Cir. 1998)

(holding that records were properly exempt under 7(A) because disclosure could have resulted in

"destruction of evidence, chilling and intimidation of witnesses, and revelation of the scope and

nature of the Government's investigation"); Kay v. Federal Communications Comm'n, 976 F.

Supp. 23, 39 (D.D.C. 1997) (records exempt under 7(A) because disclosure could reveal

evidence and focus of investigation and discourage witness cooperation), aff'd, 172 F.3d 919

(D.C. Cir. 1998) (table); Willard v. IRS, 776 F.2d 100, 103 (4th Cir. 1985) (affirming withholding

of records that would reveal "the nature and scope of the investigation"); Moorefield v. Secret

Service, 611 F.2d 1021, 1026 (5th Cir. 1980) (Exemption 7(A) proper when release of Secret

Service file to target of investigation could not only allow target to elude scrutiny of Secret

Service but also could "generally . . .  inform targets of Service investigations of the means the

Service employs to keep abreast of them").

Moreover, the Government's burden in demonstrating interference with law enforcement

proceedings under Exemption 7(A) has been significantly relaxed by Congress.  Section

552(b)(7)(A) originally provided for the withholding of information that "would interfere with

10

enforcement proceedings," but the Freedom of Information Act of 1986 amended that language and replaced it with the phrase "could reasonably be expected to interfere with" enforcement proceedings.  See Pub. L. No. 99-570 § 1802, 100 Stat. 3207, 3207-48 (emphasis added). Court's have repeatedly recognized that this change in the statutory language substantially broadens the scope of the exemption.  See, e.g., Manna v. Department of Justice, 51 F.3d 1158, 1164 n.5 (3d Cir. 1995) (purpose of 1986 amendment was "to relax significantly the standard for demonstrating interference with enforcement proceedings"); Gould Inc. v. GSA, 688 F. Supp. 689, 703 n.33 (D.D.C. 1988) ("The 1986 amendments relaxed the standard . . . by requiring the government to show merely that production of the requested records 'could reasonably be expected' to interfere with enforcement proceedings.") (emphasis added); see also, Alyeska Pipeline Service Co. v. Environmental Protection Agency, 856 F.2d 309, 311 n.18 (D.C. Cir. 1988) (holdings that district court's improper reliance on pre-amendment version of Exemption 7(A) "required EPA to meet a higher standard than FOIA now demands"); Spannaus v. United States Dep't of Justice, 813 F.2d 1285, 1288 (4th Cir. 1987) (explaining that relaxed standard "is to be measured by a standard of reasonableness, which takes into account the lack of certainty in attempting to predict harm") (internal quotation and citation omitted).

Finally, it is well-established that the applicability of Exemption 7(A) may be demonstrated generically, based on the category of records involved, rather than on a document-by-document basis.  See Robbins Tire, 437 U.S. at 236.  Congress enacted Exemption 7(A) because it "'recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it came time to present their cases'" in court.  John Doe Agency v. John Doe

11

Corp., 493 U.S. 146, 156, quoting Robbins Tire, 437 U.S. at 224.  It must therefore be construed

pragmatically, so as to ensure that the statutory protection of law enforcement records is given

"meaningful reach and application."  John Doe Agency, 493 U.S. at 152.

Consistent with these pragmatic considerations, in Robbins Tire, the Supreme Court held

that the agency may sustain an Exemption 7(A) claim without making a page-by-page or

document-by-document showing that release of the document in question will result in

particularized harm to a specific law enforcement proceeding.  An agency may instead sustain an

Exemption 7(A) claim by making "certain generic determinations," showing that "with respect to

particular *kinds* of enforcement proceedings, disclosure of particular *kinds* of investigatory

records while a case is pending would generally 'interfere with enforcement proceedings.'"

Robbins Tire, 437 U.S. at 224, 236 (emphasis added).  An agency may thus satisfy its burden of

justifying withholding if it "trace[s] a rational link" between the nature of the requested

documents and the interference with enforcement proceedings that could reasonably be expected

to result from disclosure.  Crooker v. BATF, 789 F.2d 64, 67 (D.C. Cir. 1986).

Thus, courts have routinely accepted affidavits in Exemption 7(A) cases that specify the

distinct, generic categories of documents at issue and the harm that could result from their

release, rather than requiring extensive, detailed itemization of each document.  See, e.g.,

Spannuaus, 813 F.2d at 1288 ("The Supreme Court has rejected the argument that [Exemption

7(A)] requires particularized showings of interference, holding instead that the Government may

justify nondisclosure in a generic fashion."); see also Solar Sources, 142 F.3d at 1037.

