IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| VINCENT DEMARTINO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-0879 |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## FIFTH DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)    I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation, Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)    In my current capacity as Section Chief of RIDS, I supervise approximately 208

employees who staff a total of ten (10) FBIHQ units and a field operational service center unit

whose collective mission is to effectively plan, develop, direct, and manage responses to requests

for access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order

12958, as amended; Presidential, Attorney General, and FBI policies and procedures; judicial

decisions; and Presidential and Congressional directives. The statements contained in this

declaration are based upon my personal knowledge, upon information provided to me in my

official capacity, and upon conclusions and determinations reached and made in accordance

therewith.

(3)    Due to the nature of my official duties, I am familiar with the procedures followed

by the FBI in responding to requests for information from its files pursuant to the provisions of

the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am

aware of the treatment which has been afforded the FOIA/Privacy Act requests of plaintiff

Vincent DeMartino for access to records on himself at FBIHQ and the New York Field Office

("NYFO") concerning himself and an investigation of a shooting that occurred on or about July

16, 2001, in the Coney Island section of Brooklyn, New York.

(4)    As ordered by the Court on January 4, 2008, this declaration is submitted in support

of the FBI's motion for summary judgment regarding the documents from the FBI's NYFO

withheld pursuant to FOIA Exemption 7(A). In accordance with Vaughn v. Rosen, 484 F.2d 820

(D.C. Cir. 1973), this declaration will provide the Court and plaintiff with an explanation for the

withholding of the NYFO main and sub-files responsive to plaintiff's NYFO request in their

-2-

entirety[1] pursuant to Privacy Act Exemption (j)(2), 5 U.S.C. § 552a(j)(2) and FOIA Exemption 7(A), 5 U.S.C. § (b)(7)(A).[2]

(5)    In addition, this declaration will group the documents in each functional category and provide explanations as to why release of each functional category of documents could reasonably be expected to interfere with pending criminal law enforcement proceedings.

## CORRESPONDENCE FOR PLAINTIFF'S FOIA/PRIVACY ACT REQUESTS

(6)    The correspondence concerning plaintiff's requests is described in the Hardy Declaration, dated October 13, 2006, at paragraphs 5-25 and the Second Hardy Declaration, dated December 6, 2006, at paragraphs 5-6.

## EXPLANATION OF THE CENTRAL RECORDS SYSTEM

(7)    For an explanation of the FBI's Central Records System ("CRS"), see the Fourth Hardy Declaration, dated December 21, 2007, at paragraphs 6-11.

## SEARCH FOR AND DESCRIPTION OF NYFO RECORDS
## RESPONSIVE TO PLAINTIFF'S NYFO REQUEST

(8)    In response to plaintiff's FOIA/Privacy Act request to the NYFO, FBIHQ initiated searches of its Automated General Indices to the CRS at the NYFO to identify any records concerning plaintiff and the investigation of a July 21, 2001 shooting in Coney Island. The

---

[1] The NYFO main file has been withheld in full with the exception of twenty-eight (28) pages of public source material which was reviewed and released on November 14, 2006. Twenty-five (25) of these pages were released in full and three (3) pages were released with redactions pursuant to Privacy Act Exemption (j)(2) and FOIA Exemptions (b)(6) and (b)(7)(C).

[2] As stated in the Third Declaration of David M. Hardy dated December 14, 2007--which accompanied Defendant's Motion for an Order Preserving Certain Exemptions which was granted in an Order dated January 4, 2008--the FBI is moving for summary judgement on the NYFO main and sub-files based solely on the applicability of Exemption 7(A), without waving the applicability of underlying exemptions - Exemptions 2, 3, 5, 6, 7(C), 7(D), 7(E), and 7(F).

Automated General Indices to the CRS were searched for any records pertaining to "Vincent Anthony DeMartino." As a result of these searches, FBIHQ identified NYFO main file, 281A-NY-281501, as responsive to plaintiff's request.

