IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VINCENT DEMARTINO, )<br><br>Plaintiff, )<br><br>v. )<br><br>FEDERAL BUREAU OF INVESTIGATION, )<br>et al., )<br><br>Defendants. ) | Civil Action No. 06-0879 (RJL) |

## DECLARATION OF SA JAMES J. DESTEFANO

I, James J. DeStefano, declare as follows:

(1)     I am presently a Federal Bureau of Investigation ("FBI") Special Agent ("SA")
assigned to Squad C-38, in the Organized Crime Branch of the FBI's ("FBI") New York Field
Office ("NYFO"). I have held this position since April 2000. Prior to my assignment to Squad
C-38, I was assigned as an SA in the Drug Branch of the NYFO from July 1997 until April 2000.
Prior to that time, I was assigned as a SA in the FBI's Boston Field Office from September 1989
to July 1997. I have been employed with the FBI since June 4, 1989.

(2)     During my tenure on Squad C-38 in the NYFO, I was designated the primary case
agent for the FBI's investigation related to Vincent "Chickie" DeMartino. I provide this
declaration based upon my personal knowledge, upon information provided to me in my official
capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     I am aware that plaintiff Vincent DeMartino filed separate requests with FBIHQ
and the FBI-NYFO, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and
the Privacy Act, 5 U.S.C. § 552a, seeking access to records concerning himself relating to a

shooting incident which occurred on July 16, 2001, in the Coney Island section of Brooklyn,

New York. I am further aware that one of the files which the FBI has identified as responsive to

plaintiff's FOIA/Privacy Act requests is file number 281A-NY-281501, which relates to the

investigation into the criminal activities of Colombo La Cosa Nostra ("LCN") Family soldier

Vincent "Chickie" DeMartino ("plaintiff").

(4)     I understand that in this litigation concerning plaintiff's requests under the FOIA,

the public source material contained in file 281A-NY-281501 was released to plaintiff on

November 14, 2006. In this release, 25 pages were released in full and three (3) pages were

released with redactions pursuant to Privacy Act Exemption (j)(2) and FOIA Exemptions (b)(6)

and (b)(7)(C).

(5)     I have reviewed and am familiar with the documents contained in file 281A-NY-

281501. Based upon my review of this file, as well as my knowledge of the criminal

proceedings involving plaintiff, I am submitting this declaration to provide justification for the

FBI's need to protect the remaining information in this file pursuant to FOIA Exemption 7(A), 5

U.S.C. § 552 (b)(7)(A). This declaration is being submitted to provide the Court with an

understanding of the criminal racketeering investigation and prosecution that are being conducted

in conjunction with the activities of the criminal enterprise known as the Colombo LCN Family,

and to explain how the release of non-public information from file 281A-NY-281501 would

impact on and harm pending criminal proceedings.

## THE FBI'S INVESTIGATION OF THE
## ATTEMPTED MURDER OF JOSEPH CAMPANELLA

(6)     On July 16, 2001, Colombo organized crime soldier Joseph "Joe Campy"

Campanella was the victim of an attempted murder plot carried out in the Coney Island section of

Brooklyn, New York. At that time, Campanella suffered two non-fatal gunshot wounds in a

drive-by shooting attack. The FBI's formal investigation into the shooting commenced

immediately after the shooting of Campanella on July 16, 2001. During the course of the

investigation, the FBI was able to secure the cooperation of an eyewitness with significant

information related to the attempted murder of Campanella.

(7)     On or about January 2003, the FBI was able to expand the investigation after

securing the cooperation of Joseph Campanella himself. As a direct result of Campanella's

cooperation, significant additional evidence was developed against the plaintiff and Giovanni

"John the Barber" Floridia in the plot to kill Campanella.

(8)     Over the intervening years, the FBI has conducted an extensive investigation into

the circumstances surrounding the shooting of--and plot to kill--Joseph Campanella. The FBI

has conducted numerous interviews and has vigorously pursued leads to develop evidence

sufficient to sustain a viable prosecution of those involved in the conspiracy to kill Campanella.

(9)     Due in large part to the assistance of the above-referenced cooperating witnesses,

on February 12, 2003, the FBI obtained sufficient evidence to allow the government to file a

Complaint in the United States District Court for the Eastern District of New York against the

plaintiff and Giovanni Floridia for violations of 18 U.S.C. §§ 1959(a)(5) and 924(c)(1)(A)(iii)

(Violent Crimes in Aid of Rackeeteering with enhancements for use of a firearm in connection

with a crime of violence). Pursuant to this Complaint, on February 28, 2003, Vincent DeMartino

and Giovanni Floridia were arrested by the FBI. In April 2004, a trial against plaintiff and

Floridia commenced in the United States District Court for the Eastern District of New York, and

on May 06, 2004, Floridia and DeMartino were convicted on all counts.

(10)     In September 2004, the FBI secured the additional cooperation of Giovanni

Floridia. As part of Floridia's cooperation agreement with the United States Attorney's Office,

Floridia pled guilty to participating in the conspiracy to kill Joseph Campanella. Floridia has

testified about his participation in the murder conspiracy in three separate trials.

(11)     Prompted by Floridia's cooperation with the FBI, on October 13, 2004,

indictments of several additional defendants were handed down in the United States District

Court for the Eastern District of New York. Such racketeering indictments included, among

others, charges related to the attempted murder of Joseph Campanella.

