UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VINCENT DEMARTINO,         )
                           )
         Plaintiff,        )
                           )
     v.                    )   Civil Action No. 06-0879 (RJL)
                           )
F.B.I. *et al.*,           )
                           )
         Defendants.       )

MEMORANDUM OPINION
September 14, 2008

This action brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, against several Department of Justice components is before the Court on the Federal Bureau of Investigation's ("FBI") separate motions for partial summary judgment as to records processed by FBI Headquarters ("FBIHQ" or "Headquarters") [Dkt. No. 35] and the New York Field Office ("NYFO") [Dkt. No. 40].[1] Upon consideration of the parties' submissions and the relevant parts of the record, the Court grants in part and denies in part the motion pertaining to FBIHQ records and grants the motion pertaining to NYFO records.

I. BACKGROUND

1. FBI Headquarters

By letter of February 20, 2005, plaintiff requested records pertaining to "a shooting on July 16, 2001 at 2:30 p.m. at West 32nd Street and Surf Avenue in Coney Island, New York . . . as well as all information on Vincent DeMartino and the investigation." Plaintiff listed a number of items sought, including FBI notes and reports, police reports, "911 transcripts," witness

---

[1] By Order of September 27, 2007 [Dkt. No. 31], the Court resolved the claims against all other named defendants and the Privacy Act claim against the FBI.

statements and photographs of the scene. Declaration of David M. Hardy ("1st Hardy Decl") [Dkt. No. 22-4], Ex. A. After receiving plaintiff's response to FBIHQ's request for clarification of the request, FBIHQ advised plaintiff by letter of May 6, 2005, that a search of its Central Records System's ("CRS") automatic and manual indices had located no records responsive to his request. The letter also informed plaintiff that he could make a direct request to the appropriate field office and advised him of his right to appeal the determination to DOJ's Office of Information and Privacy ("OIP"). *Id.*, Ex. F. Plaintiff appealed to the OIP by letter of June 13, 2005, which OIP acknowledged by letter of June 28, 2005. *Id.*, Exs. I, J. But by letter of June 29, 2005, FBIHQ informed plaintiff that it was reopening his request. *Id.* Ex. K. Following plaintiff's letters to it on July 12, 2005 (Ex. L) and October 3, 2005 (Ex. N) about the status of his request and his current address, FBIHQ, by letter of October 24, 2005, again advised plaintiff that he had not provided "enough descriptive information to permit a search of our records." *Id.*, Ex. O. It suggested that plaintiff include "complete names of individuals, organizations or events, dates and places of birth and the approximate time frame of the information sought." *Id.*

In a FOIA request bearing a notarized signature executed on December 6, 2005, plaintiff requested FBIHQ records pertaining to himself "aka Chickie." *Id.*, Ex. T. By letter of November 14, 2006, FBIHQ released to plaintiff 243 of 257 pages of responsive records. It cited FOIA exemptions 2, 3, 6, 7(C), 7(D), 7(E) and 7(F), and Privacy Act Exemption (j)(2), as the bases for withholding information, advised plaintiff that certain pages were referred to "the OGA for review and direct response to you," and informed him of his right to appeal the decision to OIP. 2nd Hardy Decl. [Dkt. No. 25], Ex. B.

2. <u>New York Field Office</u>

By letter of June 16, 2005, plaintiff requested from the NYFO the same information that he had requested from Headquarters on February 20, 2005, concerning the Coney Island shooting on July 16, 2001 at 2:30 p.m. 1st Hardy Decl., Ex. P. By letter of October 20, 2005, FBI informed plaintiff that "the material you requested is located in an investigative file which is exempt from disclosure" under FOIA Exemption 7(A) and advised him of his right to appeal the decision to OIP. *Id.*, Ex. S. On November 14, 2006, however, the FBI released 28 pages of public source material located at the NYFO, three of which contained redactions. 4th Hardy Decl. [Dkt. No. 35-4] ¶ 12.