In this case, the documents related to the investigation of a La Cosa Nostra criminal

enterprise, specifically the Columbo crime family and the role of one of its crews in the

12

attempted murder of Joseph Campanella.  See Fifth Hardy Decl. at ¶ 13.  The FBI has the

authority to investigate this type of case pursuant to Conspiracy to Murder, 18 U.S.C. § 1117,

and the RICO Statute, 18 U.S.C. § 1961.  See id.  Thus, there is no doubt that this investigation

falls within the law enforcement duties of the FBI.  Accordingly, the information readily meets

the threshold requirement of Exemption 7.  The remaining inquiry being addressed is whether its

disclosure could reasonably be expected to interfere with law enforcement proceedings.[6]

> 2.   The Fifth Hardy Declaration and DeStefano Declaration

The Fifth Hardy Declaration, supplemented by the DeStefano Declaration, amply satisfied

the FBI's Exemption 7(A) burden.

### a.   Law Enforcement Records

As Mr. Hardy explains, the information over which the FBI has asserted Exemption 7(A)

was compiled in the course of the FBI's ongoing multi-subject investigation of the Columbo

crime family and the attempted murder of Joseph Campanella.  See Fifth Hardy Decl. at ¶ 9.  Due

in large part to the assistance of cooperating witnesses, on February 12, 2003, the FBI obtained

sufficient evidence to allow the government to file a Complaint in the United States District

Court for the Eastern District of New York against Plaintiff and Giovanni Floridia for violations

of 18 U.S.C. §§ 1959(a)(5) and 924(c)(1)(A)(iii) (Violent Crimes in Aid of Racketeering with

enhancements for use of a firearm in connection with a crime of violence).  See DeStefano Decl.

at ¶ 9.  Pursuant to this Complaint, on February 28, 2003, Plaintiff and Giovanni Floridia were

arrested by the FBI.  See id.  In April 2004, a trial against Plaintiff and Floridia commenced in

---

[6]  As Defendant noted in its Motion for an Order Preserving Certain Exemptions, see Dkt. #34, which was granted on January 4, 2008, see Dkt. 36, the Defendant is preserving Exemptions 2, 3, 5, 6, 7(C), 7(D), 7(E), and 7(F), should 7(A) become non-applicable.

13

the United States District Court for the Eastern District of New York, and on May 6, 2004,

Plaintiff and Floridia were convicted on all counts.  See id.

Floridia's subsequent cooperation resulted in the indictment of additional co-conspirators.

See id. at ¶¶ 10-11.  The FBI considers file 281A-NY-281501 to be in an open and pending status

at least until the appeal process for Plaintiff and the criminal proceedings related to another co-

conspirator (Carmine "Skippy" DeRoss) are completed, including exhaustion of any and all

appeals.  See id. at ¶ 15.  In addition, the FBI investigation to date indicates that there are other

unindicted co-conspirators who have not yet been fully identified.  See id.  Accordingly, the

potential exists for other individuals to be charged depending on the outcome of the FBI's

investigation and any subsequent criminal proceedings.  See id.

The investigation pursuant to which these records and information were compiled is

clearly within the law enforcement duties of the FBI, which includes the investigation of possible

violations of federal criminal laws.  See id. at ¶¶ 15-16.  Moreover, in light of Plaintiff's

conviction there is a clearly established connection between Plaintiff and a possible violation of

federal law.  The Fifth Hardy Declaration's description of the types of documents at issue makes

clear that the files at issue consist of law enforcement records.  See Fifth Hardy Decl. at ¶ 16(a)-

(u).

**b.      Pending or Prospective Law Enforcement Proceeding**

The investigation pursuant to which these records were compiled is still ongoing, as is the

law enforcement proceeding involving Plaintiff, in light of his pending appeal.  See Fifth Hardy

Decl. at ¶ 17; DeStefano Decl. at ¶¶ 14-15.  "The potential for interference with witnesses and

highly sensitive evidence that drive the 7(A) exemption exists at least until [his] conviction is

14

final." <u>Kansi v. U.S. Dep't of Justice</u>, 11 F.Supp. 2d 42, 44 (D.D.C. 1998) (pending criminal

appeal constitutes pending or prospective law enforcement proceeding for purposes of

Exemption 7(A)) (internal citations omitted).