(9)    File 281A-NY-28150 pertains to the multi-subject investigation of the Columbo crime family and the attempted murder of Joseph Campanella. On May 6, 2004, Vincent DeMartino and a co-defendant, Giovanni Floridia, were convicted for the attempted murder of Joseph Campanella. The case agent in the NYFO has advised that this attempted murder investigation is not over; it is still being actively investigated and prosecuted; that interviews of persons are still being conducted; that evidentiary documentary material is still being obtained through Federal Grand Jury subpoenas and other investigatory methods; and that release of any information from this file, other than public source information, could reasonably be expected to interfere with potential criminal law enforcement proceedings in the Federal Courts.[3] This file currently consists of a total of 6,377 pages of documents. Twenty-eight pages of public source material from this file were processed and released to plaintiff on November 14, 2006. All records contained in this file were reviewed, document-by-document, to achieve maximum disclosure consistent with the provisions of the FOIA. Exemption (b)(7)(A) of the FOIA is asserted for withholding all documents responsive to plaintiff's FOIA request, with the exception of the previously released public source material. The following paragraphs explain the FBI's rationale for withholding these documents in their entirety pursuant to Privacy Act Exemption (j)(2) and FOIA Exemption (b)(7)(A).

---

[3] The Declaration of SA James J. DeStefano dated January 30, 2008, contains details regarding the current investigations and prosecutions relating to the attempted murder of Joseph Campanella.

## PRIVACY ACT EXEMPTION (j)(2)

(10)    Section (j)(2) of the Privacy Act exempts from mandatory disclosure systems of records "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals . . . ."

(11)    The investigatory records at issue in this matter are part of the FBI's CRS and concern a criminal investigation of plaintiff and others conducted by the NYFO. This investigation concerned the attempted murder of Columbo family member Joseph Campanella on July 16, 2001. Accordingly, the documents contained in this file are exempt from disclosure pursuant to the Privacy Act, 5 U.S.C. § 552a(j)(2), in conjunction with 28 C.F.R. § 16.93. Although access to these records was denied pursuant to the Privacy Act, they were then considered for release pursuant to the access provisions of the FOIA.

## EXEMPTION 7 THRESHHOLD

(12)    Exemption 7 of the FOIA protects from mandatory disclosure records or information compiled for law enforcement purposes, but only to the extent that disclosure could reasonably be expected to cause one of the harms enumerated in the subpart of the exemption. See 5 U.S.C § 552(b)(7). In this case, the harm that could reasonably be expected to result from disclosure concerns interference with future law enforcement proceedings.

(13)    Before an agency can invoke any of the harms enumerated in Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Law enforcement agencies such as the FBI must demonstrate that the records at issue are related to the enforcement of federal laws and that the enforcement activity is

within the law enforcement duty of that agency. In this case, the documents related to the

investigation of a La Cosa Nostra criminal enterprise, specifically the Columbo crime family and

the role of one of its crews in the attempted murder of Joseph Campanella. The FBI has the

authority to investigate this type of case pursuant to the laws governing the crime of conspiracy

to murder, 18 U.S.C. § 1117, and the RICO Statute, 18 U.S.C. § 1961. Thus, there is no doubt

that this investigation falls within the law enforcement duties of the FBI. Accordingly, the

information readily meets the threshold requirement of Exemption 7. The remaining inquiry

being addressed in this declaration is whether its disclosure could reasonably be expected to

interfere with law enforcement proceedings.


### FOIA EXEMPTION 7(A)
### PENDING LAW ENFORCEMENT INVESTIGATION

(14)    5 U.S.C. § 552(b)(7)(A) exempts from disclosure

> records or information compiled for law enforcement purposes, but
> only to the extent that the production of such law enforcement
> records or information . . . could reasonably be expected to
> interfere with enforcement proceedings . . . .