(12)     On or about September 25, 2006, Alphonse "Alley Boy" Persico and John

"Jackie" DeRoss were put on trial in the United States District for the Eastern District of New

York on charges including violations of 18 U.S.C. § 1959(a)(5) (Murder in Aid of Racketeering),

and 18 U.S.C. §1512 (Tampering with a Witness, Victim, or an Informant). Such trial, before

the Honorable Judge Sterling Johnson, ended in a mistrial on November 3, 2006. On or about

November 6, 2007, a second trial commenced in which Persico and DeRoss were convicted on

murder charges unrelated to the Campanella conspiracy and related witness tampering. Both

Persico and DeRoss were acquitted of charges related to the Campanella shooting.

(13)     Separately, on or about January 31, 2006, Michael Spataro and Carmine "Skippy"

DeRoss were tried in the United States District for the Eastern District of New York on charges

related to the conspiracy to murder Joseph Campanella. On or about February 14, 2006, Spataro was convicted on charges related to such conspiracy. The jury hung, however, on the same charges against co-defendant Carmine "Skippy" DeRoss. A re-trial of DeRoss is anticipated in 2008, although a trial date has yet to be scheduled.

(14)    As discussed above, one of the files that has been identified as responsive to plaintiff's FOIA requests is file 281A-NY-281501, which is the NYFO file that pertains to the investigation into the attempted murder of Joseph Campanella. This file consists of material related to the FBI's ongoing investigation and prosecution of individuals responsible for the July 16, 2001 shooting of Joseph Campanella and is being withheld in full pursuant to FOIA Exemption 7(A), as well as FOIA Exemptions 2, 3, 6, 7(C), 7(D), 7(E), and 7(F).

(15)    The FBI considers file 281A-NY-281501 to be in an open and pending status at least until the appeal process for DeMartino and the criminal proceedings related to Carmine "Skippy" DeRoss are completed, including exhaustion of any and all appeals. In addition, the FBI investigation to date indicates that there are other unindicted co-conspirators who have not yet been fully identified. Accordingly, the potential exists for other individuals to be charged depending on the outcome of the FBI's investigation and any subsequent criminal proceedings.

(16)    The file contains investigative reports and interviews related to the shooting of Joseph Campanella, which have been and will be used as evidence in the above-referenced criminal prosecutions.

## FOIA EXEMPTION 7(A)
## PENDING LAW ENFORCEMENT INVESTIGATION

(17)    5 U.S.C. § 522 (b)(7)(A) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceeding . . . ." Application of this exemption requires: the existence of law enforcement records; a pending or prospective law enforcement proceeding; and a reasonable expectation that release of the information would interfere with the enforcement proceeding.

(18)    As stated above, I have reviewed investigative file 281A-NY-281501. As a result of this review, I agree that the assertion of Exemption 7(A) to protect the entire investigative file, excluding the public source material which has already been released, is necessary. The FBI's failure to properly assert Exemption 7(A) could jeopardize the successful appeal process for DeMartino and the criminal proceedings relating to DeRoss, as well as potential future prosecution of additional defendants charged with the attempted murder of Joseph Campanella in the United States District Court for the Eastern District of New York, and thereby thwart justice. Moreover, no portions of the non-public investigative material can be segregated and released, as such a release would cause harm to the pending investigation and criminal proceedings.

## REASONABLE EXPECTATION OF INTERFERENCE

(19)    Release of the non-public information would be premature given that the criminal prosecution against co-defendants has not been completed as to all defendants. Moreover, the possibility of additional indictments still exists. If this information were released into the public domain, the information concerning the investigation could reach the untried co-defendants,

6

unindicted co-cospirators, as well as other third-party individuals. This would allow them and others to analyze the information pertinent to the investigation. These individuals would then possess the unique advantage of knowing certain details surrounding the investigation and direct and/or circumstantial evidence, and could use the released information to their advantage during criminal proceedings. In this regard, the following potential harm from the release of this information exists:

> (a)    the identification of individuals, sources and potential witnesses who possess information relative to the investigation and possible harm to, or intimidation of these individuals;

> (b)    the use of information released to counteract evidence developed by investigators; and,

> (c)    the use of information released to uncover the government's trial strategy.

(20)    Furthermore, the release of non-public information to unindicted co-conspirators and other third parties not directly involved in this matter could allow those individuals to interfere with the pending proceedings by harassment, intimidation, and creation of false evidence by dispensing extraneous facts discussed during the FBI's investigation. Once a release is made to plaintiff under the FOIA, his use and dissemination of the information to third parties is unrestricted.

(21)    Historically, the FBI has responded to requests for pending FBI investigatory files, or portions thereof, with great regard for the intent of the FOIA. The FBI makes every effort to provide information which will not interfere with the pending law enforcement investigation. In this case, the FBI has continuously worked to determine the facts surrounding the July 16, 2001

shooting incident at Coney Island, NY. Any release of information which has been withheld

pursuant to FOIA Exemption (b)(7)(A) would inhibit the FBI's assistance to the justice system.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.


Executed this _30th_ day of January, 2008.


SA _James J. DeStefano_
JAMES J. DESTEFANO
Special Agent
Federal Bureau of Investigation
New York, NY