As of December 21, 2007, the FBI had processed 263 pages of responsive records located at FBIHQ and the NYFO. It released 245 pages, of which 154 contained redacted material, withheld seven whole pages, referred one page to the Bureau of Prisons and withheld 10 pages that were duplicates of released pages. 4th Hardy Decl. ¶¶ 4, 61.

## II. DISCUSSION

Summary judgment is warranted if "the pleadings . . . and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When evaluating a summary judgment motion, the Court must view the evidence in favor of the nonmoving party and believe and give benefit of all reasonable inferences drawn from the nonmoving party's evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). As a general rule, "[i]n deciding whether there is a genuine issue of fact before it, the court must assume the truth of all statements proffered by the party opposing summary judgment." *Greene v. Dalton*, 164 F.3d 671, 674 (D.C. Cir. 1999). "If material facts

are at issue, or, though undisputed, are susceptible to divergent inferences, summary judgment is not available." *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994) (*citing Alyeska Pipeline Serv. Co. v. United States Envtl. Protection Agency*, 856 F.2d 309, 314 (D.C. Cir. 1988)). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "[T]he court may assume that [uncontested] facts identified by the moving party in its statement of material facts are admitted." LCvR 7(h).

When reviewing a FOIA claim, the Court may award summary judgment to an agency solely on the basis of information provided in affidavits or declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). In addition, when, as here, documents are withheld in their entirety, the district court has an "affirmative duty" to consider *sua sponte* whether nonexempt information could have been segregated from exempt information and released. *See Trans-Pacific Policing Agreement v. United States Customs Service*, 177 F.3d 1022, 1027 (D.C. Cir. 1999) (internal citations omitted).

FBI Headquarters Records

In two responses to FBIHQ's motion, plaintiff seems concerned only with the omission of "the 911 Tape." Pl.'s Res. [Dkt. No. 38] at 2; Pl.'s Sur-reply [Dkt. No. 42] at 1. To the extent that plaintiff is challenging the search for records, he has not stated any facts to question the FBI's declaration establishing, in part by its discovery of more than 6,000 records and its

retrieval and release of records, that it conducted a search reasonably calculated to locate responsive records. *See* 4th Hardy Decl. ¶¶ 6-13; *cf. Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (in determining the adequacy of an agency's search, the Court may rely on "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched"). "[T]he [mere] fact that a particular document was not found does not demonstrate the inadequacy of a search." *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 390-91 (D.C. Cir. 2007) (citations omitted).

To the extent that plaintiff is challenging FBIHQ's claimed exemptions, he has not pointed to anything in the record to create a genuine issue of material fact on the FBIHQ's well-documented bases for redacting information from the released pages under exemptions 2, 3, 6, 7(C), 7(D), 7(E) and 7(F).[2] *See* 4th Hardy Decl. ¶¶ 15-62 & Attachments. The Court therefore grants judgment to the FBI on the released records.

As to the seven FBIHQ pages withheld completely, Mr. Hardy does not describe the pages and explain the applicable exemptions. Because the Court is without sufficient evidence to resolve the segregability question, it denies judgment to the FBI on its withholding of those seven pages without prejudice to reconsideration after the FBI has supplemented the record.

<u>New York Field Office Records</u>

The NYFO has located 6,377 pages of documents responsive to plaintiff's request. 5th Hardy Decl. [Dkt. No. 40-4] ¶ 11. With the exception of 28 pages of public source material that

---

[2] By Orders of January 4, 2008 and February 4, 2008, plaintiff was advised about his obligation to rebut defendants' facts with his own facts showing that there is a genuine issue of material fact, and the consequences if he did not.

were among the records released to plaintiff on November 14, 2006, *id.* ¶ 9, the responsive records are being withheld pursuant to FOIA Exemption 7(A). Exemption 7(A) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that [disclosure] could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). To justify withholding records under this exemption, the agency must demonstrate that the records "were compiled for law enforcement purposes and that their disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993); *see Maydak v. United States Dep't of Justice*, 218 F.3d 760, 762 (D.C. Cir. 2000) ("The principal purpose of Exemption 7(A) is to prevent disclosures which might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter evidence.") (citations omitted); *Manna v. United States Dep't of Justice*, 51 F.3d 1158, 1164 (3d Cir. 1995) (exemption applies to pending or prospective law enforcement proceedings).