**c.      Reasonable Expectation of Interference**

Having established that the records at issue constitute law enforcement records relevant to

a pending or prospective law enforcement proceeding, the last remaining issue to be addressed is

whether the release of the records could reasonably be expected to interfere with enforcement

proceedings.  5 U.S.C. § 552(b)(7)(A).  In light of the pending appeal of Plaintiff's criminal

conviction, as well as the ongoing criminal investigation of untried and unindicted co-

conspirators, the release of any information from these files could reasonably be expected to

interfere with further possible proceedings in the criminal case.  <u>See</u> DeStefano Decl. at ¶ 19;

Fifth Hardy Decl. at ¶¶ 18-19.

Underlying this determination of harm is the fact that, once the information is released to

Plaintiff and placed in the public domain, information concerning this ongoing investigation

could reach the individuals being investigated, thus allowing such individuals to critically

analyze these documents concerning this investigation.  <u>See</u> Fifth Hardy Decl. at ¶ 19.  Such

individuals possess the unique advantage of knowing the details surrounding the potential

criminal activities, the identities of potential witnesses, and the direct and circumstantial

evidence of the potential criminal activities.  <u>See id.</u>  These individuals could therefore use the

released information to their advantage to destroy evidence or intimidate potential witnesses.

<u>See</u> <u>id.</u>

The Fifth Hardy Declaration identifies the following potential harms from the release of

15

information contained in the records at issue: the identification of individuals and potential

witnesses who possess information relative to the investigations and possible harm to, or

intimidation of, these individuals; the use of released information to counteract evidence

developed by investigators, alter or destroy potential evidence or create false evidence; and the

use of released information by any subject of the investigation to assess the likelihood that he or

she may be prosecuted and/or convicted in connection with this investigation.  See id. at ¶ 19(a)-

(c).  These harms are more directly linked to the categories of documents at issue in the following

section.

3.    <u>Categories of Records</u>

In accordance with the case law discussed above, each document in the responsive

records withheld pursuant to Exemption 7(A) has been reviewed, document-by-document, and

categorized in terms of the information contained therein.  <u>See</u> Fifth Hardy Decl. at ¶ 21.  The

responsive records all fall into one or more of the following categories of documents:[7]

<b>a.    Evidentiary/Investigative Materials</b>

The withheld records contain evidentiary/investigative materials, including copies of

records or evidence, and derivative communications discussing or incorporating evidence.  <u>See</u>

<u>id.</u> at ¶ 23.  The following paragraphs describe the types of evidentiary/investigative materials

contained within the withheld records and the anticipated harm which could reasonably result

from the release of such materials.

Among the materials included in this category are records reflecting confidential source

statements, which are one of the principal tools used in providing the facts which form the basis

---

[7]  A single document might fall into more than one category.  <u>See</u> Fifth Hardy Decl. at ¶ 22.

16

of a prosecution.  See id. at ¶ 24.  These statements contain information obtained from

confidential informants, records custodians and other third party individuals who have

knowledge of potential criminal activities in this investigation.  See id.  If this information were

released, the witnesses and/or confidential sources who have chosen to cooperate with law

enforcement could be subjected to retaliation, intimidation, or physical or mental harm.  See id.

This could have a chilling effect on the future prosecutions in this case inasmuch as potential

witnesses and/or confidential sources might fear exposure and reprisals from the subjects of this

investigation.  See id.  Implicit in conducting interviews in an investigation of this nature is the

notion that an individual's identity and the information provided by them will be afforded

confidentiality.  See id.  The FBI goes to great lengths to protect and maintain an individual's

confidentiality since it is an integral part of a successful investigation and prosecution.  See id.

The release of witness statements and confidential source statements would disrupt and harm

potential investigative and/or prosecutive actions.  See id.

     Also included in the category of evidentiary/investigative materials is material reflecting

the exchange of information between various local, state, and federal agencies.  See Fifth Hardy

Decl. at ¶ 25.  Release of this type of information will disclose investigative information

developed by various agencies that have cooperated with and provided information and records

to the FBI in this pending investigation.  See id.  Inherent in this cooperative effort is the mutual

understanding that information provided to the FBI by those agencies will not be prematurely

released.  See id.  This information was gathered to help identify subjects, suspects or other

individuals of potential investigative interest and to assist in locating witnesses and/or

confidential sources.  See id.  To release this information would identify the investigative interest

in particular individuals as well as subject witnesses and confidential sources to potential

harassment, intimidation and physical or mental harm.  See id.

   The evidentiary/investigative materials also include information concerning documentary

evidence and physical evidence, which cannot be described in greater detail without leading to

the possible identification of such evidence and the source of the records.  See id. at ¶ 27.

Further description of these records could result in the possible harm or intimidation of those

witnesses and confidential sources who provided these records.  See id.  The information

contained in these records is pertinent and integral to this ongoing investigation and potential

prosecution.  See id.  Disclosure of these records could be detrimental to success of the pending

and prospective prosecutions by permitting subjects to formulate a strategy as to how the

evidence could be contradicted in Court.  See id.

### b.  Administrative Materials

   In addition to the evidentiary/investigative materials described above, the withheld

records also contain administrative materials, including items such as case captions, serial

numbers, identities of FBI field offices involved, dates of investigation and detailed instructions

designed to ensure that investigative procedures are conducted within the appropriate FBI and

DOJ guidelines.  See Fifth Hardy Decl. at ¶ 28.  In many instances, administrative information is

contained at the beginning of correspondence which also falls into other categories; therefore, to

release details with respect to this category of information would also reveal the investigative

interests of the FBI and could enable suspects to discern a "road map" of the investigation.  See

id.

   Among the administrative materials withheld are reporting communications.  See id. at ¶

18

29.  These communications permit an agency to monitor the progress of the investigation and to facilitate its conduct.  See id.  These communications may reveal or confirm the cooperation of other local, state, or federal agencies in the investigation.  See id.  These communications are replete with detailed information about the investigative activities as well as detailed information about potential witnesses and confidential sources to be interviewed.  See id.  Additionally, they contain background information about third party individuals, the origin of pertinent information which ties them to the investigation, their connection with the subjects and their relationship with the pending investigation.  See id.  The release of this information would reveal the investigative steps taken to obtain witness and confidential source interviews, techniques and investigative methods used to compile and/or solicit information from various sources and the perceived weaknesses in the investigation.  See id.  The release of this information would reveal the nature and scope of this pending investigation.  See id.

The withheld records also contain various other miscellaneous administrative documents. See id. at ¶ 30.  These materials include items such as storage envelopes, transmittal forms, and standardized forms used for particular purposes.  See id.  These types of materials were used throughout this investigation for many routine purposes.  See id.  While these materials are not solely applicable to this investigation, they were adapted or used in such a manner so as to contain information of investigative value.  See id.

The administrative materials withheld also contain various administrative instructions. See id. at ¶ 32.  This type of information, whether it originates in communications from DOJ, the FBI, or other law enforcement agencies, if released to a knowledgeable person, would disclose specific investigative procedures employed in this investigation.  See id.  Release of this

19

information would thus permit the subject of an investigation to anticipate and possibly alter or

negate incriminating evidence which could be used in future prosecutions of himself or other

subjects.  See id.  Specific examples of these instructions include the setting out of investigative

guidelines and requests for specific investigative inquiries at various FBI field offices or other

government agencies.  See id. at ¶ 33.  These instructions are commonly referred to as

"investigative leads" and are set forth throughout the course of this investigation.  See id.

        In sum, the FBI has carefully examined the records at issue in this case and has

determined that, with the exception of 28 pages of public source material, all of the information

in the 6,377 pages of documents in this ongoing investigative file is exempt from disclosure in

their entirety pursuant to PA exemption (j)(2), 5 U.S.C. § 552a(j)(2) and FOIA Exemption 7(A),

5 U.S.C. § 552(b)(7)(A).  See Fifth Hardy Decl. at ¶ 34.  The FBI has determined that the

information withheld from Plaintiff, if disclosed, could reasonably be expected to interfere with

ongoing law-enforcement proceedings, including further proceedings in Plaintiff's case, which is

now on appeal, as well as further prosecutions in the Colombo LCN case.

                                        Respectfully submitted,


                                        ____/s/_____
                                        JEFFREY A. TAYLOR, D.C. Bar #498610
                                        United States Attorney



                                        ____/s/_____
                                        RUDOLPH CONTRERAS, D.C. Bar #434122
                                        Assistant United States Attorney


20

/s/
KAREN L. MELNIK, D.C. Bar #436452
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC 20530
(202) 307-0338
(202) 514-8780 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of January, 2008, I caused the foregoing to be served

on Plaintiff via first class United States Mail:

Vincent DeMartino
Register No. 22044-053
FCI Allenwood
P.O. Box 2000
White Deer, PA.  17887

/s/
KAREN L. MELNIK
Assistant United States Attorney