(15)    Application of this exemption requires: the existence of law enforcement records; a

pending or prospective law enforcement proceeding; and a determination that release of the

information could reasonably be expected to interfere with the enforcement proceeding. Further,

in applying the exemption to the documents in question, Bevis v. U.S. Department of State, 801

F.2d 1386, 1389 (D.C. Cir. 1986), imposes a three-part procedure. The government is required

to review each document withheld on a document-by-document basis; to group the documents

into functional categories and to describe the categories; and to explain why release of each

category could reasonably be expected to interfere with pending law enforcement proceedings. The following paragraphs provide an explanation of the application of all requirements discussed in this paragraph.

## CATEGORIES OF LAW ENFORCEMENT RECORDS

(16)    File 281A-NY-281501 pertains to an ongoing investigation and prosecutions in the attempted murder of Joseph Campanella and information obtained during the course of this criminal investigation.  Other documents in this file consist of the results of FBI record checks of the databases of the FBI and other law enforcement agencies as well as the databases concerning commercial businesses.  The entire file was reviewed, document-by-document, by FBI personnel in response to plaintiff's FOIA/Privacy Act request.  Through this review of the records I determined that this investigative file contains the following categories of records:

(a) **Electronic Communication ("EC")**:  The EC is a WordPerfect macro, which has replaced traditional FBI correspondence (i.e., Memoranda and Letters) as the primary vehicle of correspondence within the FBI.  The purpose of this document is to communicate within the FBI in a consistent format which can be uploaded onto the computer network.

(b) **FBI Letter**:  The FBI letter is the formal correspondence format used to communicate with such non-FBI entities as other federal agencies, other non-federal law enforcement agencies, commercial businesses, and private citizens.  Its format is identical to the business letters utilized by commercial agencies except that it contains the FBI Seal at the top of the first page.

(c) **Letterhead Memoranda ("LHM")**: An interim summary which reports information usually derived from a Form FD-302 (witness statement) concerning the subject of

-7-

and investigation, and is designed to alert other field divisions and/or FBIHQ to pertinent

developments in the investigation. It is usually attached to a cover sheet, which may be a letter

or an airtel.[4] The LHM may also be detached from its cover sheet, and disseminated to other

government agencies.

(d) **FBI Investigative Report:** A summary of the investigation as of the date of

the report. The purpose of this document is to advise FBIHQ and the field offices of the

investigative information that has been obtained concerning a particular investigation.

(e) **FD-302 Interview Forms:** Internal FBI forms on which the results of FBI

interviews of individuals are recorded. Such interview information may later be used as evidence

in Federal Grand Jury proceedings or at criminal trials. Additionally, these interview forms are

often incorporated into FBI Investigative Reports. The contents of these forms may also be

incorporated into ECs for purposes of following up on a lead.[5]

(f) **Laboratory Report (Form 7-1):** Documents prepared by the FBI laboratory

at FBIHQ and completed by a lab employee and forwarded to the requesting field office in order

---

[4] An airtel is an interim summary of information, usually of the investigative activities on one of the field offices of the FBI in a particular case, and is designed to alert other field offices and/or FBIHQ of a pertinent development requiring attention. Airtel's have been supplanted by ECs, and are no longer used within the FBI.

[5] A lead is a request from the Office of Origin (OO) for assistance in the investigation of case. There are three types of leads. An "Action Required" lead will be used if the sending office requires the receiving office to do some action. A "Discretionary Action" lead will be used if the sending office has some information that may be of importance to the receiving office. It may or may not require action by the recipient and the recipient will decide what, if any action to take. An "Information Only"lead will be used for information only and no specific action is required or necessary (administrative type matters, changes in policy, etc.) .

to report the FBI laboratory findings.

(g) **FBI Investigative Inserts:** Internal FBI forms used to record investigative actions such as an FBI records check of a database of law enforcement records. These inserts are often incorporated into FBI Investigative Reports.

(h) **FD-515 Accomplishment Reports:** Forms used by FBI Special Agents to report investigative accomplishments. These forms are submitted at various stages in an investigation to report statistical results such as an arrest, indictment, or conviction.

(i) **FBI Records Checks:** Computerized print-outs of the results of checks of databases containing FBI records, local law enforcement records, and/or business records. The information from these records checks are often incorporated into Investigative Reports and ECs for purposes of following up on a lead.

(j) **Transcripts:** Verbatim written records of conversations of individuals that are used for investigative purposes. The contents of these transcripts are sometimes used for purposes of following up on a lead.

(k) **Facsimile Cover Sheet:** A cover sheet for a facsimile that is forwarded to another party.

(l) **Forms Concerning Confidential Sources:** Internal FBI forms that are utilized to record certain administrative information concerning confidential sources.

(m) **FBI Form FD-712 (Pen Register[6] Trap and Trace Usage):** Internal FBI forms that include information pertaining to the pertinent court order, preliminary statutory

---

[6] A pen register is a mechanical device that records the number dialed from or to a telephone.

citation, order expiration date, termination date, and actual telephone lines covered.

(n) **FBI Form FD-597 (Receipt of Property):** Internal FBI forms used to record administrative information concerning property that is received from sources both within and outside the FBI, including local law enforcement agencies, other FBI field offices, or confidential sources.

(o) **FBI Routing Slip:** Internal FBI forms used to record summarized administrative or investigative information. These forms are often attached to other relevant documents.

(p) **FBI File Covers:** Internal FBI file covers containing administrative information concerning the file, including the file number and range of serials within the particular section of the file.

(q) **FBI Administrative Forms concerning 1A/1B/1D Sections:** Internal FBI forms used to record administrative information concerning the sections of a file in which certain types of documents are separately filed. These sections are usually designated in alphabetical order as 1A, 1B, etc. The types of documents which are filed separately can include handwritten notes of interviews, newspaper articles, or evidentiary documents.

(r) **State Government Records:** Records obtained from the State of New York pursuant to the investigation of the attempted murder of Joseph Campanella..

(s) **Business Records:** Business records that were obtained from both confidential sources and through the use of Federal Grand Jury subpoenas in the course of this attempted murder investigation.

(t) **Federal Grand Jury Subpoenas:** Federal Grand Jury subpoenas that were

utilized to obtain evidentiary records pursuant to this attempted murder investigation.

(u) **Letters from the United States Attorney's Office**: Letters sent by the United States Attorney's Office to the recipients of the Federal Grand Jury subpoenas.

## Pending/Prosecutive Law Enforcement Proceedings

(17)    The Case Agent, James J. DeStefano, in the NYFO who has the responsibility for this investigation has advised that this FBI criminal investigation is still being actively investigated and that additional prosecutions are ongoing.[7] He has advised that interviews relating to this crime are still being conducted, that documentary material is still being obtained through Federal Grand Jury subpoenas and from confidential sources, and that release of any information from this file, other than public source information, could reasonably be expected to interfere with potential criminal law enforcement proceedings including both Federal Grand Jury proceedings and criminal trials in the Federal Courts. Until these potential and pending enforcement proceedings are concluded and resolved, no information contained in this file can be released.

## Reasonable Expectation of Interference

(18)    In processing requests under the FOIA, the FBI has established procedures allowing it to implement the FOIA as efficiently as possible. When a request is received for an ongoing FBI investigation, the FBI commonly asserts FOIA Exemption (b)(7)(A) for that request. However, in many cases, the FBI processes the request and attempts to release information contained within the investigative file when it has determined that such a release

---

[7] The Declaration of SA James J. DeStefano dated January 30, 2008, contains details regarding the current investigations and prosecutions relating to the attempted murder of Joseph Campanella.

would not jeopardize future investigative or prosecutive efforts. The FBI's review of the

responsive records determined that there were 28 pages of public source information which could

be released. After consultation with the NYFO Case Agent, it was determined that dissemination

of any other information contained in this file would jeopardize further investigative and

prosecutive efforts.

    (19)    Any release of non-public information from this file to plaintiff would be

premature and likely to cause harm. Once documents are released and are in the public domain,

information concerning this ongoing investigation could reach the individuals being investigated,

thus allowing such individuals to critically analyze these documents concerning this

investigation. Such individuals possess the unique advantage of knowing the details surrounding

the potential criminal activities, the identities of potential witnesses, and the direct and

circumstantial evidence of the potential criminal activities. These individuals could therefore use

the released information to their advantage to destroy evidence or intimidate potential witnesses.

In this regard, the following potential harms from the release of information contained in these

documents exists:

        (a) The identification of individuals and potential witnesses who possess

        information relative to the investigations and possible harm to, or intimidation of,

        these individuals;

        (b) The use of released information to counteract evidence developed by

        investigators, alter or destroy potential evidence, or create false evidence; and

        (c) The use of released information by any subject of the investigation to assess

        the likelihood that he or she may be prosecuted and/or convicted in connection

with this investigation.

(20)    Historically, the FBI has responded to requests for pending FBI investigatory files, ·
or portions thereof, with great regard for the intent of the FOIA.  The FBI makes every effort to
provide information which will not interfere with the pending law enforcement proceedings.  In
this case, however, the FBI is currently and continuously working in conjunction with the United
States Attorney's Office to assist them with the attempted murder investigation and ongoing
prosecutions in this case.  Failure by the FBI to assert FOIA Exemption (b)(7)(A) would inhibit
the FBI's assistance to the federal criminal justice system.

## CATEGORIES OF INFORMATION

(21)    Each document in the responsive records withheld pursuant to FOIA Exemption
(b)(7)(A) has been reviewed, document-by-document, and categorized for the purpose of this
declaration in terms of information contained therein.

(22)    Each document located in FBI investigative file 281A-NY-281501 and the
information contained in each such document falls into one or more of the categories described in
the following paragraphs.  For example, one document, such as a FBI Investigative Report, may
serve several purposes and may contain multiple categories of information, such as witness
statements, administrative direction,s or evidentiary materials.  This document could, therefore,
be included in multiple categories as could the information contained within the document.  The
categories include:

(23)    **Evidentiary/Investigative Materials**:  This category includes copies of records or
evidence, and derivative communications discussing or incorporating evidence.  The original
evidence is located at the NYFO.  An example is a copy of a bank statement or a telephone bill.

-13-

A derivative communication describes, verbatim or in summary, the contents of the original record, how it was obtained, and how it relates to the investigation. Other derivative communications report this information to other FBI Field Offices or other law enforcement agencies, either to advise them of the progress of the investigation, or to elicit their assistance in handling investigative leads. The following paragraphs describe the types of evidentiary material in the responsive records and the anticipated harm which could reasonably result from the release of such materials.

(24)    **Confidential Source Statements:**  Confidential source statements are the principal tools used in proving the facts which form the basis for a prosecution. These statements contain information obtained from confidential informants, records custodians, and other third party individuals who have knowledge of potential criminal activities in this investigation. If this information were released, the witnesses and/or confidential sources who have chosen to cooperate with law enforcement officials could be subjected to retaliation, intimidation, or physical or mental harm. This could have a chilling effect on the future prosecutions in this case inasmuch as potential witnesses and/or confidential sources might fear exposure and reprisals from the subjects of this investigation. Implicit in conducting interviews in an investigation of this nature is the notion that an individual's identity and the information provided by them will be afforded confidentiality. The FBI goes to great lengths to protect and maintain an individual's confidentiality since it is an integral part of a successful investigation and prosecution. The release of witness statements and confidential source statements would disrupt and harm potential investigative and/or prosecutive actions.

(25)    **Exchange Of Information Between Various Local, State, And Federal**

**Agencies:** Release of this type of information will disclose investigative information developed by various agencies that have cooperated with and provided information and records to the FBI in this pending investigation. Inherent in this cooperative effort is the mutual understanding that information provided to the FBI by those agencies will not be prematurely released. This information was gathered to help identify subjects, suspects, or other individuals of potential investigative interest and to assist in locating witnesses and/or confidential sources. To release this information would identify the investigative interest in particular individuals as well as subject witnesses and confidential sources to potential harassment, intimidation, and physical or mental harm.

(26)    **Information Concerning Documentary Evidence:** Information concerning documentary evidence in this file includes business and state government records obtained from confidential sources and through Federal Grand Jury subpoenas.

(27)    To fully describe these records could reasonably lead to the identification of the evidentiary information and, ultimately, the sources of this information. Furthermore, description of these records could result in the possible harm or intimidation of those witnesses and confidential sources who provided these records. The information contained in these records is pertinent and integral to this ongoing investigation and potential prosecution. Disclosure of these records could be detrimental to the success of the pending and prospective prosecutions by permitting subjects to formulate a strategy as to how the evidence could be contradicted in Court.

(28)    **Administrative Materials:** Materials which fall into this category include items such as case captions, serial numbers, identities of FBI field offices involved, dates of investigation, and detailed instructions designed to ensure that investigative procedures are

-15-

conducted within the appropriate FBI and DOJ guidelines. The following subparagraphs describe the types of administrative materials contained in this file and the anticipated harm which could reasonably result from the release of such materials. In many instances, administrative information is contained at the beginning of correspondence which also falls into other categories; therefore, to release details with respect to this category of information would also reveal the investigative interests of the FBI and could enable suspects to discern a "road map" of the investigation.

(29) **Reporting Communications**: These communications permit an agency to facilitate and monitor the progress of the investigation. These communications may reveal or confirm the cooperation of other local, state, or federal agencies in the investigation. These communications are replete with detailed information about the investigative activities as well as detailed information about potential witnesses and confidential sources to be interviewed. Additionally, they contain background information about third party individuals, the origin of pertinent information which ties them to the investigation, their connection with the subjects, and their relationship with the pending investigation. The release of this information would reveal the investigative steps taken to obtain witness and confidential source interviews, techniques and investigative methods used to compile and/or solicit information from various sources, and the perceived weaknesses in the investigation. The release of this information would reveal the nature and scope of this pending investigation.

(30) **Miscellaneous Administrative Documents**: These materials include items such as storage envelopes, transmittal forms, and standardized forms used for particular purposes. These types of materials were used throughout this investigation for many routine purposes.

-16-

While these materials are not solely applicable to this investigation, they were adapted or used in this investigation and contain information of investigative value.

(31)    An example is the envelope used to store records obtained from a confidential source. While the envelope is not specific to this investigation, handwritten notations on the envelope identify dates, places, and the persons who provided the records. The disclosure of these materials could harm the investigation by providing details which, when viewed in conjunction with knowledge possessed by the subjects, could provide information useful in identifying witnesses, investigative strategies and items of evidence.

(32)    **Administrative Instructions**: This type of information, whether it originates in communications from DOJ, the FBI, or other law enforcement agencies, if released to a knowledgeable person would disclose specific investigative procedures employed in this investigation. Release of this information would thus permit the subject of an investigation to anticipate and possibly alter or negate incriminating evidence which could be used in future prosecutions of himself or other subjects.

(33)    Specific examples of these instructions include the setting out of investigative guidelines and requests for specific investigative inquiries at various FBI field offices or other government agencies. These instructions are commonly referred to as "leads" and are set forth throughout the course of this investigation.

## CONCLUSION

(34)    The FBI has carefully examined the records at issue in this case and has determined that, with the exception of 28 pages of public source material, all of the information in the 6,377 pages of documents in this ongoing investigative file is exempt from disclosure in

-17-

their entireties pursuant to Privacy Act Exemption (j)(2), 5 U.S.C. § 552a(j)(2) and FOIA

Exemption 7(A), 5 U.S.C. § 552(b)(7)(A). The FBI has determined that the information

withheld from plaintiff, if disclosed, could reasonably be expected to interfere with ongoing law-

enforcement proceedings.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Executed this ___31st___ day of January, 2008.


DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Federal Bureau of Investigation
Washington, D.C.