The law enforcement requirement is satisfied because the responsive records are contained in a file that "pertains to the multi-subject investigation of the Columbo crime family and the attempted murder of Joseph Campanella," of which plaintiff and co-defendant Giovanni Floridia were convicted in May 2004. 5th Hardy Decl. ¶ 9. According to the FBI's special agent overseeing the investigation of plaintiff, Floridia has since cooperated with the government and "has testified about his participation in the murder conspiracy in three separate trials." Declaration of SA James J. DeStefano [Dkt. No. 40-5] ¶ 10. Following a trial in one of the cases

in the Eastern District of New York in late January 2006 to mid-February 2006, the jury hung on charges against Carmine "Skippy" DeRoss, who is scheduled to be retried in 2008. *Id.* ¶ 13. Special Agent DeStefano states, then, that the NYFO file is "in an open and pending status at least until the appeal process for DeMartino and the criminal proceedings related to . . . DeRoss are completed." *Id.* ¶ 15. He further states that "the FBI investigation . . . indicates that there are other unindicted co-conspirators who have not yet been fully identified." *Id.* Thus, the premature disclosure of the information could result in several harms, including hampering the FBI's investigation by identifying and subjecting to possible intimidation "sources and potential witnesses who possess information relative to the investigation" and permitting targets to use the information to "counteract evidence developed by investigators." *Id.* ¶ 19. In addition, disclosure could allow unindicted co-conspirators and "other third parties not directly involved . . . to interfere with the pending proceedings by harassment, intimidation, and creation of false evidence by dispensing extraneous facts discussed during the FBI's investigation." *Id.* ¶ 20.

Mr. Hardy confirms that "[a]ll records contained in this file were reviewed, document-by-document, to achieve maximum disclosure consistent with . . . the FOIA." 5th Hardy Decl. ¶ 9. In addition, he has provided sufficient detail about each category of protected records. *Id.* ¶ 16; *see Maydak*, 218 F.3d at 763 (acknowledging "established" approval of the government's use of a categorical format to satisfy its burden under Exemption 7(A)). Plaintiff does not refute the FBI's evidence that the law enforcement proceeding has not concluded in part because his criminal conviction is not final. *See Kansi v. U.S. Dep't of Justice*, 11 F. Supp. 2d 42, 44 (D.D.C. 1998) ("Plaintiff's case is still on appeal. The potential for interference with witnesses and highly sensitive evidence that drives the 7(A) exemption . . . exists at least until plaintiff's

conviction is final.") (internal citations omitted). Instead, he seeks disclosure in the "interest of justice" because "the information contained within [the] file may prove exculpatory." Pl.'s Response to Defendant's Motion for Summary Judgment [Dkt. No. 45] at 2. But, unlike the balancing of interests under Exemptions 6 and 7(C) where "the court is called upon to balance the conflicting interests and values involved," Exemption 7(A) does not authorize such consideration by the Court. *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d 1051,1074 n. 60 (D.C. Cir. 1981). This is so because "Congress has struck the balance and the duty of the court is limited to finding whether the material is within the defined category." *Id.* (internal citations and quotation marks omitted).

Because the FBI has demonstrated that disclosure of the responsive records could reasonably interfere with pending and anticipated law enforcement proceedings, the Court finds that it is entitled to judgment on its application of Exemption 7(A) to the records maintained by the NYFO. *See Manna,* 51 F.3d at 1164-65 ("The district court correctly concluded that an exemption for materials relevant to these prosecutions relates not only to prosecutions against the person seeking the information, but also to prosecutions against anyone else.").

### III. CONCLUSION

For the foregoing reasons, the FBI's motion for partial summary judgment as to records located at FBI Headquarters is granted in part and denied in part, and its motion for partial summary judgment as to records located at the New York Field Office is granted. A separate Order accompanies this Memorandum Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge